Brian A. Sun (CA SBN 89410)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, CA 90071
Telephone: (213) 892-9200
brian.sun@nortonrosefulbright.com

Brett C. Govett (TX SBN 08235900)
(*pro hac vice* forthcoming)
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
brett.govett@nortonrosefulbright.com

Daniel S. Leventhal (TX SBN 24050923)
(*pro hac vice* forthcoming)
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
daniel.leventhal@nortonrosefulbright.com

***Counsel for Plaintiff Smith Interface Technologies, LLC***

*[Additional counsel listed on signature page]*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMITH INTERFACE TECHNOLOGIES, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>          Defendant. | Case No. **'23 CV 1187 BEN WVG**<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Smith Interface Technologies, LLC ("Plaintiff" or "Smith Interface") brings this action for patent infringement against Defendant Apple Inc. ("Defendant" or "Apple"), and alleges as follows:

## THE PARTIES

1.      Smith Interface is an entity organized and existing under the laws of the State of Texas with its principal place of business at PO Box 1567, Cedar Park, TX 78630.

2.      Apple is an entity organized and existing under the laws of the State of California with its principal place of business at One Apple Park Way, Cupertino, California 95014. Apple may be served pursuant to Fed. R. Civ. P. 4(f)(1).

3.      Apple designs, manufactures, makes, uses, imports into the United States, sells, and/or offers for sale in the United States devices like iPhones, iPads, iPods, and Apple Watches. Apple's devices are marketed, used, offered for sale, and/or sold throughout the United States, including within this district.

## JURISDICTION AND VENUE

4.      This is an action arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

6.      This Court has personal jurisdiction over Apple because it is organized and exists under the laws of California.

7.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b). Venue is appropriate under 28 U.S.C. § 1400(b) at least because Apple is incorporated in California, Apple has committed acts of infringement in this district, and has a regular and established place of business in this district. Apple's acts of infringement in this district include, but are not limited to, sales of the Accused Products at Apple Store locations in this district, including, but not limited to, 7007 Friars Road, San Diego, CA 92108 and 4305 La Jolla Village

COMPLAINT FOR PATENT INFRINGEMENT

Drive, San Diego, CA 92122.

8.     Upon information and belief, Apple currently employees close to 1,000 people in San Diego, and plans to expand its workforce in San Diego to at least 5,000 by 2026. *See* Mike Freeman, *Apple to expand San Diego engineering hub boosting workforce to 5,000 over five years*, THE SAN DIEGO UNION-TRIBUNE (April 26, 2021), www.sandiegouniontribune.com/business/story/2021-04-26/apple-to-expand-san-diego-engineering-hub-boosting-workforce-to-5-000-over-five-years;   *see also* Nicole Gomez, *5K Jobs By 2026: Apple Plans to Expand San Diego Workforce*, NBC SAN DIEGO (April 26, 2021), www.nbcsandiego.com/news/local/apple-to-add-5k-new-jobs-in-san-diego-by-2026/2587748/. Indeed, Apple is currently "one of the top technology employers in the greater San Diego area." *See* Jennifer Van Grove, Apple grows presence in Rancho Bernardo, THE SAN DIEGO UNION-TRIBUNE (June 15, 2022),     www.sandiegouniontribune.com/pomerado-news/business/story/2022-06-15/apple-grows-presence-in-rancho-bernardo-now-largest-tech-tenant-in-the-market.

9.     Apple has a regular and established place of business in University City, San Diego, including a "100,000 square-foot research/office building" and a second 204,000 square-foot building employing Apple personnel. Mike Freeman, *Apple to lease second San Diego office as it grows local engineering workforce*, THE SAN DIEGO UNION-TRIBUNE (Nov. 13, 2019), www.sandiegouniontribune.com/business/technology/story/2019-11-13/apple-inks-deal-for-second-utc-building-as-part-of-san-diego-expansoin.

10.     Apple states that the San Diego "location has plans for extensive growth throughout   this   area."   *Careers   at   Apple – San   Diego*,   APPLE, https://jobs.apple.com/en-us/search?location=san-diego-SDO (last visited June 20, 2023); *see also* Jack Rogers, *Apple Buys 816K SF Office Complex in San Diego for $445M*, GLOBEST.COM (July 29, 2022), www.globest.com/2022/07/29/apple-buys-816k-sf-office-complex-in-san-diego-for-445m/?slreturn=20230518233551     ("In

COMPLAINT FOR PATENT INFRINGEMENT

recent weeks, Apple inked two office leases in San Diego . . . .”). According to San Diego records, Apple's corporate office addresses, among others, include at least 12220 Scripps Summit Dr., San Diego, CA 92131-3698. *See* San Diego County Property Assessment, OPENGOVUS, https://opengovus.com/san-diego-county-property/3163300400 (last visited June 20, 2023).

11.   Apple is currently advertising over 400 open positions in San Diego, with 362 out of those 490 positions relating to the development and/or design of the iOS, iPads, iPhones, and/or watchOS. *See Careers at Apple*, APPLE, https://jobs.apple.com/en-us/search?location=san-diego-SDO (last visited June 26, 2023).

12.   For example, one of the open positions is for a software engineer in the "Camera and Photos" team, which "focuses on user-experience" of the Camera and Photos applications. *Camera Tuning & Image Quality Engineer*, APPLE, https://jobs.apple.com/en-us/details/200480038/camera-tuning-image-quality-engineer?team=SFTWR (last visited June 19, 2023).

13.   Another example of Apple's many available positions in San Diego is for a "Systems Experience" manager to lead a team of engineers to test "Notification Center interactions, Control Center, Dock and Mission Control to Sidecar, Universal Control and Stage Manager" and "many features that provide great system experience." *QA Manager - System Experience*, APPLE, https://jobs.apple.com/en-us/details/200326451/qa-manager-system-experience?team=SFTWR   (last visited June 19, 2023).

14.   Apple has also filed lawsuits in the Southern District of California. For example, Apple sued Qualcomm and Motorola Mobility LLC for patent infringement in this District in 2017 and 2012, respectively. *Apple Inc. v. Qualcomm Inc.*, No. 3:17-cv-108 (S.D. Cal. Jan. 20, 2017); *Apple Inc. v. Motorola Mobility, Inc.*, No. 3:12-cv-355 (S.D. Cal. Feb. 10, 2012). Apple has also sought transfer into the Southern District of California for various patent infringement cases. *See, e.g., Fastvo LLC v. Apple Inc. et al*, No. 3:16-cv-385, Dkt. 75 (S.D. Cal. Feb. 17, 2016)

COMPLAINT FOR PATENT INFRINGEMENT

(transferring case from Eastern District of Texas); *see also Wi-LAN USA, Inc. et al. v. Apple Inc.*, No. 3:13-cv-00798-DMS-BLM, Dkt. 39 (S.D. Cal. Feb. 20, 2013) (Apple arguing that California federal courts have state-wide subpoena power under Cal. Civ. Proc. Code § 1989).

## THE TECHNOLOGY

15.     In his research, inventor Michael Smith recognized that as processor power and speed and memory capacity increased, mobile devices such as smartphones would become increasingly capable of more complex tasks and running feature-rich applications rivaling those even on desktop computers. But unlike desktop computers, mobile devices, being small and light, would always have miniature displays with highly limited screen real-estate. This severe constraint meant that interacting with feature-rich mobile applications would necessarily require different input and output techniques than those used on desktop computers. For example, instead of a mouse pointer indicating a single pixel with a mouse click, a user's finger touches a larger oval's worth of pixels all at once, creating the need for finger-sized targets. New user interface widgets taking such considerations into account would be required to intuitively and effectively operate mobile device applications.

16.     Therefore, to enable users to operate these new powerful mobile devices and their feature-rich applications, Smith developed new advanced input and output techniques for mobile user interfaces. A particular approach Smith used was to develop multi-part gestures, where users can take successive actions, such as by touching, tapping, long-pressing, or sliding, and receive feedback at each step, whether visual or tactile (or both). Working in tandem with Smith's gestures were integrated forms of feedback, such as using menus offering contextual actions or vibrotactile pulses used to confirm certain actions. Smith's intuitive and fluid combination of input and output enabled users to much more easily and effectively operate feature-rich interfaces on miniature displays with severely limited screen

- 5 -

COMPLAINT FOR PATENT INFRINGEMENT

real-estate. These innovations represent a new class of user interface interactions distinct from those used on the desktop and helped to usher in the next phase of mobile computing.

17.     These mobile UI advances resulted in numerous patents, including U.S. Patent Nos. 10,642,413 (the "'413 Patent"); 10,649,578 (the "'578 Patent"); 10,649,580 (the "'580 Patent"); 10,656,754 (the "'754 Patent"); 10,656,755 (the "'755 Patent"); 10,656,758 (the "'758 Patent"); 10,671,212 (the "'212 Patent"); 10,725,581 (the "'581 Patent"); and 10,936,114 (the "'114 Patent") (collectively, the "Asserted Patents").

18.     The '413 Patent, titled "Gesture-equipped touch screen system, method, and computer program product," issued on May 5, 2020. *See* Ex. 1. Smith is the sole named inventor of the '413 Patent. The '413 Patent application (No. 16/169,961) was filed October 24, 2018 and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed August 5, 2011. Smith Interface is the assignee and sole owner of the '413 Patent and has the full and exclusive right to bring action and recover damages for Apple's infringement of the '413 Patent.

19.     The '578 Patent, titled "Gesture-equipped touch screen system, method, and computer program product," issued on May 12, 2020. *See* Ex. 2. Smith is the sole named inventor of the '578 Patent. The '578 Patent application (No. 16/559,606) was filed September 3, 2019 and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed August 5, 2011. Smith Interface is the assignee and sole owner of the '578 Patent and has the full and exclusive right to bring action and recover damages for Apple's infringement of the '578 Patent.

20.     The '580 Patent, titled "Devices, methods, and graphical use interfaces for manipulating user interface objects with visual and/or haptic feedback," issued on May 12, 2020. *See* Ex. 3. Smith is the sole named inventor of the '580 Patent. The

'580 Patent application (No. 16/664,777) was filed October 25, 2019 and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed August 5, 2011. Smith Interface is the assignee and sole owner of the '580 Patent and has the full and exclusive right to bring action and recover damages for Apple's infringement of the '580 Patent.

21.     The '754 Patent, titled "Devices and methods for navigating between user interfaces," issued on May 19, 2020. *See* Ex. 4. Smith is the sole named inventor of the '754 Patent. The '754 Patent application (No. 16/438,455) was filed June 11, 2019 and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed August 5, 2011. Smith Interface is the assignee and sole owner of the '754 Patent and has the full and exclusive right to bring action and recover damages for Apple's infringement of the '754 Patent.

22.     The '755 Patent, titled "Gesture-equipped touch screen system, method, and computer program product," issued on May 19, 2020. *See* Ex. 5. Smith is the sole named inventor of the '755 Patent. The '755 Patent application (No. 16/558,022) was filed August 30, 2019 and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed August 5, 2011. Smith Interface is the assignee and sole owner of the '755 Patent and has the full and exclusive right to bring action and recover damages for Apple's infringement of the '755 Patent.

