1   SEAN CUNNINGHAM, Bar No. 174931
2   sean.cunningham@us.dlapiper.com
    RICHARD MULLOY, Bar No. 199278
3   richard.mulloy@us.dlapiper.com
4   ROBERT WILLIAMS, Bar No. 246990
    robert.williams@us.dlapiper.com
5   PETER MAGGIORE, Bar No. 292534
6   peter.maggiore@us.dlapiper.com
    DLA PIPER LLP (US)
7   4365 Executive Dr, Suite 1100
8   San Diego, California 92121-2133
    Telephone: 858.677.1400
9   Facsimile: 858.677.1401

10  Attorneys for Defendant
11  APPLE INC.

12              UNITED STATES DISTRICT COURT
13              SOUTHERN DISTRICT OF CALIFORNIA
14

15  SMITH INTERFACE                    CASE NO. 3:23-cv-01187-TWR-DTF
16  TECHNOLOGIES, LLC,
                                       **DEFENDANT APPLE INC.'S
17        Plaintiff,                   OPPOSITION TO PLAINTIFF'S
                                       MOTION FOR JUDGMENT ON THE
18        vs.                          PLEADINGS**
19
20  APPLE INC.,                        Date:  October 16, 2025
                                       Time:  1:30 pm
21        Defendant.                   Courtroom:  14A, 14th Floor
                                       Dist. Judge:  Hon. Todd W. Robinson
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..............................1

II.   APPLE'S INEQUITABLE CONDUCT AND UNCLEAN HANDS ALLEGATIONS ...............................................................................2

III.  LEGAL STANDARDS ......................................................................5

    A.    Judgment On The Pleadings ........................................................5

    B.    Inequitable Conduct ...................................................................6

    C.    Unclean Hands ..........................................................................7

IV.   THE COURT SHOULD DENY SIT'S MOTION FOR JUDGMENT ON THE PLEADINGS. ....................................................................8

    A.    Apple's Amended Answer Sufficiently Pleads The Defense Of Inequitable Conduct. ..................................................................8

        1.    Apple's Material Misrepresentation Allegations More Than Satisfy Rule 9(b)...........................................................8

        2.    Apple's Intent Allegations More Than Satisfy Rule 9(b). .......11

        3.    Apple Pleads The "Who, What, When, Where, And How" Of Its Inequitable Conduct Defense. .......................................16

    B.    Apple's Amended Answer Sufficiently Pleads The Defense Of Unclean Hands. ........................................................................18

V.    CONCLUSION ...........................................................................20

3:23-cv-01187-TWR-DTF

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan USA, Inc. v. Sun Pharm. Indus.*,
  636 F. Supp. 3d 483 (D. Del. 2022) ....................................................... 7

*Am. GNC Corp. v. LG Elecs., Inc.*,
  No. 17-cv-01090-BAS-BLM, 2018 U.S. Dist. LEXIS 6144 (S.D.
  Cal. Jan. 12, 2018) (Benetiz, J.) ............................................... 7, 18, 19

*Annunziato v. Guthrie*,
  No. CV 20-11592-RSWL-JPRx, 2021 U.S. Dist. LEXIS 207481
  (C.D. Cal. Oct. 26, 2021)................................................................. 7, 19

*Barnes & Noble, Inc. v. LSI Corp.*,
  849 F. Supp. 2d 925 (N.D. Cal. 2012).................................................. 7

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ............................................................. 5

*Cozy, Inc. v. Dorel Juvenile Grp., Inc.*,
  633 F. Supp. 3d 411 (D. Mass. 2022)................................................. 13

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*,
  132 F.3d 526 (9th Cir. 1997) ............................................................... 6

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009) .......................................... 6, 12, 13, 16

*Gen-Probe Inc. v. Becton Dickinson & Co.*,
  No. 09-cv-2319 BEN (NLS), 2010 U.S. Dist. LEXIS 115804 (S.D.
  Cal. Nov. 1, 2010) (Benitez, J.)...................................................... 8, 19

*Gilead Scis., Inc. v. Merck & Co.*,
  888 F.3d 1231 (Fed. Cir. 2018) ......................................................... 19

*Grajales v. Puerto Rico Ports Auth.*,
  682 F.3d 40 (1st Cir. 2012) ............................................................... 16

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*,
  896 F.2d 1542 (9th Cir. 1989) ...................................................... 6, 10

1622511660.5

*Hangzhou Chic Intelligent Tech. Co. v. Ltd. Razor USA LLC*,
    No. 2:16-CV-06359-RGK-AJWx, 2016 WL 10518582 (C.D. Cal.
    Dec. 19, 2016) ................................................................................. 12

*Hum. Genome Scis., Inc. v. Genentech*,
    No. 2:11-cv-6519-MRP (JEMx), 2011 U.S. Dist. LEXIS 153834
    (C.D. Cal. Dec. 9, 2011) ................................................................. 18

*Impact Engine, Inc. v. Google LLC*,
    No. 3:19-cv-01301-CAB-BGS, 2020 U.S. Dist. LEXIS 109443
    (S.D. Cal. June 22, 2020) ................................................................ 10

*Imprenta Servs. v. Karll*,
    No. 2:20-cv-06177-GW-PVCx, 2021 U.S. Dist. LEXIS 195359
    (C.D. Cal. July 13, 2021)................................................................. 6, 7

*Incase Designs, Inc. v. Mophie, Inc.*,
    No. 13-cv-00602 RS, 2013 U.S. Dist. LEXIS 202263 (N.D. Cal.
    July 1, 2013) ..................................................................................... 7

*Intellect Wireless, Inc. v. HTC Corp.*,
    732 F.3d 1339 (Fed. Cir. 2013) ...................................................... 14

*KangaROOS U.S.A., Inc. v. Caldor, Inc.*,
    778 F.2d 1571 (Fed. Cir. 1985) ...................................................... 10

*KFx Med., LLC v. Stryker Corp.*,
    No. 3:18-cv-01799-DMS-WVG, 2019 WL 2012977 (S.D. Cal. May
    7, 2019) ........................................................................................... 14