23.     The '758 Patent, titled "Gesture-equipped touch screen system, method, and computer program product," issued on May 19, 2020. *See* Ex. 6. Smith is the sole named inventor of the '758 Patent. The '758 Patent application (No. 16/664,780) was filed October 25, 2019 and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed August 5, 2011. Smith Interface is the

COMPLAINT FOR PATENT INFRINGEMENT

assignee and sole owner of the '758 Patent and has the full and exclusive right to bring action and recover damages for Apple's infringement of the '758 Patent.

24.    The '212 Patent, titled "Gesture-equipped touch screen system, method, and computer program product," issued on June 2, 2020. *See* Ex. 7. Smith is the sole named inventor of the '212 Patent. The '212 Patent application (No. 16/558,028) was filed August 30, 2019 and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed August 5, 2011. Smith Interface is the assignee and sole owner of the '212 Patent and has the full and exclusive right to bring action and recover damages for Apple's infringement of the '212 Patent.

25.    The '581 Patent, titled "Devices, methods and graphical user interfaces for manipulating user interface objects with visual and/or haptic feedback," issued on July 28, 2020. *See* Ex. 8. Smith is the sole named inventor of the '581 Patent. The '581 Patent application (No. 16/687,649) was filed November 18, 2019 and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed August 5, 2011. Smith Interface is the assignee and sole owner of the '581 Patent and has the full and exclusive right to bring action and recover damages for Apple's infringement of the '581 Patent.

26.    The '114 Patent, titled "Gesture-equipped touch screen system, method, and computer program product" issued on March 2, 2021. *See* Ex. 9. Smith is the sole named inventor of the '114 Patent. The '114 Patent application (No. 16/588,026) was filed August 30, 2019 and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed August 5, 2011. Smith Interface is the assignee and sole owner of the '114 Patent and has the full and exclusive right to bring action and recover damages for Apple's infringement of the '114 Patent.

COMPLAINT FOR PATENT INFRINGEMENT

## APPLE iOS AND THE ACCUSED PRODUCTS

27.     Apple infringes the Asserted Patents by making, using, selling, offering to sell, and importing its smartphones, portable media players, tablets, and smartwatches that run Apple iOS, iPadOS, and watchOS. Exemplary accused infringing smartphones and tablets include, but are not limited to, Apple's iPhone, iPhone SE, iPhone Pro, iPad, iPad Pro, iPad Air, iPad mini, iPod Touch, Apple Watch, and Apple Watch SE (collectively the "Accused Products").

28.     At the core of Apple's DNA is a focus on providing simple, yet powerful user interface experiences to users. *See* Protectstar Inc., *iPhone 1 - Steve Jobs MacWorld keynote in 2007 - Full Presentation, 80 mins*, YOUTUBE (May 16, 2013), www.youtube.com/watch?v=VQKMoT-6XSg. Apple understands that touchscreen gestures are a "key way" to create "a close personal connection" between the user and their device. *Touchscreen Gestures*, APPLE DEVELOPER, https://developer.apple.com/design/human-interface-guidelines/        touchscreen-gestures (last visited June 26, 2023).

29.     On September 18, 2013 Apple released iOS 7. iOS 7 introduced new features to its operating system such as "distinct functional layers" to "help establish hierarchy and order" and added "translucency" to "give [the user] a sense of [the user's] context." OhMyGeek!, *Apple iOS 7 - WWDC Video Demo (with John Ive)*, YOUTUBE (June 10, 2013), www.youtube.com/watch?v=xKibbvhajOA.

30.     Apple characterized iOS 7 as "the most significant iOS update since the original iPhone" and added "a stunning new user interface." *Apple Unveils iOS 7*, APPLE NEWSROOM (June 10, 2013), www.apple.com/newsroom/2013/06/10Apple-Unveils-iOS-7/. Some of these "great new features" include "Control Center, Notification Center, [and] improved Multitasking . . . ." *Id.*

31.     On September 19, 2019 Apple released iOS 13 which included a new Core Haptics framework that uses "haptics to engage users physically, with tactile and audio feedback that gets attention and reinforces actions." *Core Haptics*, APPLE

DEVELOPER, https://developer.apple.com/documentation/corehaptics (last visited June 26, 2023).

32.     With each iteration of Apple's iOS, iPadOS, and watchOS, Apple's user interface offers more and more advanced gesture functionality.

## APPLE'S KNOWLEDGE OF SMITH'S INVENTIONS

33.     The Asserted Patents, along with patent publications and patents sharing a common claim of priority, inventorship, and/or ownership with the Asserted Patents ("Smith Patent Family"), have been cited more than 500 times in the United States Patent and Trademark Office during the prosecution of other U.S. patent applications.

34.     Among those citations, at least 10 Apple patents and patent publications include citations to patents and patent publications in the Smith Patent Family.

35.     On January 20, 2017, August 24, 2017, February 13, 2020, and March 9, 2020 during the prosecution of Apple's U.S. Patent No. 10,698,598, Apple identified four members of the Smith Patent Family in a filing to the United States Patent and Trademark Office.

36.     On January 24, 2017, August 25, 2017, February 21, 2020, and March 6, 2020 during the prosecution of Apple's U.S. Patent No. 10,754,542, Apple identified four members of the Smith Patent Family in a filing to the United States Patent and Trademark Office.

37.     On September 11, 2018 and February 28, 2020 during the prosecution of Apple's U.S. Patent No. 10,775,994, Apple identified four members of the Smith Patent Family in a filing to the United States Patent and Trademark Office.

38.     On January 11, 2019 and March 2, 2020 during the prosecution of Apple's U.S. Patent No. 10,775,999, Apple identified four members of the Smith Patent Family in a filing to the United States Patent and Trademark Office.

39.     On April 5, 2018 and June 8, 2020 during the prosecution of Apple's U.S. Patent No. 10,782,871, Apple identified three members of the Smith Patent Family in a filing to the United States Patent and Trademark Office.

COMPLAINT FOR PATENT INFRINGEMENT

40.     On October 28, 2019, February 7, 2020, and April 30, 2020 during the prosecution of Apple's U.S. Patent No. 10,841,484, Apple identified four members of the Smith Patent Family in a filing to the United States Patent and Trademark Office.

41.     On February 14, 2019, February 24, 2020, April 15, 2020, and August 25, 2020 during the prosecution of Apple's U.S. Patent No. 10,884,591, Apple identified five members of the Smith Patent Family in a filing to the United States Patent and Trademark Office.

42.     On April 9, 2019, February 10, 2020, March 27, 2020, and August 4, 2020 during the prosecution of Apple's U.S. Patent No. 10,884,608, Apple identified five members of the Smith Patent Family in a filing to the United States Patent and Trademark Office.

43.     On June 7, 2017, September 6, 2017, March 3, 2020, and September 30, 2020 during the prosecution of Apple's U.S. Patent No. 10,908,808, Apple identified five members of the Smith Patent Family in a filing to the United States Patent and Trademark Office.

44.     On March 2, 2021 during the prosecution of Apple's U.S. Patent No. 11,371,953, Apple identified a member of the Smith Patent Family in a filing to the United States Patent and Trademark Office.

45.     Further, the Smith Patent Family is known in the technology industry and has been cited in numerous U.S. patents since the earliest publication of the Smith Patent Family. These citations were on patents assigned to well-known Apple competitors: Samsung, Microsoft, IBM, Intel, Micron, Oracle, and Snap, Inc. *See, e.g.,* https://patents.google.com/patent/US20160188181A1/en?oq=US20160188181 (last visited June 13, 2023); https://patents.google.com/patent/US9417754B2/en ?oq=9417754 (last visited June 13, 2023); https://patents.google.com/patent/ US10275087B1/en?oq=10275087 (last visited June 13, 2023).

46.     Indeed, Apple's largest competitors also cite to the Smith Patent Family

COMPLAINT FOR PATENT INFRINGEMENT

and/or have the Smith Patent Family cited to them during prosecution of their patents.

47.     Upon information and belief, and based on the many repeated references to the Smith Patent Family in Apple's own patents, by May 2020 Apple was aware of, had actual knowledge of, and was following the prosecution of the Smith Patent Family and knew of its relevance to both the field of mobile user interfaces and its own products.

48.     Upon information and belief, Apple was following the Smith Patent Family as it obtained each of the patents-in-suit and had Apple engineers review the specification and claims of each Asserted Patent.

49.     Upon information and belief, Apple is aware of, and closely follows patent infringement lawsuits related to mobile device technologies. Upon information and belief, Apple is aware of, and closely followed, the litigation between Smith Interface and Samsung since the July 29, 2022 complaint filing date. *See Smith Interface Tech., LLC v. Samsung Elec. Co., Ltd. et al*, No. 2:22-cv-290-JRG-RSP, Dkt. No. 1 (E.D. Tex. July 29, 2022) ("Samsung Litigation"). Several Asserted Patents overlap with the Samsung Litigation, for example the '754 Patent. *Id*. at 6.

50.     On March 10, 2023, Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") served a subpoena, pursuant to Fed. R. Civ. P. 45, to Apple that requested, among other things, documents and tangible things. Upon information and belief, as a result of Samsung's subpoena, Apple investigated the patents asserted in the Samsung Litigation, as well as each issued Smith Patent Family patent, and learned of the Asserted Patents' relevance to both the field of mobile user interfaces and its own products as early as March 10, 2023, but no later than March 24, 2023.

51.     Upon information and belief, and based on Apple's actual knowledge of the Smith Patent Family and its relevance to the field of mobile user interfaces, Apple has notice and actual, or constructive, knowledge of each of the Asserted Patents the

1    day each Asserted Patent issued.

2    52.    In the alternative, upon information and belief and based on the many

3    repeated references to the Smith Patent Family in Apple's own patents and its

4    knowledge of the Samsung Litigation, Apple was willfully blind to the Smith Patent

5    Family and deliberately failed to probe, at least by choosing not to investigate the

6    Smith Patent Family in view of the high probability of infringement, the Smith Patent

7    Family's relevance to both the field of mobile user interfaces and Apple's own

8    products.

9    53.    Upon information and belief, despite Apple's actual knowledge of, or

10    willful blindness to, the Smith Patent Family, Apple used, implemented, and/or

11    developed iOS, iPadOS, and watchOS features that infringe the Asserted Patents.

12    54.    In addition, Apple has actual knowledge of the Asserted Patents by

13    virtue of this litigation and, at least, as of the date it received notice of this lawsuit.

14    **<u>COUNT I</u>**

15    **<u>(CLAIM FOR PATENT INFRINGEMENT OF THE '413 PATENT)</u>**

16    55.    Smith Interface incorporates the foregoing paragraphs by reference as if

17    fully set forth herein.

18    56.    A true and accurate copy of the '413 Patent is attached hereto as Exhibit

19    1.

20    57.    All claims of the '413 Patent are valid and enforceable, and each enjoys

21    a statutory presumption of validity under 35 U.S.C. § 282.

22    58.    The claims of the '413 Patent are directed to an improvement of the user

23    interface on a mobile device and not an abstract idea.