*Li Second Family Ltd. P'shp. v. Toshiba Corp.*,
    231 F.3d 1373 (Fed. Cir. 2000) ................................................. 1, 8, 9

*Luv N' Care, Ltd. v. Laurain*,
    98 F.4th 1081 (Fed. Cir. 2024) ....................................................... 14

*Miracor Med. SA v. Abbott Labs.*,
    No. 23 C 16257, 2024 U.S. Dist. LEXIS 187716 (N.D. Ill. Oct. 7,
    2024) ............................................................................................... 19

*Nilssen v. Osram Sylvania, Inc.*,
    504 F.3d 1223 (Fed. Cir. 2007) .................................................. 9, 17

*Optium Corp. v. Emcore Corp.*,
    603 F.3d 1313 (Fed. Cir. 2010) ...................................................... 14

1622511660.5

*Pact XPP Schweiz AG v. Intel. Corp.*
No. 1:19-cv-01006-JDW, 2020 U.S. Dist. LEXIS 274278 (D. Del.
Sep. 9, 2020) ................................................................................................ 15

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH,*
237 F.3d 1359 (Fed. Cir. 2001) ............................................................ 10, 11

*Estate of Rodriguez v. City of Long Beach,*
No. 2:18-cv-07522-CAS(FFMx), 2020 U.S. Dist. LEXIS 9927
(C.D. Cal. Jan. 21, 2020) .......................................................................... 5, 16

*Senju Pharm. Co., Ltd. V. Apotex, Inc.,*
921 F. Supp. 2d 297 (D. Del. 2013) ....................................................... 14, 15

*Simmons v. Navajo Cnty.,*
609 F.3d 1011 (9th Cir. 2010) ..................................................................... 8

*Softview LLC v. Apple, Inc.,*
No. 1:10-cv-389-LPS, 2011 U.S. Dist. LEXIS 112476 (D. Del. Sept.
30, 2011) ...................................................................................................... 15

*Star Scientific, Inc v. R.J. Reynolds Tobacco Co.,*
537 F.3d 1357 (Fed. Cir. 2008) .................................................................... 6

*Symbol Techs. Inc. v. Lemelson Med., Educ. & Research Found., L.P.*
277 F.3d 1361 (Fed. Cir. 2002) .................................................................. 19

*The NOCO Company v. Winplus North America, Inc., et al.,*
8:23-cv-00269-DOC-DFM (C.D. Cal. July 16, 2025) ................................. 7

*Therasense, Inc. v. Becton, Dickinson & Co.,*
649 F.3d 1276 (Fed. Cir. 2011) ............................................................ 12, 18

*TransWeb, LLC v. 3M Innovative Props. Co.,*
812 F.3d 1295 (Fed. Cir. 2016) .................................................................... 7

*United States Water Servs. v. Novozymes A/S,*
843 F.3d 1345 (Fed. Cir. 2016) .................................................................. 11

*Vineyard Investigations v. E. & J. Gallo Winery,*
No. 1:19-cv-1482-JLT-SKO, 2024 U.S. Dist. LEXIS 55168 (E.D.
Cal. Mar. 27, 2024) ..................................................................................... 13

1622511660.5

**Statutes**

35 U.S.C. § 112 .................................................................................... 1, 9, 10

35 U.S.C. § 119(e) .......................................................................................... 9

35 U.S.C. § 120 .............................................................................................. 9

**Other Authorities**

37 C.F.R. § 1.56(b)(1) ................................................................................. 17

Fed. R. Civ. P. 8 ........................................................................................ 2, 19

Fed. R. Civ. P. 8(c) ..................................................................................... 7, 8

Fed. R. Civ. P. 9 ........................................................................................... 12

Fed. R. Civ. P. 9(b) ............................................................................... *passim*

Fed. R. Civ. P. 12 .................................................................................. 10, 11

Fed. R. Civ. P. 12(b)(6) ................................................................................. 5

Fed. R. Civ. P. 12(c) ................................................................... 5, 10, 15, 16

Prioritized Examination: Frequently Asked Questions, USPTO.
     https://www.uspto.gov/sites/default/files/documents/pe-faq.pdf ...................... 13

1622511660.5

# I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Smith Interface Technologies, LLC's ("SIT") Motion for Judgment on the Pleadings mischaracterizes Apple's affirmative defenses and misconstrues the law. Although SIT argues that Apple has not satisfied the particularity requirements of Rule 9(b), the challenged defenses are based on extensive factual allegations spanning approximately 200 paragraphs that "state with particularity the circumstances" of the misrepresentations at issue, including specific references to the prosecution history of asserted U.S. Patent No. 10,656,754 ("the '754 patent") and other SIT patents in the same family.  Apple has pled more than sufficient facts to support its inequitable conduct and unclean hands defenses.  For at least three reasons, the Court should deny SIT's motion.

First, SIT is wrong that Apple's inequitable conduct defense amounts to nothing more than a written description challenge under 35 U.S.C. § 112.  While the asserted claims are also invalid for lack of written description, Apple's inequitable conduct allegations extend well beyond that.  Specifically, by misrepresenting to the Patent Office Examiner that the applications that led to the '754 patent (and other applications in the same family) were continuation applications purportedly entitled to a priority date years before the actual application dates, SIT deceived the Examiner to avoid disclosing the most material prior art to the '754 patent; namely, Apple's iOS 12 and 13 prior art that was publicly available before SIT filed the application that led to the '754 patent.  SIT's knowing misrepresentations constitute inequitable conduct that renders the '754 patent unenforceable.

Second, Apple pleads the specific "who, what, when, where, and how" of the material misrepresentations and omissions to the Patent Office during prosecution. Apple's Amended Answer identifies who made the material misrepresentations— named inventor Dr. Michael Smith and his prosecution counsel, Patrick Caldwell of the Caldwell Law Firm—and when they did so, the nature of the misrepresentations, what prior art they withheld, and how that prior art is material to patentability of the

'754 patent claims.  Apple also pleads facts that support an inference of intent to deceive, including the Examiner's reminder to Smith and Caldwell about their duty of candor in response to the hundreds of prior art references they submitted to try to shield the withheld Apple prior art.  Apple has pled more than sufficient facts to satisfy the particularity requirements of Rule 9(b).