24    59.    Smith Interface is the sole owner of the '413 Patent and possess the

25    rights to past damages.

26    60.    Independent claim 50 of the '413 Patent recites:

27    50. A method, comprising:

28    at an electronic device including a display, a touch interface, and

- 13 -
COMPLAINT FOR PATENT INFRINGEMENT

1    memory coupled to one or more processors:

2    displaying, utilizing the display, a graphical user interface;

3    with the graphical user interface being displayed, detecting, utilizing

4    the touch interface, a first gesture that begins in connection with

5    a first edge of the display and moves inward;

6    in response to the detection of the first gesture that begins in

7    connection with the first edge and moves inward, displaying,

8    utilizing the display, a first menu as sliding in and including one

9    or more first menu items, and blurring at least a portion of the

10   graphical user interface such that a magnitude of the blurring of

11   the at least portion of the graphical user interface increases as a

12   function of an increase in a magnitude of the first gesture being

13   detected;

14   with the first menu being displayed including the one or more first

15   menu items:

16   detecting, utilizing the touch interface, a first duration of contact on

17   at least one of the one or more first menu items,

18   in response to the first duration of contact on the at least one of the

19   one or more first menu items being detected to not surpass a

20   threshold, performing a first operation, and

21   in response to the first duration of contact on the at least one of the

22   one or more first menu items being detected to surpass the

23   threshold, performing a second operation;

24   with the graphical user interface being displayed, detecting, utilizing

25   the touch interface, a second gesture that begins in connection

26   with a second edge of the display and moves inward;

27   in response to the detection of the second gesture that begins in

28   connection with the second edge and moves inward, displaying,

- 14 -

COMPLAINT FOR PATENT INFRINGEMENT

1    utilizing the display, a second menu including one or more second

2    menu items, such that the graphical user interface is displayed in

3    at least one virtual display layer, and at least one of the first menu

4    or the second menu is displayed in at least one other virtual

5    display layer;

6    with the second menu being displayed including the one or more

7    second menu items:

8    detecting, utilizing the touch interface, a selection contact on at least

9    one of the one or more second menu items, and

10    in response to the selection contact being detected on the at least one

11    of the one or more second menu items, performing a third

12    operation.

13    61.    In violation of 35 U.S.C. § 271, Apple has been and is still infringing

14    (both literally and/or under the doctrine of equivalents), contributing to infringement,

15    and/or inducing others to infringe of the '413 Patent by making, using, offering for

16    sale, selling, importing, or encouraging and intending that others to use mobile

17    devices that practice at least claim 50 of the '413 Patent, including but not limited to

18    the Accused Products.

19    62.    As described above, Apple designs, manufactures, makes, uses,

20    provides, imports into the United States, sells and/or offers for sale in the United

21    States the Accused Products and thus directly infringes (both literally and/or under

22    the doctrine of equivalents) the '413 Patent.

23    63.    On information and belief, Apple is currently and will continue to

24    actively induce and encourage infringement of the '413 Patent. Apple has known of

25    the '413 Patent as described above and, at a minimum, at least since the time this

26    complaint was filed and served on Apple. On information and belief, Apple

27    nevertheless actively encourages others to infringe the '413 Patent. On information

28    and belief, Apple knowingly induces infringement by others, including resellers,

COMPLAINT FOR PATENT INFRINGEMENT

retailers, and end users of the Accused Products. For example, Apple's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Apple's instructions contained in, for example, its user manuals, and as Apple intends iOS and iPadOS to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Apple knowingly induces others, including resellers, retailers, and end users, to directly infringe the '413 Patent, and that Apple possesses a specific intent to cause such infringement.

64. Apple also contributes to infringement of the '413 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '413 Patent. These mobile devices are known by Apple to be especially made or especially adapted for use in the infringement of the '413 Patent. Specifically, on information and belief, Apple sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '413 Patent.

65. Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

66. As a result of Apple's infringement of the '413 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Apple the damages Smith Interface sustained (and continues to sustain) as a result of Apple's wrongful and infringing acts in an amount no less than a reasonable royalty.

67. Apple's infringement of the '413 Patent has been willful. Apple has known of the '413 Patent as described above and, at a minimum, at least since the

COMPLAINT FOR PATENT INFRINGEMENT

time of or shortly after filing of the Complaint. Further, at least since the time of or shortly after filing of the Complaint, Apple has been aware of how iOS and iPadOS infringes at least claim 50 of the '413 Patent as detailed in the Complaint. Upon information and belief, Apple deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '413 Patent. Apple knew or should have known that its actions would cause infringement of the '413 Patent, yet, Apple has, and continues to, infringe the '413 Patent.

68.   This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

69.   By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 50 of the '413 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

70.   ***50(a): "A method, comprising: at an electronic device including a display, a touch interface, and memory coupled to one or more processors:"*** — The Accused Products practice a method comprising an electronic device including a display, a touch interface, and memory coupled to one or more processors. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT

1

2

3

4

5

6

7

8

9

10

11



12

13

14

15

16

17



https://www.apple.com/iphone-14-pro/specs/

18

19

20

21

22

71.     *50(b): "displaying, utilizing the display, a graphical user interface;"*— The Accused Products are designed to display, utilizing the display, a graphical user interface. An example is shown below:

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    72.    **50(c): "with the graphical user interface being displayed, detecting,**

16  **utilizing the touch interface, a first gesture that begins in connection with a first**

17  **edge of the display and moves inward;"**— The Accused Products are designed such

18  that the graphical user interface being displayed, detects, utilizing the touch interface,

19  a first gesture that begins in connection with a first edge of the display and moves

20  inward. An example is shown below:

21
22
23
24
25
26
27
28

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15   73.   **50(d): "in response to the detection of the first gesture that begins in**
16   **connection with the first edge and moves inward, displaying, utilizing the display,**
17   **a first menu as sliding in and including one or more first menu items, and blurring**
18   **at least a portion of the graphical user interface such that a magnitude of the**
19   **blurring of the at least portion of the graphical user interface increases as a**
20   **function of an increase in a magnitude of the first gesture being detected;"**— The
21   Accused Products are designed that in response to the detection of the first gesture
22   that begins in connection with the first edge and moves inward, display, utilizing the
23   display, a first menu as sliding in and including one or more first menu items, and
24   blurring at least a portion of the graphical user interface such that a magnitude of the
25   blurring of the at least portion of the graphical user interface increases as a function
26   of an increase in a magnitude of the first gesture being detected. An example is shown
27   below:
28

COMPLAINT FOR PATENT INFRINGEMENT

  

74.     *50(e): "with the first menu being displayed including the one or more first menu items: detecting, utilizing the touch interface, a first duration of contact on at least one of the one or more first menu items, in response to the first duration of contact on the at least one of the one or more first menu items being detected to not surpass a threshold, performing a first operation, and in response to the first duration of contact on the at least one of the one or more first menu items being detected to surpass the threshold, performing a second operation;"* — The Accused Products are designed such that the first menu being displayed includes the one or more first menu items: detecting, utilizing the touch interface, a first duration of contact on at least one of the one or more first menu items, in response to the first duration of contact on the at least one of the one or more first menu items being detected to not surpass a threshold, performing a first operation, and in response to the first duration of contact on the at least one of the one or more first menu items

COMPLAINT FOR PATENT INFRINGEMENT

being detected to surpass the threshold, performing a second operation. An example
is shown below:

 

 

COMPLAINT FOR PATENT INFRINGEMENT

75. ***50(f): "with the graphical user interface being displayed, detecting, utilizing the touch interface, a second gesture that begins in connection with a second edge of the display and moves inward;"***— The Accused Products are designed that when the graphical user interface is displayed, detect, utilizing the touch interface, a second gesture that begins in connection with a second edge of the display and moves inward. An example is shown below:



76. ***50(g): "in response to the detection of the second gesture that begins in connection with the second edge and moves inward, displaying, utilizing the display, a second menu including one or more second menu items, such that the graphical user interface is displayed in at least one virtual display layer, and at least one of the first menu or the second menu is displayed in at least one other virtual display layer;"***— The Accused Products are designed that in response to the detection of the second gesture that begins in connection with the second edge and moves inward, they display, utilizing the display, a second menu including one or

COMPLAINT FOR PATENT INFRINGEMENT

more second menu items, such that the graphical user interface is displayed in at least one virtual display layer, and at least one of the first menu or the second menu is displayed in at least one other virtual display layer. An example is shown below:

  

  

COMPLAINT FOR PATENT INFRINGEMENT

77.    **1(h): "with the second menu being displayed including the one or more second menu items: detecting, utilizing the touch interface, a selection contact on at least one of the one or more second menu items, and in response to the selection contact being detected on the at least one of the one or more second menu items, performing a third operation."**— The Accused Products are designed that the second menu being displayed includes the one or more second menu items: detecting, utilizing the touch interface, a selection contact on at least one of the one or more second menu items, and in response to the selection contact being detected on the at least one of the one or more second menu items, performing a third operation. An example is shown below:

 

<u>**COUNT II**</u>

**(CLAIM FOR PATENT INFRINGEMENT OF THE '578 PATENT)**

78.    Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

79.    A true and accurate copy of the '578 Patent is attached hereto as Exhibit

COMPLAINT FOR PATENT INFRINGEMENT

2.

80.　All claims of the '578 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

81.　The claims of the '578 Patent are directed to an improvement of the user interface on a mobile device and not an abstract idea.

82.　Smith Interface is the sole owner of the '578 Patent and possess the rights to past damages.

83.　Independent claim 1 of the '578 Patent recites:

1. An electronic device, comprising:

a display;

a touch interface;

one or more processors;

memory; and

one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions for:

displaying a home screen on the display, the home screen including an icon associated with an application;

while displaying the home screen, detecting a first input by a first contact on the icon;

in response to detecting the first input, replacing the home screen with a user interface of the application;

while displaying the user interface of the application, detecting a second input by a second contact that includes movement across the display in a direction;

in response to detecting the second input and in accordance with a determination that the second input meets one or more criteria that is met when the second input is detected to include a movement

- 26 -

COMPLAINT FOR PATENT INFRINGEMENT

parameter that is above a movement threshold, displaying at least a portion of the user interface of the application in a first virtual display layer that appears at a lesser depth as compared to a second virtual display layer, such that the at least portion of the user interface of the application is reduced in size and is further displayed in its entirety when displayed in the first virtual display layer; and

in response to detecting the second input and in accordance with a determination that the second input does not meet the one or more criteria that is met when the second input is detected to include the movement parameter that is above the movement threshold, replacing the user interface of the application with the home screen including the icon associated with the application.

84.    In violation of 35 U.S.C. § 271, Apple has been and is still infringing (both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '578 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 1 of the '578 Patent, including but not limited to the Accused Products.

85.    As described above, Apple designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '578 Patent.

86.    On information and belief, Apple is currently and will continue to actively induce and encourage infringement of the '578 Patent. Apple has known of the '578 Patent as described above and, at a minimum, at least since the time this complaint was filed and served on Apple. On information and belief, Apple nevertheless actively encourages others to infringe the '578 Patent. On information

and belief, Apple knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Apple's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Apple's instructions contained in, for example, its user manuals, and as Apple intends iOS and iPadOS to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Apple knowingly induces others, including resellers, retailers, and end users, to directly infringe the '578 Patent, and that Apple possesses a specific intent to cause such infringement.