Third, Apple has properly pled an unclean hands defense.  For starters, SIT's challenge to Apple's unclean hands based on inequitable conduct fails for the same reasons as SIT's challenge to Apple's inequitable conduct defense, because Apple has pled more than sufficient facts under Rule 9(b) to proceed with that defense.  Furthermore, Apple's unclean hands defense is not limited to an inequitable conduct theory, but also encompasses SIT's broader conduct underlying Apple's prosecution laches defense, which SIT does not challenge and is subject to the notice pleading standard of Rule 8.  SIT's motion as to unclean hands fails for this additional reason.

For these reasons, the Court should deny SIT's motion.  And by the time the Court holds a hearing on SIT's motion, fact discovery will have closed and Apple will have already taken the relevant depositions and received the relevant discovery from SIT, Smith, and Caldwell.  Therefore, the Court should reject SIT's belated pleading challenge to these equitable defenses in favor of deciding them based on a complete evidentiary record and after having the opportunity to judge the credibility of the witnesses who will testify about these defenses.

## II.    APPLE'S INEQUITABLE CONDUCT AND UNCLEAN HANDS ALLEGATIONS

Apple's Amended Answer alleges a nearly decade-long pattern of improper prosecution conduct by named inventor Dr. Smith and his counsel Mr. Caldwell to hinder and delay issuance of patents in order to draft patent claims to try to cover new features of Apple's products after they had been commercially launched.  *See* Doc. No. 166 at ¶¶ 17-216.  This pattern of misconduct includes flooding the Patent Office with dozens of applications (*id.* at ¶¶ 17-18, 31-32, 39, 45-46, 53), abusing

the Patent Office's Track One priority application procedure by repeatedly adding numerous new patent claims late in the prosecution process (*id.* at ¶¶ 19-23, 52-55), and burying the patent Examiner with prior art to avoid any meaningful review of the (in some cases, hundreds) of proposed claims (*id.* at ¶¶ 18, 50-51, 216).

Smith and Caldwell's pattern of misconduct also involved false priority claims back to a set of initial applications filed in 2011 and 2012. *Id.* at ¶¶ 31, 53, 57, 214. Their motivation for making these false priority claims is obvious— without a claim of priority back to the earlier applications, the intervening Apple prior art would (and does) invalidate the claims they drafted to try to cover existing features of Apple's products. *Id*. at ¶¶ 23-25, 34, 38-42. However, the initial applications filed in 2011 and 2012 do not support the subject matter of those later-filed claims. *Id.* at ¶¶ 53-58. As a result, Smith and Caldwell improperly filed the later applications as continuations (as opposed to continuations-in-part) despite adding substantial new matter to those applications, which is impermissible. *Id.* at ¶¶ 31, 42, 53-58.

The conduct with respect to the '754 patent is particularly egregious. The '754 patent claims priority to U.S. Patent No. 10,345,961 ("the '961 patent"), which was filed on October 6, 2018. In that application (filed just after the launch of Apple's iOS 12), Smith and Caldwell added 71 paragraphs of new matter to the specification—nearly 27 columns of new text (columns 67-94) and three new patent figures (Figs. 22-24). *Id.* at ¶¶ 46-48, 55-58; *see also* Ex. A (new matter highlighted). The new matter Smith and Caldwell added includes descriptions of gesture control based on duration of touch. *Id*. Smith and Caldwell filed the '754 patent as a continuation of the '961 patent, so it has the same false priority claim and the same improper new matter. Ex. B (new matter highlighted). Smith and Caldwell falsely designated these and other applications in the chain as continuations to claim priority to the earliest applications. *Id.* at ¶¶ 54-57, 214. And after Apple released iPhone XR and iPhone XS with iOS 12 and iOS 13 between

September 2018 and June 2019, Smith and Caldwell shifted course to try to draft claims covering the new "duration of touch" functionality of those products. *Id.* at ¶¶ 39-42, 211-213.  Doing so was only possible by misrepresenting their applications as continuations to try to claim an earlier priority date and avoid disclosing the Apple prior art, which they were obligated to do. *Id.* at ¶¶ 211-215. The timeline below demonstrates the relevant sequence of events relating to Apple's inequitable conduct defense:



During prosecution of the '754 patent and consistent with their years-long practice, Smith and Caldwell also filed more than 200 pages of Information Disclosure Statements with the Patent Office listing more than 1,100 prior art references. *Id.* at ¶¶ 50-51.  The Examiner even called out their improper behavior:

> The submitted IDS documents have been entered.
> However, the Examiner notes the length of the IDS filed
> June 11, 2019 consists of over 100 individual IDS page

1622511660.5                                                            3:23-cv-01187-TWR-DTF

listings including numerous documents Applicant alleges
to be pertinent prior art for consideration with no further
discussion explaining the particular relevance of any
documents.  Any subsequent reviewing judiciary official
is reminded to use careful discretion when applying the
presumption of administrative competence to grant
deference to the fact finding of the examiner with respect
to these documents as Examiner has made no factual
findings with respect to their <u>specific</u> content.

Furthermore, Applicant is reminded that "<u>inequitable
conduct requires not intent to withhold, but rather intent
to **deceive**</u>."

*Id.* at ¶ 50 (citing 8/1/2019 Non-Final Rejection at 2 (emphasis in original)).

Apple's inequitable conduct and unclean hands defenses are based on the
years-long pattern of misconduct alleged in Apple's Amended Answer.  *Id.* at
¶¶ 206-220.  Apple alleges inequitable conduct based on Smith and Caldwell's
misrepresentations about the applications that led to the issuance of the '754 patent
and the false claim of priority to previous applications, all of which were designed
to avoid disclosing the material Apple iOS 12 and iOS 13 prior art that invalidates
the asserted claims of the '754 patent.  *Id.*

## III.    LEGAL STANDARDS

### A.    Judgment On The Pleadings

Federal Rule of Civil Procedure 12(c) permits parties to move for judgment
on the pleadings "[a]fter the pleadings are closed—but early enough not to delay
trial[.]"  Fed. R. Civ. P. 12(c).  However, "[c]ourts should hesitate to entertain Rule
12(c) motions once parties have invested substantial resources in discovery."  *Estate
of Rodriguez v. City of Long Beach*, No. 2:18-cv-07522-CAS(FFMx), 2020 U.S.
Dist. LEXIS 9927, at *7 (C.D. Cal. Jan. 21, 2020) (citations omitted).