87.    Apple also contributes to infringement of the '578 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '578 Patent. These mobile devices are known by Apple to be especially made or especially adapted for use in the infringement of the '578 Patent. Specifically, on information and belief, Apple sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '578 Patent.

88.    Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

89.    As a result of Apple's infringement of the '578 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Apple the damages Smith Interface sustained (and continues to sustain) as a result of Apple's wrongful and infringing acts in an amount no less than a reasonable royalty.

90.    Apple's infringement of the '578 Patent has been willful. Apple has

COMPLAINT FOR PATENT INFRINGEMENT

known of the '578 Patent as described above and, at a minimum, at least since the time of or shortly after filing of the Complaint. Further, at least since the time of or shortly after filing of the Complaint, Apple has been aware of how iOS and iPadOS infringe at least claim 1 of the '578 Patent as detailed in the Complaint. Since that time, Apple has not updated or modified iOS or iPadOS to cease its infringement of the '578 Patent. Upon information and belief, Apple deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '578 Patent. Apple knew or should have known that its actions would cause infringement of the '578 Patent, yet, Apple has, and continues to, infringe the '578 Patent.

91. This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

92. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '578 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

93. *1(a): "An electronic device, comprising: a display; a touch interface; one or more processors; memory; and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions for displaying a home screen on the display, the home screen including an icon associated with an application;"*— The Accused Products are electronic devices comprising a display, a touch interface, one or more processors, memory, and one or more programs. The one or more programs are stored in the memory and configured to be executed by the one or more processors. The one or more programs include instructions for displaying a home screen on the display and the home screen includes

an icon associated with an application. An example is shown below:







https://www.apple.com/iphone-14-pro/specs/

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    94.    *1(b): "while displaying the home screen, detecting a first input by a*

17  *first contact on the icon;"*— The Accused Products are designed that while

18  displaying the home screen, they detect a first input by a first contact on the icon. An

19  example is shown below:

20
21
22
23
24
25
26
27
28

COMPLAINT FOR PATENT INFRINGEMENT



95.    *1(c): "in response to detecting the first input, replacing the home screen with a user interface of the application;"*— The Accused Products are designed that in response to detecting the first input, they replace the home screen with a user interface of the application. An example is shown below:

96.     ***1(d): "while displaying the user interface of the application, detecting a second input by a second contact that includes movement across the display in a direction;"***— The Accused Products are designed that while displaying the user interface of the application, they detect a second input by a second contact that includes movement across the display in a direction. An example is shown below:



97.     ***1(e): "in response to detecting the second input and in accordance with a determination that the second input meets one or more criteria that is met when the second input is detected to include a movement parameter that is above a movement threshold, displaying at least a portion of the user interface of the application in a first virtual display layer that appears at a lesser depth as compared to a second virtual display layer, such that the at least portion of the user interface of the application is reduced in size and is further displayed in its entirety when displayed in the first virtual display layer; and"***— The Accused Products are designed that in response to detecting the second input and in accordance with a

COMPLAINT FOR PATENT INFRINGEMENT

determination that the second input meets one or more criteria that is met when the second input is detected to include a movement parameter that is above a movement threshold, they display at least a portion of the user interface of the application in a first virtual display layer that appears at a lesser depth as compared to a second virtual display layer, such that the at least portion of the user interface of the application is reduced in size and is further displayed in its entirety when displayed in the first virtual display layer. An example is shown below:



98.    ***1(f): "in response to detecting the second input and in accordance with a determination that the second input does not meet the one or more criteria that is met when the second input is detected to include the movement parameter that is above the movement threshold, replacing the user interface of the application with the home screen including the icon associated with the application."*** — The Accused Products are designed that in response to detecting the second input and in accordance with a determination that the second input does not meet the one or more criteria that is met when the second input is detected to include the movement

parameter that is above the movement threshold, they replace the user interface of the application with the home screen including the icon associated with the application. An example is shown below:



## COUNT III

## (CLAIM FOR PATENT INFRINGEMENT OF THE '580 PATENT)

99.     Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

100.    A true and accurate copy of the '580 Patent is attached hereto as Exhibit 3.

101.    All claims of the '580 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

102.    The claims of the '580 Patent are directed to an improvement of the user interface on a mobile device and not an abstract idea.

103.    Smith Interface is the sole owner of the '580 Patent and possess the rights to past damages.

COMPLAINT FOR PATENT INFRINGEMENT

104. Independent claim 22 of the '580 Patent recites:

22. A method, comprising:

at a device with at least one non-transitory memory, a touch screen, a camera, and one or more processors in communication with the at least one non-transitory memory, the touch screen, and the camera:

displaying, via the touch screen, a first virtual display layer including contents;

detecting, via the touch screen, at least a portion of touch;

in response to an aspect of the touch being detected to surpass a threshold, displaying, via the touch screen, a plurality of markings in a second virtual display layer that appears to have a lesser depth than the first virtual display layer, where at least a portion of the second virtual display layer is at least partially translucent so that at least a portion of the contents of the first virtual display layer is visible through the at least portion of the second virtual display layer;

detecting, via the touch screen, another touch on at least one of the plurality of marking; and

in response to detection of the another touch on the at least one of the plurality of marking in the second virtual display layer that appears to have the lesser depth than the first virtual display layer, displaying, via the touch screen, a movement of one or more of the plurality of markings in the second virtual display layer; and

performing a zoom operation on the at least portion of the contents of the first virtual display layer without performing the zoom operation on the plurality of markings in the second virtual display layer, where the zoom operation is performed based on the movement of the one or more of the plurality of markings in the second virtual display layer, and the at least portion of the second virtual display layer is at

- 36 -

least partially translucent so that a result of the zoom operation on the at least portion of the contents of the first virtual display layer is visible through the at least portion of the second virtual display layer.

105.   In violation of 35 U.S.C. § 271, Apple has been and is still infringing (both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '580 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 22 of the '580 Patent, including but not limited to the Accused Products.

106.   As described above, Apple designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '580 Patent.

107.   On information and belief, Apple is currently and will continue to actively induce and encourage infringement of the '580 Patent. Apple has known of the '580 Patent as described above and, at a minimum, at least since the time this complaint was filed and served on Apple. On information and belief, Apple nevertheless actively encourages others to infringe the '580 Patent. On information and belief, Apple knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Apple's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Apple's instructions contained in, for example, its user manuals, and as Apple intends iOS and iPadOS to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Apple knowingly induces others, including resellers, retailers, and end users, to directly infringe the '580 Patent, and that Apple possesses a specific intent to cause such infringement.

COMPLAINT FOR PATENT INFRINGEMENT

108.    Apple also contributes to infringement of the '580 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '580 Patent. These mobile devices are known by Apple to be especially made or especially adapted for use in the infringement of the '580 Patent. Specifically, on information and belief, Apple sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '580 Patent.

109.    Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

110.    As a result of Apple's infringement of the '580 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Apple the damages Smith Interface sustained (and continues to sustain) as a result of Apple's wrongful and infringing acts in an amount no less than a reasonable royalty.

111.    Apple's infringement of the '580 Patent has been willful. Apple has known of the '580 Patent as described above and, at a minimum, at least since the time of or shortly after filing of the Complaint. Further, at least since the time of or shortly after filing of the Complaint, Apple has been aware of how iOS and iPadOS infringe at least claim 22 of the '580 Patent as detailed in the Complaint. Since that time, Apple has not updated or modified iOS or iPadOS to cease its infringement of the '580 Patent. Upon information and belief, Apple deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '580 Patent. Apple knew or should have known that its actions would cause infringement of the '580 Patent, yet, Apple has, and continues to, infringe the '580 Patent.

112.    This is an exceptional case warranting an award of treble damages to

- 38 -

Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

113.   By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 22 of the '580 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

114.   ***22(a): "A method, comprising: at a device with at least one non-transitory memory, a touch screen, a camera, and one or more processors in communication with the at least one non-transitory memory, the touch screen, and the camera:"***—The Accused Products practice a method comprising a device with at least one non-transitory memory, a touch screen, a camera, and one or more processors in communication with the at least one non-transitory memory, the touch screen, and the camera. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8



https://www.apple.com/iphone-14-pro/specs/

115.  ***22(b): "displaying, via the touch screen, a first virtual display layer including contents;"***—The Accused Products are designed to display, via the touch screen, a first virtual display layer including contents. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13



14   116.   *22(c): "detecting, via the touch screen, at least a portion of touch;"*—

15   The Accused Products are designed to detect, via the touch screen, at least a portion

16   of touch. An example is shown below:

17
18
19
20
21
22
23
24
25
26
27
28



- 41 -

COMPLAINT FOR PATENT INFRINGEMENT

117.   ***22(d): "in response to an aspect of the touch being detected to surpass a threshold, displaying, via the touch screen, a plurality of markings in a second virtual display layer that appears to have a lesser depth than the first virtual display layer, where at least a portion of the second virtual display layer is at least partially translucent so that at least a portion of the contents of the first virtual display layer is visible through the at least portion of the second virtual display layer;"***—The Accused Products are designed such that in response to an aspect of the touch being detected to surpass a threshold, display, via the touch screen, a plurality of markings in a second virtual display layer that appears to have a lesser depth than the first virtual display layer, where at least a portion of the second virtual display layer is at least partially translucent so that at least a portion of the contents of the first virtual display layer is visible through the at least portion of the second virtual display layer. An example is shown below:



118.   ***22(e): "detecting, via the touch screen, another touch on at least one of the plurality of marking; and"*** —The Accused Products are designed such that

they detect, via the touch screen, another touch on at least one of the plurality of marking. An example is shown below:

 

119.   ***22(f): "in response to detection of the another touch on the at least one of the plurality of marking in the second virtual display layer that appears to have the lesser depth than the first virtual display layer, displaying, via the touch screen, a movement of one or more of the plurality of markings in the second virtual display layer; and"*** —The Accused Products are designed such that in response to detection of the another touch on the at least one of the plurality of marking in the second virtual display layer that appears to have the lesser depth than the first virtual display layer, display, via the touch screen, a movement of one or more of the plurality of markings in the second virtual display layer. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT




120.   **22(g): "*performing a zoom operation on the at least portion of the contents of the first virtual display layer without performing the zoom operation on the plurality of markings in the second virtual display layer, where the zoom operation is performed based on the movement of the one or more of the plurality of markings in the second virtual display layer, and the at least portion of the second virtual display layer is at least partially translucent so that a result of the zoom operation on the at least portion of the contents of the first virtual display layer is visible through the at least portion of the second virtual display layer.*"**— The Accused Products are designed such that they perform a zoom operation on the at least portion of the contents of the first virtual display layer without performing the zoom operation on the plurality of markings in the second virtual display layer, where the zoom operation is performed based on the movement of the one or more of the plurality of markings in the second virtual display layer, and the at least portion of the second virtual display layer is at least partially translucent so that a result of the zoom operation on the at least portion of the contents of the first virtual display

COMPLAINT FOR PATENT INFRINGEMENT

layer is visible through the at least portion of the second virtual display layer. An example is shown below:

  

### COUNT IV

### (CLAIM FOR PATENT INFRINGEMENT OF THE '754 PATENT)

121.   Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

122.   A true and accurate copy of the '754 Patent is attached hereto as Exhibit 4.

123.   All claims of the '754 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

124.   The claims of the '754 Patent are directed to an improvement of the user interface on a mobile device and not an abstract idea.