The legal standard for evaluating a Rule 12(c) motion is the same as a Rule
12(b)(6) motion to dismiss.  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047, 1053 & n.4 (9th Cir. 2011).  As a result, "the allegations of the non-

moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Judgment may only be granted when the pleadings show that it is beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997) (citations omitted).

### B.  Inequitable Conduct

An inequitable conduct defense requires proof that: (1) the patent applicant (which includes the inventors and others who were substantively involved in prosecution, such as the prosecuting attorneys) either misrepresented a material fact or failed to disclose material information to the Patent Office; and (2) the applicant intended to deceive the Patent Office by doing so. *See Star Scientific, Inc v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). Allegations of inequitable conduct are subject to Federal Rule of Civil Procedure 9(b)'s pleading standard, which requires that "the circumstances constituting fraud or mistake … be stated with particularity." Fed. R. Civ. P. 9(b); *see also Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1326 (Fed. Cir. 2009). To meet the Rule 9(b) pleading standard, a pleading must identify the "who, what, when, where, and how" of the material misrepresentation or omission. *Exergen*, 575 F.3d at 1328. To satisfy the "who" and "when" requirements, a pleading must "name the specific individual … who both knew of the material information and deliberately withheld or misrepresented it" and identify when the conduct at issue occurred. *Imprenta Servs. v. Karll*, No. 2:20-cv-06177-GW-PVCx, 2021 U.S. Dist. LEXIS 195359, at *6 (C.D. Cal. July 13, 2021) (citing *Exergen*, 575 F.3d at 1329). To articulate the "what" and "where," the pleading must identify the claims and limitations that the withheld prior art is relevant to, and where in the prior art the material information is found. *Id.* at *7-8. In addition, the party alleging inequitable conduct must "explain both 'why' the

withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Id.* at *9.

With respect to knowledge and intent, Rule 9(b) states that such "conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "A court 'may infer intent from indirect and circumstantial evidence' because 'direct evidence of intent is rare.'" *The NOCO Company v. Winplus North America, Inc., et al.*, 8:23-cv-00269-DOC-DFM, Doc. No. 85 at *91 (C.D. Cal. July 16, 2025) (citing *TransWeb, LLC v. 3M Innovative Props. Co.,* 812 F.3d 1295, 1304 (Fed. Cir. 2016)). As a result, a pleading alleging an inequitable conduct defense satisfies Rule 9(b)'s requirements where it includes sufficient factual allegations from which a court may reasonably infer that an individual withheld or misrepresented information with intent to deceive the Patent Office. *See id.*

## C.    Unclean Hands

A pleading alleging unclean hands must be "sufficient to notify the plaintiff what behavior has allegedly given them unclean hands." *Incase Designs, Inc. v. Mophie, Inc.,* No. 13-cv-00602 RS, 2013 U.S. Dist. LEXIS 202263, at *6 (N.D. Cal. July 1, 2013); *Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 942 (N.D. Cal. 2012) (denying motion to strike an unclean hands defense where the pleaded facts were sufficient to "render their defense plausible and put Defendants on notice of the claim"). The pleading standard for unclean hands depends on the specific underlying conduct. *Allergan USA, Inc. v. Sun Pharm. Indus.*, 636 F. Supp. 3d 483, 488 (D. Del. 2022). Where an unclean hands defense is based on alleged acts of inequitable conduct, the Rule 9(b) standard applies and the allegations supporting unclean hands rise and fall with the inequitable conduct allegations. *Am. GNC Corp. v. LG Elecs., Inc.*, No. 17-cv-01090-BAS-BLM, 2018 U.S. Dist. LEXIS 6144, at *7 n.2 (S.D. Cal. Jan. 12, 2018) (Benetiz, J.). However, where an assertion of unclean hands does not involve allegations of fraud, the notice pleading standard of Rule 8(c) applies. *Annunziato v. Guthrie*, No. CV 20-11592-RSWL-JPRx, 2021

U.S. Dist. LEXIS 207481, at *27 n.6 (C.D. Cal. Oct. 26, 2021) (citing *Gen-Probe Inc. v. Becton Dickinson & Co.*, No. 09-cv-2319 BEN (NLS), 2010 U.S. Dist. LEXIS 115804, at *3 (S.D. Cal. Nov. 1, 2010) (Benitez, J.)).  Under Rule 8(c), a defense is only "insufficient if it fails to give the plaintiff fair notice of the nature of the defense."  *Gen-Probe Inc.*, 2010 U.S. Dist. LEXIS 115804 at *3 (citing *Simmons v. Navajo Cnty*., 609 F.3d 1011, 1023 (9th Cir. 2010)).

## IV.    THE COURT SHOULD DENY SIT'S MOTION FOR JUDGMENT ON THE PLEADINGS.

### A.    Apple's Amended Answer Sufficiently Pleads The Defense Of Inequitable Conduct.

#### 1.    Apple's Material Misrepresentation Allegations More Than Satisfy Rule 9(b).

Apple's Amended Answer more than satisfies the pleading requirements of Rule 9(b).  Apple alleges the specific factual misrepresentations and omissions underlying its inequitable conduct defense and why those misrepresentations and omissions were and are material to patentability.  Apple's pleading details the years-long pattern of misconduct by Smith and Caldwell and alleges that they knowingly and falsely designated SIT's patent applications as continuations rather than as continuations-in-part to try to claim an earlier priority date for the '754 patent.  Doc. No. 166 at ¶¶ 29-42, 44-46, 52-59, 211-214.  The Amended Answer also specifies the Apple prior art that Smith and Caldwell withheld from the Patent Office that was and is material to patentability.  *Id.* at ¶¶ 28-34, 40-42, 211-214.  Apple further supports its materiality allegations by citing its Invalidity Contentions, which map each limitation of the asserted claims of the '754 patent against the withheld Apple prior art.  *Id.* at ¶¶ 211-213, 215.