125.   Smith Interface is the sole owner of the '754 Patent and possess the rights to past damages.

126.   Independent claim 2 of the '754 Patent recites:

COMPLAINT FOR PATENT INFRINGEMENT

2. An apparatus, comprising:

at least one non-transitory memory;

a touch screen; and

one or more processors in communication with the at least one non-transitory memory, and the touch screen, wherein the one or more processors execute instructions in the at least one non-transitory memory, to cause the apparatus to:

display an object and at least one other object;

detect at least part of a gesture on the touch screen; and

during detection of at least a portion of the gesture before a completion thereof is detected, blur, based on a change in a magnitude of the gesture being detected on the touch screen, at least a portion of the at least one other object.

127.   In violation of 35 U.S.C. § 271, Apple has been and is still infringing (both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '754 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 2 of the '754 Patent, including but not limited to the Accused Products.

128.   As described above, Apple designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '754 Patent.

129.   On information and belief, Apple is currently and will continue to actively induce and encourage infringement of the '754 Patent. Apple has known of the '754 Patent as described above and, at a minimum, at least since the time this complaint was filed and served on Apple. On information and belief, Apple nevertheless actively encourages others to infringe the '754 Patent. On information

COMPLAINT FOR PATENT INFRINGEMENT

and belief, Apple knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Apple's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Apple's instructions contained in, for example, its user manuals, and as Apple intends iOS and iPadOS to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Apple knowingly induces others, including resellers, retailers, and end users, to directly infringe the '754 Patent, and that Apple possesses a specific intent to cause such infringement.

130.   Apple also contributes to infringement of the '754 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '754 Patent. These mobile devices are known by Apple to be especially made or especially adapted for use in the infringement of the '754 Patent. Specifically, on information and belief, Apple sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '754 Patent.

131.   Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

132.   As a result of Apple's infringement of the '754 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Apple the damages Smith Interface sustained (and continues to sustain) as a result of Apple's wrongful and infringing acts in an amount no less than a reasonable royalty.

133.   Apple's infringement of the '754 Patent has been willful. Apple has

1   known of the '754 Patent as described above and, at a minimum, at least since the

2   time of or shortly after filing of the Complaint. Further, at least since the time of or

3   shortly after filing of the Complaint, Apple has been aware of how iOS and iPadOS

4   infringe at least claim 2 of the '754 Patent as detailed in the Complaint. Since that

5   time, Apple has not updated or modified iOS or iPadOS to cease its infringement of

6   the '754 Patent. Upon information and belief, Apple deliberately and intentionally

7   infringed, and continues to deliberately and intentionally infringe, the '754 Patent.

8   Apple knew or should have known that its actions would cause infringement of the

9   '754 Patent, yet, Apple has, and continues to, infringe the '754 Patent.

10       134.   This is an exceptional case warranting an award of treble damages to

11   Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's

12   fees under 35 U.S.C. § 285.

13       135.   By way of non-limiting example(s), set forth below (with claim

14   language in bold and italics) is exemplary evidence of infringement of claim 2 of the

15   '754 Patent by the Accused Products. This description is based on publicly available

16   information. Smith Interface reserves the right to modify this description, including,

17   for example, on the basis of information about the Accused Products that it obtains

18   during discovery.

19       136.   *2(a): "An apparatus, comprising: at least one non-transitory memory;*

20   *a touch screen; and one or more processors in communication with the at least one*

21   *non-transitory memory, and the touch screen, wherein the one or more processors*

22   *execute instructions in the at least one non-transitory memory, to cause the*

23   *apparatus to:"* — The Accused Products comprise, at least one non-transitory

24   memory, a touch screen, and one or more processors in communication with the at

25   least one non-transitory memory, and the touch screen, wherein the one or more

26   processors execute instructions in the at least one non-transitory memory. An

27   example is shown below:

28

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16





https://www.apple.com/iphone-14-pro/specs/

17    137.  *2(b): "display an object and at least one other object;"*— The Accused

18  Products are designed to display an object and at least one other object. An example

19  is shown below:

20
21
22
23
24
25
26
27
28



138.   *2(c): "detect at least part of a gesture on the touch screen; and"*— The Accused Products are designed to detect at least part of a gesture on the touch screen. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15      139.  *2(d): "during detection of at least a portion of the gesture before a*
16  *completion thereof is detected, blur, based on a change in a magnitude of the*
17  *gesture being detected on the touch screen, at least a portion of the at least one*
18  *other object."* — The Accused Products are designed to, during detection of at least
19  a portion of the gesture before a completion thereof is detected, blur, based on a
20  change in a magnitude of the gesture being detected on the touch screen, at least a
21  portion of the at least one other object. An example is shown below:
22
23
24
25
26
27
28

COMPLAINT FOR PATENT INFRINGEMENT

  

## COUNT V

### (CLAIM FOR PATENT INFRINGEMENT OF THE '755 PATENT)

140.   Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

141.   A true and accurate copy of the '755 Patent is attached hereto as Exhibit 5.

142.   All claims of the '755 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

143.   The claims of the '755 Patent are directed to an improvement of the user interface on a mobile device and not an abstract idea.

144.   Smith Interface is the sole owner of the '755 Patent and possess the rights to past damages.

145.   Independent claim 1 of the '755 Patent recites:

1.  An electronic device, comprising:

COMPLAINT FOR PATENT INFRINGEMENT

a display;

a touch-sensitive surface;

one or more processors;

memory; and

one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions for:

displaying a first user interface on the display, wherein the first user interface includes:

a background with an appearance, and

one or more foreground objects;

while displaying the first user interface on the display, detecting a first input by a first contact on the touch-sensitive surface at a location in the first user interface that corresponds to the background of the first user interface; and

in response to detecting the first input by the first contact, in accordance with a determination that the first contact has a magnitude that is above a threshold, dynamically changing the appearance of the background of the first user interface without changing an appearance of the one or more foreground objects in the first user interface, wherein the dynamic change in the appearance of the background of the first user interface is based at least in part on the magnitude of the first contact and wherein the dynamic change in the appearance of the background of the first user interface includes displaying in sequence at least some of a plurality of images based at least in part on the magnitude of the first contact.

146.  In violation of 35 U.S.C. § 271, Apple has been and is still infringing

(both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '755 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 1 of the '755 Patent, including but not limited to the Accused Products.

147. As described above, Apple designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '755 Patent.

148. On information and belief, Apple is currently and will continue to actively induce and encourage infringement of the '755 Patent. Apple has known of the '755 Patent as described above and, at a minimum, at least since the time this complaint was filed and served on Apple. On information and belief, Apple nevertheless actively encourages others to infringe the '755 Patent. On information and belief, Apple knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Apple's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Apple's instructions contained in, for example, its user manuals, and as Apple intends iOS and iPadOS to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Apple knowingly induces others, including resellers, retailers, and end users, to directly infringe the '755 Patent, and that Apple possesses a specific intent to cause such infringement.

149. Apple also contributes to infringement of the '755 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing

use and which embody a material part of the invention described in the '755 Patent. These mobile devices are known by Apple to be especially made or especially adapted for use in the infringement of the '755 Patent. Specifically, on information and belief, Apple sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '755 Patent.

150.    Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

151.    As a result of Apple's infringement of the '755 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Apple the damages Smith Interface sustained (and continues to sustain) as a result of Apple's wrongful and infringing acts in an amount no less than a reasonable royalty.

152.    Apple's infringement of the '755 Patent has been willful. Apple has known of the '755 Patent as described above and, at a minimum, at least since the time of or shortly after filing of the Complaint. Further, at least since the time of or shortly after filing of the Complaint, Apple has been aware of how iOS and iPadOS infringe at least claim 1 of the '755 Patent as detailed in the Complaint. Since that time, Apple has not updated or modified iOS or iPadOS to cease its infringement of the '755 Patent. Upon information and belief, Apple deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '755 Patent. Apple knew or should have known that its actions would cause infringement of the '755 Patent, yet, Apple has, and continues to, infringe the '755 Patent.

153.    This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

154.    By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the

- 55 -

'755 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

155.   *1(a): "An electronic device, comprising: a display; a touch-sensitive surface; one or more processors; memory; and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions for displaying a first user interface on the display, wherein the first user interface includes a background with an appearance, and one or more foreground objects;"* — The Accused Products are electronic devices comprising a display, a touch-sensitive surface, one or more processors, memory, and one or more programs. The one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs include instructions for displaying a first user interface on the display, wherein the first user interface includes a background with an appearance, and one or more foreground objects. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



https://www.apple.com/iphone-14-pro/specs/

- 57 -

COMPLAINT FOR PATENT INFRINGEMENT

156.   *1(b): "while displaying the first user interface on the display, detecting a first input by a first contact on the touch-sensitive surface at a location in the first user interface that corresponds to the background of the first user interface; and"* — The Accused Products are designed such that while displaying the first user interface on the display, they detect a first input by a first contact on the touch-sensitive surface at a location in the first user interface that corresponds to the background of the first user interface. An example is shown below:



157.   *1(c): "in response to detecting the first input by the first contact, in accordance with a determination that the first contact has a magnitude that is above a threshold, dynamically changing the appearance of the background of the first user interface without changing an appearance of the one or more foreground objects in the first user interface, wherein the dynamic change in the appearance of the background of the first user interface is based at least in part on the magnitude of the first contact and wherein the dynamic change in the appearance*

- 58 -

***of the background of the first user interface includes displaying in sequence at least some of a plurality of images based at least in part on the magnitude of the first contact.***" — The Accused Products are designed such that in response to detecting the first input by the first contact, in accordance with a determination that the first contact has a magnitude that is above a threshold, dynamically changing the appearance of the background of the first user interface without changing an appearance of the one or more foreground objects in the first user interface, wherein the dynamic change in the appearance of the background of the first user interface is based at least in part on the magnitude of the first contact and wherein the dynamic change in the appearance of the background of the first user interface includes displaying in sequence at least some of a plurality of images based at least in part on the magnitude of the first contact. An example is shown below:



COMPLAINT FOR PATENT INFRINGEMENT

## COUNT VI

## (CLAIM FOR PATENT INFRINGEMENT OF THE '758 PATENT)

158.   Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

159.   A true and accurate copy of the '758 Patent is attached hereto as Exhibit 6.

160.   All claims of the '758 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

161.   The claims of the '758 Patent are directed to an improvement of the user interface on a mobile device and not an abstract idea.