Smith and Caldwell's pattern of misrepresentations and omissions, including misrepresentations about the priority chain of the '754 patent, constitute inequitable conduct.  *See Li Second Family Ltd. P'shp. v. Toshiba Corp.*, 231 F.3d 1373, 1379

(Fed. Cir. 2000) (patentee "engaged in a persistent course of nondisclosure and misrepresentation," which "may constitute inequitable conduct if the materiality and intent requirements are satisfied."). Indeed, the Federal Circuit has held that a false claim to an earlier priority date is "no doubt highly material" for purposes of inequitable conduct. *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1233 (Fed. Cir. 2007) (citing *Li*, 231 F.3d at 1380). In *Nilssen,* the district court found that the patentee had engaged in inequitable conduct because he "had intentionally misclaimed an effective priority date" for the asserted patents and that such misrepresentations were "material because they allowed Nilssen to potentially avoid prior art." *Nilssen*, 504 F.3d at 1228. The Federal Circuit affirmed. In doing so, the court noted that (1) the patentee "recited in his various patent applications paternity from earlier applications," (2) "the recitation of application histories did not comply with the applicable 35 U.S.C. § 120 requirements, and certain applications were thus not entitled to earlier priority dates," and (3) "the obvious purpose" of the false priority claims was "to be able to assert a claim for priority over intervening publications or other patent-defeating occurrences if needed." *Id.* at 1233. The same is true here, where Smith and Caldwell repeatedly made false priority claims with the "obvious purpose" of trying to avoid Apple's own intervening prior art.

The crux of SIT's argument—that "Apple seeks to transform its § 112 invalidity defense for lack of written description into an inequitable conduct defense" (Mot. at 6)—is wrong. Although the asserted claims of the '754 patent suffer from significant written description defects and are invalid for that reason, those defects are not the basis of Apple's inequitable conduct defense. Rather, Apple's defense is rooted in the fact that Smith and Caldwell intentionally and repeatedly made false statements to the Patent Office by designating patent applications as continuations rather than continuations-in-part in violation of 35 U.S.C. §§ 119(e) and 120. Smith and Caldwell added 71 paragraphs of new matter—nearly 27 columns of new text and three new patent figures—that they did

not disclose in their original provisional or utility applications filed in 2011 and 2012. Doc. No. 166 at ¶¶ 46-48, 55-58; *see also* Exs. A and B (new matter highlighted). Smith and Caldwell falsely claimed priority to their earlier applications to avoid disclosing material and invalidating Apple prior art to the Patent Office. That is inequitable conduct. Although lack of written description is a component of the priority analysis, it is far from the whole picture for purposes of Apple's inequitable conduct defense. *KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1575 (Fed. Cir. 1985) ("The issue is not whether [patentee's] divisional application is entitled to the priority date of the design application. The issue is whether [patentee's] claim to the priority date constituted fraudulent or inequitable conduct according to law."). SIT's argument therefore misses the mark.

The decisions SIT cites are inapposite. In *Impact Engine*, the defendant advanced a Section 112 defense in its answer but did not plead the same type of patent application misrepresentations and false priority claims upon which Apple's inequitable conduct defense is based. *Impact Engine, Inc. v. Google LLC,* No. 3:19-cv-01301-CAB-BGS, 2020 U.S. Dist. LEXIS 109443, at *3-5 (S.D. Cal. June 22, 2020); *see also Impact Engine,* 3:19-cv-01301-CAB-BGS, Doc. No. 53 (Answer). And the defendant certainly did not articulate the years-long history of application and priority misrepresentations by Smith and Caldwell that Apple alleges in its Amended Answer.

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359 (Fed. Cir. 2001) also is distinguishable. The court in *Purdue Pharma* was deciding a motion for preliminary injunction, not addressing a Rule 12 motion regarding the sufficiency of an inequitable conduct defense at the pleading stage. *Id.* at 1363. Here, the Court must accept Apple's allegations as true in connection with SIT's Rule 12(c) motion. *Hal Roach Studios, Inc*, 896 F.2d at 1550 (9th. Cir. 1989). *Purdue Pharma* also is distinguishable on its facts. There, the applicant and the examiner communicated about the priority claim that was the basis for the

inequitable conduct defense, and the examiner invited the patentee to amend the application to remedy a deficiency in the priority claim. *Purdue Pharma,* 237 F.3d at 1367. After considering the factual record, the court determined that that patentee had not "actively misled the examiner into believing that [an earlier application] is not prior art" based on an earlier priority date. *Id* Indeed, the court determined that the evidence affirmatively "suggests that the examiner did not assume that the claims are entitled to the priority date of the '331 parent." *Id.* Here, in contrast, Apple alleges that Smith and Caldwell knowingly and intentionally added more than 71 paragraphs of new material and misrepresented that the '754 patent application was a continuation application so they could withhold Apple prior art from the Patent Office. *See* Doc. No. 166 at ¶¶ 57-58, 208-215. On this motion, as opposed to the preliminary injunction context where a district court is tasked with assessing the likelihood of success, the Court must accept those allegations as true.

SIT's citation to *United States Water Servs. v. Novozymes A/S*, 843 F.3d 1345 (Fed. Cir. 2016) also is misplaced. Again, *Novozymes* did not involve a Rule 12 motion but rather a summary judgment motion. *Id.* at 1348. Moreover, *Novozymes* has no bearing on the allegations at issue here. In *Novozymes*, the defendant asserted that the patentee withheld material prior art in a separate proceeding that occurred after the asserted patent had issued. *Id.* at 1353-54. The court found that the examiner was already aware of the relevant prior art and had determined that the art did not affect the decision to allow the patent. *Id.* The court found there was no inequitable conduct because "an applicant is not required to tell the USPTO twice about the same prior art, on pain of loss of the patent for inequitable conduct." *Id* These facts bear no resemblance to Apple's inequitable conduct defense.