162.   Smith Interface is the sole owner of the '758 Patent and possess the rights to past damages.

163.   Independent claim 1 of the '758 Patent recites:

1.  An electronic device, comprising:

a display;

a touch-sensitive surface;

one or more processors;

memory; and

one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions for:

displaying, on the display, an application launching user interface that includes a plurality of application icons for launching corresponding applications;

while displaying the application launching user interface, detecting a first single-finger touch input that includes detecting the first single-finger touch input at a location on the touch-sensitive surface that corresponds to a first application icon of the plurality of application

- 60 -

icons, wherein the first application icon is for launching a first application that is associated with one or more corresponding action options; and

in response to detecting the first single-finger touch input, determining a response to the first single-finger touch input based on evaluating the first single-finger touch input against at least one of a plurality of criteria, including evaluating a duration of the first single-finger touch input against at least one of:

one or more application-launch criteria, one or more action-option-display criteria, or one or more operation criteria, and further including evaluating a movement of the first single-finger touch input against one or more movement criteria, for:

in accordance with a determination that the first single-finger touch input meets the one or more application-launch criteria that is met when the duration of the first single-finger touch input is evaluated to be less than a first time threshold, launching the first application,

in accordance with a determination that the first single-finger touch input meets the one or more action-option-display criteria that is met when the duration of the first single-finger touch input is evaluated to be greater than the first time threshold, displaying one or more action option objects associated with the first application without launching the first application,

in accordance with a determination that the first single-finger touch input meets the one or more operation criteria that is met when the duration of the first single-finger touch input is evaluated to be greater than a second time threshold that is greater than the first time threshold, performing an operation in connection with the first application icon, and

COMPLAINT FOR PATENT INFRINGEMENT

in accordance with a determination that the first single-finger touch input meets the one or more movement criteria, moving the first application icon in a foreground virtual display layer so that the first application icon appears to float above a background virtual display layer.

164.   In violation of 35 U.S.C. § 271, Apple has been and is still infringing (both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '758 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 1 of the '758 Patent, including but not limited to the Accused Products.

165.   As described above, Apple designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '758 Patent.

166.   On information and belief, Apple is currently and will continue to actively induce and encourage infringement of the '758 Patent. Apple has known of the '758 Patent as described above and, at a minimum, at least since the time this complaint was filed and served on Apple. On information and belief, Apple nevertheless actively encourages others to infringe the '758 Patent. On information and belief, Apple knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Apple's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Apple's instructions contained in, for example, its user manuals, and as Apple intends iOS and iPadOS to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Apple knowingly induces others, including resellers, retailers, and end

COMPLAINT FOR PATENT INFRINGEMENT

users, to directly infringe the '758 Patent, and that Apple possesses a specific intent to cause such infringement.

167. Apple also contributes to infringement of the '758 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '758 Patent. These mobile devices are known by Apple to be especially made or especially adapted for use in the infringement of the '758 Patent. Specifically, on information and belief, Apple sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '758 Patent.

168. Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

169. As a result of Apple's infringement of the '758 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Apple the damages Smith Interface sustained (and continues to sustain) as a result of Apple's wrongful and infringing acts in an amount no less than a reasonable royalty.

170. Apple's infringement of the '758 Patent has been willful. Apple has known of the '758 Patent as described above and, at a minimum, at least since the time of or shortly after filing of the Complaint. Further, at least since the time of or shortly after filing of the Complaint, Apple has been aware of how iOS and iPadOS infringe at least claim 1 of the '758 Patent as detailed in the Complaint. Since that time, Apple has not updated or modified iOS or iPadOS to cease its infringement of the '758 Patent. Upon information and belief, Apple deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '758 Patent. Apple knew or should have known that its actions would cause infringement of the

'758 Patent, yet, Apple has, and continues to, infringe the '758 Patent.

171. This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

172. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '758 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

173. *1(a): "An electronic device, comprising: a display; a touch-sensitive surface; one or more processors; memory; and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions for:"*— The Accused Products are electronic devices that comprise a display, a touch-sensitive surface, one or more processors, memory, and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions for. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT



https://www.apple.com/iphone-14-pro/specs/

174.   ***1(b): "displaying, on the display, an application launching user interface that includes a plurality of application icons for launching corresponding applications;"***— The Accused Products are designed for displaying, on the display, an application launching user interface that includes a plurality of application icons for launching corresponding applications. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16      175.  *1(c): "while displaying the application launching user interface,*
17 *detecting a first single-finger touch input that includes detecting the first single-*
18 *finger touch input at a location on the touch-sensitive surface that corresponds to*
19 *a first application icon of the plurality of application icons, wherein the first*
20 *application icon is for launching a first application that is associated with one or*
21 *more corresponding action options; and"*— The Accused Products are designed for,
22 while displaying the application launching user interface, detecting a first single-
23 finger touch input that includes detecting the first single-finger touch input at a
24 location on the touch-sensitive surface that corresponds to a first application icon of
25 the plurality of application icons, wherein the first application icon is for launching
26 a first application that is associated with one or more corresponding action options.
27 An example is shown below:

28

COMPLAINT FOR PATENT INFRINGEMENT



176.  *1(d): "in response to detecting the first single-finger touch input, determining a response to the first single-finger touch input based on evaluating the first single-finger touch input against at least one of a plurality of criteria, including evaluating a duration of the first single-finger touch input against at least one of:"*— The Accused Products are designed for, in response to detecting the first single-finger touch input, determining a response to the first single-finger touch input based on evaluating the first single-finger touch input against at least one of a plurality of criteria, including evaluating a duration of the first single-finger touch input against at least one of a plurality of criteria. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT




177.   **1(e): "one or more application-launch criteria, one or more action-option-display criteria, or one or more operation criteria, and further including evaluating a movement of the first single-finger touch input against one or more movement criteria, for:"**— The Accused Products include one or more application-launch criteria, one or more action-option-display criteria, or one or more operation criteria, and further including evaluating a movement of the first single-finger touch input against one or more movement criteria. An example is shown below:







COMPLAINT FOR PATENT INFRINGEMENT




178. **1(f): "in accordance with a determination that the first single-finger touch input meets the one or more application-launch criteria that is met when the duration of the first single-finger touch input is evaluated to be less than a first time threshold, launching the first application,"**— The Accused Products are designed for, in accordance with a determination that the first single-finger touch input meets the one or more application-launch criteria that is met when the duration of the first single-finger touch input is evaluated to be less than a first time threshold, and launching the first application. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT



179.   *1(g): "in accordance with a determination that the first single-finger touch input meets the one or more action-option-display criteria that is met when the duration of the first single-finger touch input is evaluated to be greater than the first time threshold, displaying one or more action option objects associated with the first application without launching the first application,"*— The Accused Products are designed for, in accordance with a determination that the first single-finger touch input meets the one or more action-option-display criteria that is met when the duration of the first single-finger touch input is evaluated to be greater than the first time threshold, displaying one or more action option objects associated with the first application without launching the first application. An example is shown below:

1
2
3
4
5
6
7
8
9
10
11
12
13



14   180.   *1(h): "in accordance with a determination that the first single-finger*
15   *touch input meets the one or more operation criteria that is met when the duration*
16   *of the first single-finger touch input is evaluated to be greater than a second time*
17   *threshold that is greater than the first time threshold, performing an operation in*
18   *connection with the first application icon, and"*— The Accused Products are
19   designed for, in accordance with a determination that the first single-finger touch
20   input meets the one or more operation criteria that is met when the duration of the
21   first single-finger touch input is evaluated to be greater than a second time threshold
22   that is greater than the first time threshold, performing an operation in connection
23   with the first application icon. An example is shown below:

24
25
26
27
28

COMPLAINT FOR PATENT INFRINGEMENT

1



2

3

4

5

6

7

8

9

10

11

12

13    181.   *1(i): "in accordance with a determination that the first single-finger*
14    *touch input meets the one or more movement criteria, moving the first application*
15    *icon in a foreground virtual display layer so that the first application icon appears*
16    *to float above a background virtual display layer"*— The Accused Products are
17    designed for, in accordance with a determination that the first single-finger touch
18    input meets the one or more movement criteria, moving the first application icon in
19    a foreground virtual display layer so that the first application icon appears to float
20    above a background virtual display layer. An example is shown below:

21

22

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12

  

13
14

## COUNT VII

## (CLAIM FOR PATENT INFRINGEMENT OF THE '212 PATENT)

15   182.   Smith Interface incorporates the foregoing paragraphs by reference as if
16   fully set forth herein.

17   183.   A true and accurate copy of the '212 Patent is attached hereto as Exhibit
18   7.

19   184.   All claims of the '212 Patent are valid and enforceable, and each enjoys
20   a statutory presumption of validity under 35 U.S.C. § 282.

21   185.   The claims of the '212 Patent are directed to an improvement of the user
22   interface on a mobile device and not an abstract idea.

23   186.   Smith Interface is the sole owner of the '212 Patent and possess the
24   rights to past damages.

25   187.   Independent claim 1 of the '212 Patent recites:

26   1.   A non-transitory computer-readable media storing computer
27   instructions that; when executed by at least one processor of a mobile

28

COMPLAINT FOR PATENT INFRINGEMENT

device including a touch screen, a memory, and an actuator coupled to the at least one processor; cause the mobile device to:

display indicia associated with an application, utilizing the touch screen;

when a first duration of a touch being applied to the touch screen is detected as ceasing in connection with the indicia, perform an operation;

when a second duration of the touch, that is different than the first duration of the touch, being applied to the touch screen is detected in connection with the indicia after the first duration is detected without the ceasing, output feedback that is perceptible by touch, utilizing the actuator;

when the second duration of the touch being applied to the touch screen is detected in connection with the indicia after the first duration of the touch is detected without the ceasing, display at least one menu including a plurality of particular actions;

when a selection touch being applied to the touch screen is detected in connection with at least one of the particular actions of the at least one menu after the second duration of the touch being applied to the touch screen is detected in connection with the indicia after the first duration of the touch is detected without the ceasing, perform the at least one particular action; and

when a slide or swipe gesture being applied to the touch screen is detected after the second duration of the touch being applied to the touch screen is detected in connection with the indicia after the first duration of the touch is detected without the ceasing, change at least one aspect of the display of the at least one menu.

188.  In violation of 35 U.S.C. § 271, Apple has been and is still infringing

COMPLAINT FOR PATENT INFRINGEMENT

(both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '212 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 1 of the '212 Patent, including but not limited to the Accused Products.

189. As described above, Apple designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '212 Patent.

190. On information and belief, Apple is currently and will continue to actively induce and encourage infringement of the '212 Patent. Apple has known of the '212 Patent as described above and, at a minimum, at least since the time this complaint was filed and served on Apple. On information and belief, Apple nevertheless actively encourages others to infringe the '212 Patent. On information and belief, Apple knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Apple's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Apple's instructions contained in, for example, its user manuals, and as Apple intends iOS and iPadOS to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Apple knowingly induces others, including resellers, retailers, and end users, to directly infringe the '212 Patent, and that Apple possesses a specific intent to cause such infringement.

191. Apple also contributes to infringement of the '212 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing

use and which embody a material part of the invention described in the '212 Patent. These mobile devices are known by Apple to be especially made or especially adapted for use in the infringement of the '212 Patent. Specifically, on information and belief, Apple sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '212 Patent.