### 2.     Apple's Intent Allegations More Than Satisfy Rule 9(b).

The Amended Answer also sufficiently pleads Smith and Caldwell's intent to deceive the Patent Office. Although proving inequitable conduct at trial requires that specific intent to deceive must be the "single most reasonable inference able to

be drawn from the evidence" (*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011), that is not true at the pleading stage. *See Hangzhou Chic Intelligent Tech. Co. v. Ltd. Razor USA LLC,* No. 2:16-CV-06359-RGK-AJWx, 2016 WL 10518582, at *6 (C.D. Cal. Dec. 19, 2016) ("At the pleading stage the inference of inequitable conduct need not be 'the single most reasonable inference' drawn from the alleged facts.") (quoting *Exergen,* 575 F.3d at 1329 n.5). On the contrary, Rule 9 provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, Apple need only plead "sufficient underlying facts from which a court may reasonably infer that [Smith and Caldwell] acted with the requisite state of mind." *Exergen*, 575 F.3d at 1328. And a court "may infer intent from indirect and circumstantial evidence" because "direct evidence of intent is rare." *Therasense,* 649 F.3d at 1290.

The Amended Answer alleges more than sufficient facts to permit the Court to infer that Smith and Caldwell acted with the specific intent to deceive the Patent Office. These facts include:

- Smith and Caldwell's false designation of applications as continuations rather than continuations-in-part to claim the earlier 2011 or 2012 priority dates, which they knew was not true—after all, they were the ones who added more than 71 paragraphs of new matter to the '961 and '754 patent applications in 2018 and 2019. Doc. No. 166 at ¶¶ 31, 53, 57, 58, 214. The new matter Smith and Caldwell added includes descriptions of gesture control based on duration of touch. Ex. A and B (new matter highlighted).

- Smith's extensive knowledge of Apple's products—demonstrated by his patent filings and SIT's allegations in this case—which is further evidence that Smith and Caldwell were aware of and intentionally withheld the material and non-cumulative Apple iOS 12 and iOS 13 prior art. *Id.* at ¶¶ 211-213.

- Smith and Caldwell's practice of flooding the Examiner with prior art references (more than 1,000 prior art references disclosed in connection with the '754 patent alone) to hinder any meaningful review of the proposed patent claims and distract from the omission of the Apple iOS 12 and iOS 13 prior art. *Id.* at ¶ 50. Indeed, the Examiner specifically referenced this deceptive practice and reminded Smith and Caldwell multiple times "that inequitable conduct requires not intent to withhold, but rather intent to deceive." *Id.*; *see also id.* at ¶¶ 18, 50-51, 216.

- Smith and Caldwell's abuse of the Track One priority application system.[1] *Id.* at ¶¶ 19-21, 47-49.

- Smith and Caldwell's practice of filing dozens of claims on the eve of patent allowance to delay the prosecution process so they could try to draft additional claims to cover Apple's then-existing products. *Id.* at ¶¶ 21-23, 52-55.

- Smith and Caldwell's repetition of these same deceptive practices throughout many applications in the family of the '754 patent. *Id.* at ¶¶ 60-205.

Although Rule 9(b) provides that "intent, knowledge, and other conditions of a person's mind may be alleged generally," Apple has done much more by alleging specific facts that support a finding of intent to deceive. Indeed, the totality of these facts strongly supports a conclusion that the most reasonable inference is that Smith and Caldwell intended to deceive the Patent Office, but the law only requires Apple to allege "sufficient underlying facts from which a court may reasonably infer that [Smith and Caldwell] acted with the requisite state of mind" at this stage. *Exergen*, 575 F.3d at 1328; *see also Vineyard Investigations v. E. & J. Gallo Winery,* No. 1:19-cv-1482-JLT-SKO, 2024 U.S. Dist. LEXIS 55168, at *25 (E.D. Cal. Mar. 27, 2024) (given "the totality of the allegations, inferring an intent to deceive is

---

[1] Track One is a prioritized examination program where applications are limited to "no more than four independent claims [and] thirty total claims." Prioritized Examination: Frequently Asked Questions, USPTO. https://www.uspto.gov/sites/default/files/documents/pe-faq.pdf. The '754 patent issued with 365 claims.

1622511660.5

1  reasonable"); *Cozy, Inc. v. Dorel Juvenile Grp., Inc.*, 633 F. Supp. 3d 411, 423 (D.

2  Mass. 2022) (the defendant alleged "sufficient facts to support its contention that

3  [the patentee] acted with the requisite intent to deceive").

4      SIT's motion fails to address many of the underlying facts in the Amended

5  Answer, and also fails to explain why the totality of those facts (all of which must

6  be accepted as true) do not support an inference of intent.  Rather than addressing

7  the totality of Apple's allegations, SIT addresses individual allegations in isolation

8  from one another.  *See* Mot. at 6-13 (addressing "written description issues" only),

9  16-18 (addressing "burying the examiner" allegations only).  SIT's approach is

10  contrary to the law.  "When a person having a duty of candor and good faith has

11  engaged in serial misconduct during the prosecution of the same or related patents, it

12  is not enough for a court to consider each individual act of misconduct without also

13  considering the collective whole."  *Luv N' Care, Ltd. v. Laurain*, 98 F.4th 1081,

14  1098 (Fed. Cir. 2024) (citations omitted) ("[A] district court must consider the

15  person's multiple acts of misconduct in the aggregate."); *see also Intellect Wireless,*

16  *Inc. v. HTC Corp.*, 732 F.3d 1339, 1344 (Fed. Cir. 2013) ("The court found that,

17  given the pattern of false and misleading statements during prosecution of related

18  patents, [the patentee's] explanations for the misrepresentations during prosecution

19  of the asserted patents were not credible.").