192.   Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

193.   As a result of Apple's infringement of the '212 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Apple the damages Smith Interface sustained (and continues to sustain) as a result of Apple's wrongful and infringing acts in an amount no less than a reasonable royalty.

194.   Apple's infringement of the '212 Patent has been willful. Apple has known of the '212 Patent as described above and, at a minimum, at least since the time of or shortly after filing of the Complaint. Further, at least since the time of or shortly after filing of the Complaint, Apple has been aware of how iOS and iPadOS infringe at least claim 1 of the '212 Patent as detailed in the Complaint. Since that time, Apple has not updated or modified iOS or iPadOS to cease its infringement of the '212 Patent. Upon information and belief, Apple deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '212 Patent. Apple knew or should have known that its actions would cause infringement of the '212 Patent, yet, Apple has, and continues to, infringe the '212 Patent.

195.   This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

196.   By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the

'212 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

197.   ***1(a): "A non-transitory computer-readable media storing computer instructions that; when executed by at least one processor of a mobile device including a touch screen, a memory, and an actuator coupled to the at least one processor; cause the mobile device to:"*** — The Accused Products include a non-transitory computer-readable media storing computer instructions that, when executed by at least one processor of a mobile device including a touch screen, a memory, and an actuator coupled to the at least one processor, cause the mobile device to perform. An example is shown below:





https://www.apple.com/iphone-14-pro/specs/

- 78 -

COMPLAINT FOR PATENT INFRINGEMENT

198.   *1(b): "display indicia associated with an application, utilizing the touch screen;"*— The Accused Products are designed to display indicia associated with an application, utilizing the touch screen. An example is shown below:



199.   *1(c): "when a first duration of a touch being applied to the touch screen is detected as ceasing in connection with the indicia, perform an operation;"*— The Accused Products are designed that when a first duration of a touch being applied to the touch screen is detected as ceasing in connection with the indicia, perform an operation. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13

 

14   200.   *1(d): "when a second duration of the touch, that is different than the*
15   *first duration of the touch, being applied to the touch screen is detected in*
16   *connection with the indicia after the first duration is detected without the ceasing,*
17   *output feedback that is perceptible by touch, utilizing the actuator;"*— The Accused
18   Products are designed that when a second duration of the touch, that is different than
19   the first duration of the touch, being applied to the touch screen is detected in
20   connection with the indicia after the first duration is detected without the ceasing,
21   output feedback that is perceptible by touch, utilizing the actuator. An example is
22   shown below:

23
24
25
26
27
28

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13



14       201.   *1(e): "when the second duration of the touch being applied to the*
15   *touch screen is detected in connection with the indicia after the first duration of*
16   *the touch is detected without the ceasing, display at least one menu including a*
17   *plurality of particular actions;"*— The Accused Products are designed that when the
18   second duration of the touch being applied to the touch screen is detected in
19   connection with the indicia after the first duration of the touch is detected without the
20   ceasing, display at least one menu including a plurality of particular actions. An
21   example is shown below:
22
23
24
25
26
27
28

COMPLAINT FOR PATENT INFRINGEMENT



202.  *1(f): "when a selection touch being applied to the touch screen is detected in connection with at least one of the particular actions of the at least one menu after the second duration of the touch being applied to the touch screen is detected in connection with the indicia after the first duration of the touch is detected without the ceasing, perform the at least one particular action; and"*— The Accused Products are designed that when a selection touch being applied to the touch screen is detected in connection with at least one of the particular actions of the at least one menu after the second duration of the touch being applied to the touch screen is detected in connection with the indicia after the first duration of the touch is detected without the ceasing, perform the at least one particular action. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13

 

14    203.    *1(g): "when a slide or swipe gesture being applied to the touch screen*
15  *is detected after the second duration of the touch being applied to the touch screen*
16  *is detected in connection with the indicia after the first duration of the touch is*
17  *detected without the ceasing, change at least one aspect of the display of the at least*
18  *one menu."*— The Accused Products are designed that when a slide or swipe gesture
19  being applied to the touch screen is detected after the second duration of the touch
20  being applied to the touch screen is detected in connection with the indicia after the
21  first duration of the touch is detected without the ceasing, change at least one aspect
22  of the display of the at least one menu. An example is shown below:

23
24
25
26
27
28

COMPLAINT FOR PATENT INFRINGEMENT

 

## COUNT VIII

## (CLAIM FOR PATENT INFRINGEMENT OF THE '581 PATENT)

204.   Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

205.   A true and accurate copy of the '581 Patent is attached hereto as Exhibit 8.

206.   All claims of the '581 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

207.   The claims of the '581 Patent are directed to an improvement of the user interface on a mobile device and not an abstract idea.

208.   Smith Interface is the sole owner of the '581 Patent and possess the rights to past damages.

209.   Independent claim 1 of the '581 Patent recites:

1.  An electronic device, comprising:

a display;

COMPLAINT FOR PATENT INFRINGEMENT

1    a touch-sensitive interaction surface;

2    an actuator;

3    one or more processors;

4    memory; and

5    one or more programs, wherein the one or more programs are stored in

6    the memory and configured to be executed by the one or more

7    processors, the one or more programs including instructions to:

8    display, on the display and via a user interface of a network browser

9    application, a first web page including a hyperlink that identifies

10   a second web page;

11   detect a first contact starting at a first contact point at a first contact

12   time on the touch-sensitive interaction surface;

13   detect an end of the first contact at a second contact time;

14   determine a duration of the first contact as a difference between the

15   first contact time and the second contact time;

16   determine whether there is a contact movement of the first contact

17   between the first contact point and a second contact point;

18   determine whether the first contact point of the first contact

19   corresponds with a location of the hyperlink of the first web page;

20   when: the first web page is displayed via the user interface of the

21   network browser application, the duration of the first contact is

22   determined to be less than a first user-configurable predefined

23   duration, and the end of the first contact is detected: avoid display,

24   on the first web page, a result of any operation based on the first

25   contact;

26   when: the first web page is displayed via the user interface of the

27   network browser application, the duration of the first contact is

28   determined to be greater than the first user-configurable

- 85 -

COMPLAINT FOR PATENT INFRINGEMENT

predefined duration and less than a second user-configurable predefined duration, the first contact point of the first contact is determined to correspond with the location of the hyperlink of the first web page, it is not determined that there is the contact movement of the first contact between the first contact point and the second contact point, and the end of the first contact is detected: replace the display of the first web page with the second web page via the user interface of the network browser application; and

when: the first web page is displayed via the user interface of the network browser application, the duration of the first contact is determined to be greater than the second user-configurable predefined duration, the first contact point of the first contact is determined to correspond with the location of the hyperlink of the first web page, it is not determined that there is the contact movement of the first contact between the first contact point and the second contact point, and the end of the first contact is not detected: output, utilizing the actuator, a first feedback that is perceptible by touch and display a menu including at least one option for, in response to detection of a selection thereof, performing an operation on a web address associated with the hyperlink of the first web page, and further display at least a portion of the second web page, such that at least the at least portion of the second web page is displayed in at least one first virtual display layer which appears above at least one second virtual display layer that includes at least a portion of the user interface of the network browser application that remains at least partially visible.

COMPLAINT FOR PATENT INFRINGEMENT

210.   In violation of 35 U.S.C. § 271, Apple has been and is still infringing (both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '581 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 1 of the '581 Patent, including but not limited to the Accused Products.

211.   As described above, Apple designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '581 Patent.

212.   On information and belief, Apple is currently and will continue to actively induce and encourage infringement of the '581 Patent. Apple has known of the '581 Patent as described above and, at a minimum, at least since the time this complaint was filed and served on Apple. On information and belief, Apple nevertheless actively encourages others to infringe the '581 Patent. On information and belief, Apple knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Apple's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Apple's instructions contained in, for example, its user manuals, and as Apple intends iOS and iPadOS to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Apple knowingly induces others, including resellers, retailers, and end users, to directly infringe the '581 Patent, and that Apple possesses a specific intent to cause such infringement.

213.   Apple also contributes to infringement of the '581 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple

- 87 -

COMPLAINT FOR PATENT INFRINGEMENT

constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '581 Patent. These mobile devices are known by Apple to be especially made or especially adapted for use in the infringement of the '581 Patent. Specifically, on information and belief, Apple sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '581 Patent.

214. Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

215. As a result of Apple's infringement of the '581 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Apple the damages Smith Interface sustained (and continues to sustain) as a result of Apple's wrongful and infringing acts in an amount no less than a reasonable royalty.

216. Apple's infringement of the '581 Patent has been willful. Apple has known of the '581 Patent as described above and, at a minimum, at least since the time of or shortly after filing of the Complaint. Further, at least since the time of or shortly after filing of the Complaint, Apple has been aware of how iOS and iPadOS infringe at least claim 1 of the '581 Patent as detailed in the Complaint. Since that time, Apple has not updated or modified iOS or iPadOS to cease its infringement of the '581 Patent. Upon information and belief, Apple deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '581 Patent. Apple knew or should have known that its actions would cause infringement of the '581 Patent, yet, Apple has, and continues to, infringe the '581 Patent.

217. This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

218. By way of non-limiting example(s), set forth below (with claim

COMPLAINT FOR PATENT INFRINGEMENT

language in bold and italics) is exemplary evidence of infringement of claim 1 of the '581 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

219.   ***1(a): "An electronic device, comprising: a display; a touch-sensitive interaction surface; an actuator; one or more processors; memory; and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions to:"***— The Accused Products are electronic devices comprising a display, a touch-sensitive interaction surface, an actuator, one or more processors, memory, and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions to. An example is shown below:






https://www.apple.com/iphone-14-pro/specs/

COMPLAINT FOR PATENT INFRINGEMENT

220.   ***1(b): "display, on the display and via a user interface of a network browser application, a first web page including a hyperlink that identifies a second web page;"*** — The Accused Products are designed to display, on the display and via a user interface of a network browser application, a first web page including a hyperlink that identifies a second web page. An example is shown below:



221.   ***1(c): "detect a first contact starting at a first contact point at a first contact time on the touch-sensitive interaction surface; detect an end of the first contact at a second contact time; determine a duration of the first contact as a difference between the first contact time and the second contact time; determine whether there is a contact movement of the first contact between the first contact point and a second contact point"*** — The Accused Products are designed to detect a first contact starting at a first contact point at a first contact time on the touch-sensitive interaction surface; detect an end of the first contact at a second contact time; determine a duration of the first contact as a difference between the first contact

COMPLAINT FOR PATENT INFRINGEMENT

1    time and the second contact time; determine whether there is a contact movement of

2    the first contact between the first contact point and a second contact point. An

3    example is shown below:



4
5
6
7
8
9
10
11
12
13
14
15
16
17

18    222.  *1(d): "determine whether the first contact point of the first contact*

19    *corresponds with a location of the hyperlink of the first web page;"*— The Accused

20    Products are designed to determine whether the first contact point of the first contact

21    corresponds with a location of the hyperlink of the first web page. An example is

22    shown below:

23
24
25
26
27
28



223.   *1(e): "when: the first web page is displayed via the user interface of the network browser application, the duration of the first contact is determined to be less than a first user-configurable predefined duration, and the end of the first contact is detected: avoid display, on the first web page, a result of any operation based on the first contact;"*— The Accused Products are designed such that when: the first web page is displayed via the user interface of the network browser application, the duration of the first contact is determined to be less than a first user-configurable predefined duration, and the end of the first contact is detected: avoid display, on the first web page, a result of any operation based on the first contact. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT




224. **1(f): "when: the first web page is displayed via the user interface of the network browser application, the duration of the first contact is determined to be greater than the first user-configurable predefined duration and less than a second user-configurable predefined duration, the first contact point of the first contact is determined to correspond with the location of the hyperlink of the first web page, it is not determined that there is the contact movement of the first contact between the first contact point and the second contact point, and the end of the first contact is detected: replace the display of the first web page with the second web page via the user interface of the network browser application; and"**— The Accused Products are designed such that when: the first web page is displayed via the user interface of the network browser application, the duration of the first contact is determined to be greater than the first user-configurable predefined duration and less than a second user-configurable predefined duration, the first contact point of the first contact is determined to correspond with the location of the hyperlink of the first

COMPLAINT FOR PATENT INFRINGEMENT

1   web page, it is not determined that there is the contact movement of the first contact

2   between the first contact point and the second contact point, and the end of the first

3   contact is detected: replace the display of the first web page with the second web

4   page via the user interface of the network browser application. An example is shown

5   below:



COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24
25
26



27    225.   *1(g): "when: the first web page is displayed via the user interface of*

28    *the network browser application, the duration of the first contact is determined to*

- 95 -

*be greater than the second user-configurable predefined duration, the first contact point of the first contact is determined to correspond with the location of the hyperlink of the first web page, it is not determined that there is the contact movement of the first contact between the first contact point and the second contact point, and the end of the first contact is not detected: output, utilizing the actuator, a first feedback that is perceptible by touch and display a menu including at least one option for, in response to detection of a selection thereof, performing an operation on a web address associated with the hyperlink of the first web page, and further display at least a portion of the second web page, such that at least the at least portion of the second web page is displayed in at least one first virtual display layer which appears above at least one second virtual display layer that includes at least a portion of the user interface of the network browser application that remains at least partially visible.*"— The Accused Products are designed such that when: the first web page is displayed via the user interface of the network browser application, the duration of the first contact is determined to be greater than the second user-configurable predefined duration, the first contact point of the first contact is determined to correspond with the location of the hyperlink of the first web page, it is not determined that there is the contact movement of the first contact between the first contact point and the second contact point, and the end of the first contact is not detected: output, utilizing the actuator, a first feedback that is perceptible by touch and display a menu including at least one option for, in response to detection of a selection thereof, performing an operation on a web address associated with the hyperlink of the first web page, and further display at least a portion of the second web page, such that at least the at least portion of the second web page is displayed in at least one first virtual display layer which appears above at least one second virtual display layer that includes at least a portion of the user interface of the network browser application that remains at least partially visible. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT











COMPLAINT FOR PATENT INFRINGEMENT

## COUNT IX

### (CLAIM FOR PATENT INFRINGEMENT OF THE '114 PATENT)

226.   Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

227.   A true and accurate copy of the '114 Patent is attached hereto as Exhibit 9.

228.   All claims of the '114 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

229.   The claims of the '114 Patent are directed to an improvement of the user interface on a mobile device and not an abstract idea.

230.   Smith Interface is the sole owner of the '114 Patent and possess the rights to past damages.

231.   Independent claim 27 of the '114 Patent recites:

27.     An apparatus, comprising:

at least one non-transitory memory storing instructions and a plurality of applications;

a touch screen; and

one or more processors in communication with the at least one non-transitory memory and the touch screen, wherein the one or more processors execute the instructions to cause the apparatus to:

display an object on at least a portion of an interface;

detect a gesture via the touch screen on the object;

perform a first function in a first touch state;

perform a second function in a second touch state; and

during detection of at least a portion of the gesture and based on a change in a duration of the gesture being detected via the touch screen on the object, perform a scale operation in connection with the at least portion of the interface, where the scale operation

- 98 -

COMPLAINT FOR PATENT INFRINGEMENT

1                             includes a reduction in a size that is inversely related to the duration

2                             of the gesture being detected via the touch screen on the object.

3        232.   In violation of 35 U.S.C. § 271, Apple has been and is still infringing

4 (both literally and/or under the doctrine of equivalents), contributing to infringement,

5 and/or inducing others to infringe of the '114 Patent by making, using, offering for

6 sale, selling, importing, or encouraging and intending that others to use mobile

7 devices that practice at least claim 27 of the '114 Patent, including but not limited to

8 the Accused Products.

9        233.   As described above, Apple designs, manufactures, makes, uses,

10 provides, imports into the United States, sells and/or offers for sale in the United

11 States the Accused Products and thus directly infringes (both literally and/or under

12 the doctrine of equivalents) the '114 Patent.

13        234.   On information and belief, Apple is currently and will continue to

14 actively induce and encourage infringement of the '114 Patent. Apple has known of

15 the '114 Patent as described above and, at a minimum, at least since the time this

16 complaint was filed and served on Apple. On information and belief, Apple

17 nevertheless actively encourages others to infringe the '114 Patent. On information

18 and belief, Apple knowingly induces infringement by others, including resellers,

19 retailers, and end users of the Accused Products. For example, Apple's customers

20 and the end users of the Accused Products test and/or operate the Accused Products

21 in the United States in accordance with Apple's instructions contained in, for

22 example, its user manuals, and as Apple intends iOS, iPadOS, and watchOS to be

23 used, thereby also performing the claimed methods and directly infringing the

24 asserted claims of the Accused Products requiring such operation. These facts give

25 rise to a reasonable inference that Apple knowingly induces others, including

26 resellers, retailers, and end users, to directly infringe the '114 Patent, and that Apple

27 possesses a specific intent to cause such infringement.

28        235.   Apple also contributes to infringement of the '114 Patent by selling for

COMPLAINT FOR PATENT INFRINGEMENT

importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '114 Patent. These mobile devices are known by Apple to be especially made or especially adapted for use in the infringement of the '114 Patent. Specifically, on information and belief, Apple sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '114 Patent.

236.   Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

237.   As a result of Apple's infringement of the '114 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Apple the damages Smith Interface sustained (and continues to sustain) as a result of Apple's wrongful and infringing acts in an amount no less than a reasonable royalty.

238.   Apple's infringement of the '114 Patent has been willful. Apple has known of the '114 Patent as described above and, at a minimum, at least since the time of or shortly after filing of the Complaint. Further, at least since the time of or shortly after filing of the Complaint, Apple has been aware of how iOS, iPadOS, and watchOS infringe at least claim 27 of the '114 Patent as detailed in the Complaint. Since that time, Apple has not updated or modified iOS, iPadOS, or watchOS to cease its infringement of the '114 Patent. Upon information and belief, Apple deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '114 Patent. Apple knew or should have known that its actions would cause infringement of the '114 Patent, yet, Apple has, and continues to, infringe the '114 Patent.

239.   This is an exceptional case warranting an award of treble damages to

Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

240. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 27 of the '114 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

241. ***27(a): "An apparatus, comprising: at least one non-transitory memory storing instructions and a plurality of applications; a touch screen; and one or more processors in communication with the at least one non-transitory memory and the touch screen, wherein the one or more processors execute the instructions to cause the apparatus to:"*** — The Accused Products comprise at least one non-transitory memory storing instructions and a plurality of applications, a touch screen, and one or more processors in communication with the at least one non-transitory memory and the touch screen, wherein the one or more processors execute the instructions to cause the apparatus to perform. An example is shown below:




242. ***27(b): "display an object on at least a portion of an interface;"*** — The Accused Products are designed to display an object on at least a portion of an

COMPLAINT FOR PATENT INFRINGEMENT

interface. An example is shown below:

243.  ***27(c): "detect a gesture via the touch screen on the object;"*** — The Accused Products are designed to detect a gesture via the touch screen on the object. An example is shown below:



244.  ***27(d): "perform a first function in a first touch state;"*** — The Accused Products are designed to perform a first function in a first touch state. An example is shown below:

COMPLAINT FOR PATENT INFRINGEMENT

 

245.   ***27(e): "perform a second function in a second touch state; and"***—
The Accused Products are designed to perform a second function in a second touch state. An example is shown below:



246.   ***27(f): "during detection of at least a portion of the gesture and based on a change in a duration of the gesture being detected via the touch screen on the object, perform a scale operation in connection with the at least portion of the interface, where the scale operation includes a reduction in a size that is inversely related to the duration of the gesture being detected via the touch screen on the object."***— The Accused Products are designed such that during detection of at least a portion of the gesture and based on a change in a duration of the gesture being detected via the touch screen on the object, perform a scale operation in connection with the at least portion of the interface, where the scale operation includes a reduction in a size that is inversely related to the duration of the gesture being

COMPLAINT FOR PATENT INFRINGEMENT

detected via the touch screen on the object. An example is shown below:



## JURY DEMAND

247. Smith Interface demands, pursuant to Federal Rules of Civil Procedure 38, a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

248. Smith Interface respectfully requests that the Court:

A. Adjudge that Apple has and is infringing the Asserted Patents;

B. Adjudge that Apple's infringement of the Asserted Patents has been willful;

C. Award Smith Interface damages in an amount adequate to compensate Smith Interface for Apple's infringement of the Asserted Patents, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

D. Award enhanced damages pursuant to 35 U.S.C. § 284;

E. Enter an order finding that this is an exceptional case and awarding Smith Interface its costs, attorney's fees, and expenses, whether under 35 U.S.C. § 285 or otherwise;

F. Award pre-judgment and post-judgment interest on the damages awarded at the highest rate allowed by law;

G. Order an accounting of all damages; and

COMPLAINT FOR PATENT INFRINGEMENT

H.   Grant Smith Interface such other and further relief, general and special, at law or in equity, as the Court deems just and equitable.

Dated: June 27, 2023

Respectfully submitted,

_/s/ Brian A. Sun_

BRIAN A. SUN (CA SBN 89410)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9222
brian.sun@nortonrosefulbright.com

BRETT C. GOVETT (*Pro Hac Vice* forthcoming)
(TX SBN 8235900)
VLADA A. WENDEL (*Pro Hac Vice* forthcoming)
(TX SBN 8235900)
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
brett.govett@nortonrosefulbright.com
vlada.wendel@nortonrosefulbright.com

DANIEL S. LEVENTHAL (*Pro Hac Vice* forthcoming)
(TX SBN 24050923)
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
daniel.leventhal@nortonrosefulbright.com

STEPHANIE N. DEBROW (*Pro Hac Vice* forthcoming)
(TX SBN 24074119)
DANIEL S. SHUMINER (*Pro Hac Vice* forthcoming)
(TX SBN 24124688)
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 563-3094
stephanie.debrow@nortonrosefulbright.com
daniel.shuminer@nortonrosefulbright.com

*Counsel for Plaintiff Smith Interface Technologies, LLC*

COMPLAINT FOR PATENT INFRINGEMENT