20      For example, SIT argues that Apple's "burying the examiner" allegations are

21  not by themselves sufficient to sustain an inequitable conduct defense.  Mot. at 16-

22  18.  SIT's argument is irrelevant because Apple alleges far more misconduct than

23  burying the Examiner in prior art.  As a result, the "burying" decisions Smith cites

24  do not apply.  *Id.* (citing *Senju Pharm. Co., Ltd. V. Apotex, Inc.*, 921 F. Supp. 2d

25  297, 307 (D. Del. 2013); *Optium Corp. v. Emcore Corp.,* 603 F.3d 1313, 1321 (Fed.

26  Cir. 2010) (collecting cases); *see also KFx Med., LLC v. Stryker Corp.,* No. 3:18-cv-

27  01799-DMS-WVG, 2019 WL 2012977, at *6 (S.D. Cal. May 7, 2019)).  Here, the

28  root of Apple's inequitable conduct defense is Smith and Caldwell's false priority

claims based on misrepresenting their applications as continuations despite the addition of new matter, and their failure to disclose the Apple prior art during prosecution. Doc. No. 166 at ¶¶ 53, 210-214. But regardless, Smith and Caldwell's conduct in flooding the Examiner with more than 1,000 prior art references—and the Examiner's comments on that deceptive practice—are part of the totality of circumstances that prove intent. *See Pact XPP Schweiz AG v. Intel. Corp.* No. 1:19-cv-01006-JDW, 2020 U.S. Dist. LEXIS 274278, at *6 (D. Del. Sep. 9, 2020) ("the volume of [patentee's] prior art submissions was out of the ordinary and thus give rise to a reasonable inference that [the patentee] intended to burden and potentially mislead the examiner….").

SIT's other case citations are equally inapposite. In *Senju*, for example, the defendant pled very few facts from which the court could infer intent (*see Senju*, 921 F. Supp. 2d at 307-08; "the only alleged action related to the written description is that [one claim] was amended"), whereas Apple has described in detail that Smith and Caldwell added 71 paragraphs of new matter to the specification (Doc. No. 166 at ¶¶ 31, 53, 57) and falsely designated applications as continuations to avoid disclosing the Apple prior art (*id.* at ¶¶ 31-32, 34, 36-42, 210-214). Similarly, in *Softview,* the defendant did not plead facts that "give rise to a reasonable inference that the prosecution counsel knew he was amending to add new matter and intended to deceive the PTO of this fact," whereas Apple alleged in detail the basis for its allegations of intentional conduct by Smith and Caldwell. *See Softview LLC v. Apple, Inc.*, No. 1:10-cv-389-LPS, 2011 U.S. Dist. LEXIS 112476, *3 (D. Del. Sept. 30, 2011); *see also* Doc. No. 166 at ¶¶ 16-217. Apple pleads more than sufficient facts to support a reasonable inference of intent.

Moreover, the issue of Smith and Caldwell's state of mind—facts that are entirely within their possession and control—also underscores that the Court should deny SIT's belated motion based on the advanced stage of the case. Apple filed its initial Answer in August 2024. Doc. No. 116. But SIT waited nearly a year to file a

Rule 12(c) motion directed to the inequitable conduct defense. During that time, the parties have engaged in substantial discovery, and fact discovery is scheduled to be completed in early October before the hearing on this motion. *See* Doc. No. 144. Rather than address inequitable conduct on the pleadings after the close of discovery, the Court should address this equitable defense on a complete evidentiary record—and, critically, with the ability to judge the credibility of the live witnesses who will testify about this defense. *See Estate of Rodriguez v. City of Long Beach*, No. 2:18-cv-07522-CAS(FFMx), 2020 U.S. Dist. LEXIS 9927, at *7 (C.D. Cal. Jan. 21, 2020) ("[c]ourts should hesitate to entertain Rule 12(c) motions once parties have invested substantial resources in discovery."); *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012) (same).

### 3.   Apple Pleads The "Who, What, When, Where, And How" Of Its Inequitable Conduct Defense.

Smith's argument that Apple has not pled its inequitable conduct defense with the required degree of specificity (Mot. at 9-13, 16-18) also is without merit. Apple's pleading carefully tracks the requirements of Rule 9(b), which requires pleading the "who, what, when, where, and how" of the material misrepresentations and/or omissions made to the Patent Office. *Exergen*, 575 F.3d at 1328.

**Who:** Apple alleges "who" made the misrepresentations and material omissions at the Patent Office; that is, named inventor Dr. Smith and his prosecuting counsel Mr. Caldwell. Doc. No. 166 at ¶¶ 208, 209. SIT's claim that Apple's pleading "does not put Smith Interface on notice of who Apple alleges made the misrepresentation or omission" (Mot. at 17) is belied by the allegations of the Amended Answer, which call out Smith and Caldwell numerous times. *Id*. at ¶¶ 208, 209, 211-213. SIT's argument also contradicts its prior arguments in this case when SIT opposed Apple's motion to stay pending IPR by claiming Smith needed the chance to promptly "clear his name" in response to Apple's inequitable conduct defense. *See* Doc. No. 122 at 1 ("Apple's Motion to Stay would unjustly

1  delay Dr. Smith's opportunity to clear his name ….").  SIT's argument that it cannot

2  tell whom Apple is charging with inequitable conduct is specious.

3      **What, when, where:** Apple pleads the "what," "when" and "where" by

4  alleging the particular material misrepresentations—namely, the false claims of

5  priority and false designations of applications as continuations—along with the

6  dates those false statements were made and the particular prosecutions in which they

7  were made.  Doc. No. 166 at ¶¶ 210, 214.  This includes the '754's parent

8  application (the '961 application) filed in 2018, where Smith and Caldwell added

9  more than 71 paragraphs of new matter and three new patent figures, but

10 misrepresented the application as a continuation rather than a continuation-in-part to

11 falsely claim an earlier 2011 or 2012 priority date.  *Id*. at ¶¶ 21, 31, 34, 53-59, 214;

12 *see also Nilsson,* 504 F.3d at 1233 (finding inequitable conduct based on false

13 priority date claim).  The Amended Answer also identifies the material prior art

14 references that Smith and Caldwell withheld based on their false priority claims—

15 the Apple iOS 12 and iOS 13 prior art.  *Id*. at ¶¶ 40, 41, 211, 215.  Apple also

16 alleges facts demonstrating that the Apple prior art is material to the patentability of

17 the '754 patent claims and not cumulative of other prior art the Examiner

18 considered.  *Id*. at ¶¶ 211-215.

19     **How, why:** Apple pleads the "how" and "why" supporting its inequitable

20 conduct defense; namely, how and why the Apple prior art is material to the

21 patentability of the asserted claims of the '754 patent.  *Id.* at ¶¶ 26, 28, 40, 41, 42,

22 50, 53, 54, 49, 52, 53, 55-57, 211-217.  This includes citations to Apple's Invalidity

23 Contentions, which map each claim limitation to the Apple iOS 12 and iOS 13 prior

24 art.  *Id.* at ¶¶ 214, 215.  Apple's pleading thus details how the Examiner would have

25 applied the Apple prior art to the then-pending '754 claims to reject them and

26 thereby "establishes a prima facie case of unpatentability of a claim."  37 C.F.R.

27 § 1.56(b)(1).  The Amended Answer also alleges that Smith and Caldwell withheld

28 information about the Apple iOS 12 and iOS 13 prior art because the claims never

1   would have issued had they disclosed that prior art and made a truthful priority

2   claim.  Doc. No. 166 ¶¶ 214, 215.

3       Apple therefore more than sufficiently pleads the who, what, where, when,

4   why, and how of its inequitable conduct defense, and the Court should reject SIT's

5   arguments to the contrary.

6       **B.    Apple's Amended Answer Sufficiently Pleads The Defense Of**

7       **Unclean Hands.**

8       There are two aspects to Apple's unclean hands defense: (1) unclean hands

9   based on inequitable conduct, and (2) unclean hands based on the same patent

10  prosecution conduct underlying Apple's prosecution laches defense.  *See* Doc. No.

11  166 at ¶ 218 (incorporating by reference Apple's Ninth and Tenth Affirmative

12  Defenses).  Smith's motion only addresses one of those aspects—inequitable

13  conduct—and is silent with respect to unclean hands based on the underlying facts

14  supporting prosecution laches.

15      With respect to Apple's unclean hands defense based on inequitable conduct,

16  Apple's allegations satisfy Rule 9(b)'s particularity requirements for the reasons

17  demonstrated above, so the Court should deny SIT's motion directed to Apple's

18  unclean hands defense for the same reasons.  *See Am. GNC Corp.*, 2018 U.S. Dist.

19  LEXIS 6144, at *7 n.2 (unclean hands defense rises and falls with the sufficiency of

20  the inequitable conduct allegations).  SIT's suggestion that the extreme facts in

21  cases like *Therasense* are required to plead unclean hands (Mot. at 20) is simply not

22  the law.  In *Hum. Genome Scis., Inc. v. Genentech*, the court listed egregious

23  conducts such as "the applicant paid any witnesses to lie, published false articles

24  under the names of industry experts, [and] engaged in a settlement with a known

25  perjurer in a manner which suppressed the evidence of the alleged perjury," but the

26  court never suggested that such facts are required for unclean hands.  No. 2:11-cv-

27  6519-MRP (JEMx), 2011 U.S. Dist. LEXIS 153834, at *26 (C.D. Cal. Dec. 9, 2011)

28  (citing *Therasense*, 649 F.3d at 1285-87) (collecting cases).  Further, in *Hum.*

*Genome Scis.*, the inequitable conduct allegations "fail[ed] to identify any evidence that the misrepresentations were made with intent to deceive." *Id.* at *21. Instead, the allegations were "conclusory statements … merely supported by attorney argument" without "describ[ing] facts which show the subjective state of mind of [the patentee and its agents] in pursuing the patent." *Id.* at *20. In contrast, Apple has identified substantial evidence to support an inference that Smith and Caldwell made intentional misrepresentations designed to deceive the Examiner. Doc. No. 166 at ¶¶ 17-59, 208, 211-214, 216.

In addition, Apple has pled a viable unclean hands defense aside from inequitable conduct. *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (a "determination of unclean hands may be reached when misconduct of a party seeking relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation, *i.e.*, for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court."); *see also Symbol Techs. Inc. v. Lemelson Med., Educ. & Research Found., L.P.* 277 F.3d 1361, 1366 (Fed. Cir. 2002) ("[t]he defenses available to an accusation of infringement […] include[s] […] equitable defenses such as laches […]"). And where the underlying conduct for unclean hands is not based on fraud, the notice pleading standard of Rule 8 applies. *See Annunziato v. Guthrie*, No. CV 20-11592-RSWL-JPRx, 2021 U.S. Dist. LEXIS 207481, at *27 n.6 (C.D. Cal. Oct. 26, 2021); *Gen-Probe Inc. v. Becton Dickinson & Co.*, No. 09-cv-2319 BEN (NLS), 2010 U.S. Dist. LEXIS 115804, 2010 WL 4442731, at *1 (S.D. Cal. Nov. 1, 2010).

In *Miracor Med. SA v. Abbott Labs.*, for example, the court denied the plaintiff's Rule 12(b)(6) motion challenging the defendants' unclean hands defense where the defendants alleged that the plaintiff prosecuted new patent claims after a ten-year delay designed to cover the defendants' accused product and "that [the] [p]laintiff was aware the asserted patents were invalid because of [the defendants'

accused product]…." No. 23 C 16257, 2024 U.S. Dist. LEXIS 187716, at *10-11 (N.D. Ill. Oct. 7, 2024).  Here, the misconduct underlying Apple's prosecution laches defense likewise provides grounds for unclean hands.  *See* Doc. No. 166 at ¶¶ 16-59.  The Court should deny this portion of SIT's motion too.

**V.    CONCLUSION**

For the foregoing reasons, the Court should deny Smith's Motion for Judgment on the Pleadings.

Dated: August 28, 2025                    **DLA PIPER LLP (US)**

By: */s/ Richard Mulloy*
Sean Cunningham
Richard Mulloy
Robert Williams
Peter Maggiore
Attorneys for Defendant
APPLE INC.

1622511660.5