UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMITH INTERFACE TECHNOLOGIES, LLC,<br><br>                                Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>                                Defendant. | Case No.:  23-CV-1187 TWR (DTF)<br><br>**CLAIM CONSTRUCTION ORDER** |

Presently before the Court are Plaintiff Smith Interface Technologies, LLC and Defendant Apple Inc.'s Opening Claim Construction Briefs, (*see* ECF Nos. 163, 164), and Responsive Claim Construction Briefs. (*See* ECF Nos. 169, 170.) On September 23, 2025, the Court issued a tentative claim construction order, (*see* ECF No. 188), and the Court held a claim construction hearing on September 24, 2025.  (*See* ECF No. 190.)  After considering the Parties' briefing and the arguments presented at the hearing, the Court **ISSUES** the following Claim Construction Order.

## BACKGROUND

### I.    Procedural History

Inventor Michael Smith "developed new advanced input and output techniques for mobile user interfaces[, ("UIs")]" such as "multi-part gestures, where users can take successive actions, such as by touching, tapping, long-pressing, or sliding, and receive

feedback at each step, whether visual or tactile (or both)."  (*See* ECF No. 66 ("TAC") ¶ 19.) "These mobile UI advances resulted in numerous patents, including U.S. Patent Nos. 10,642,413 (the "'413 Patent"); 10,649,578 (the "'578 Patent"); 10,649,580 (the "'580 Patent"); 10,656,754 (the "'754 Patent"); 10,656,755 (the "'755 Patent"); 10,656,758 (the "'758 Patent"); 10,671,212 (the "'212 Patent"); 10,725,581 (the "'581 Patent"); 10,936,114 (the "'114 Patent"); and 11,740,727 (the "'727 Patent") (collectively, the "Asserted Patents")."  (*Id.* ¶ 17.)  The Asserted Patents are all "continuation[s] of and claim[] priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed August 5, 2011."  (*See id.* ¶¶ 21–30.) Smith is the sole named inventor of the Asserted Patents, all of which are assigned solely to Plaintiff Smith Interface.  (*See id.*)

On June 27, 2023, Smith Interface filed the instant action against Apple, asserting nine claims of patent infringement as to each of the '413, '578, '580, '754, '755, '758, '212, '581, and '114 Patents (the "Original Asserted Patents"), (*see generally* ECF No. 1 ("Compl.")), which was subsequently reassigned to the undersigned.  (*See* ECF No. 4.) The '727 Patent issued on August 29, 2023, (*see* TAC ¶ 30), before Apple's responsive pleading deadline.  (*See* ECF No. 21.)  Accordingly, on the same day it had issued, Smith Interface amended its Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1) to add a claim for infringement of the '727 Patent.  (*See generally* ECF No. 22 ("FAC").) Apple moved to dismiss the First Amended Complaint's claims for willful and indirect infringement on October 3, 2023.  (*See generally* ECF No. 36.)

On October 25, 2023, Smith Interface requested leave to file an amended complaint pursuant to Rule 15(a)(2).  (*See generally* ECF No. 42.)  The following day, the Court granted Smith Interface's request and denied as moot Apple's original motion to dismiss, (*see generally* ECF No. 43), and Smith Interface filed its Second Amended Complaint. (*See generally* ECF No. 44).  Apple then moved to dismiss the Second Amended Complaint's claims for willful and indirect infringement on November 9, 2023.  (*See generally* ECF No. 46.)

23-CV-1187 TWR (DTF)

On March 5, 2024, the Court granted in part and denied in part Apple's motion to dismiss and granted Smith Interface leave to file an amended complaint.  (ECF No. 63.)  On March 19, 2024, Smith Interface filed the operative Third Amended Complaint.  (*See generally* TAC.)

Between June 26, 2024, and August 1, 2024, Apple filed *inter partes* review ("IPR") petitions with the Patent Trial and Appeal Board ("PTAB"), challenging the validity of all the asserted claims from the Asserted Patents except for certain asserted claims from the '754 Patent.  (*See* ECF No. 105; ECF No. 110-1 at 3–4.)  On August 5, 2024, the Court granted Apple's partial motion to dismiss Smith Interface's Third Amended Complaint and dismissed with prejudice Smith Interface's claims for pre-suit willful and induced patent infringement.  (*See* ECF No. 112 at 13.)  On August 19, 2024, Apple filed an answer to the operative complaint.  (ECF No. 116.)  On September 5, 2024, Apple filed a petition for *ex parte* reexamination with the U.S. Patent and Trademark Office ("PTO"), challenging the validity of the remaining asserted claims from the '754 Patent.  (*See* ECF No. 119.)  On October 2, 2024, the Court stayed the action pending issuance of the PTAB's institution decisions on Apple's pending IPR petitions as to the Asserted Patents.  (ECF No. 127.)

In the subsequent reexamination proceedings as to the '754 Patent, the PTO Examiner confirmed the patentability of 81 claims from the '754 Patent.  (*See* ECF No. 140 at 1.)  On May 5, 2025, the Court lifted the stay on the condition that Smith Interface elect to proceed in this action only on twenty or fewer claims from the '754 Patent that had been confirmed during the reexamination proceedings.  (*See* ECF No. 141.)  On May 14, 2025, Smith Interface filed its initial notice of claim election, electing to proceed on claims 83, 111, 125, 134, 136, 142, 144, 152, 162, 163, 165, 188, 193, 196, 205, 217, 218, 219, and 221 from the '754 Patent.  (*See* ECF No. 143.)  In the filing, Smith Interface also requested that the Court dismiss all of its other previously asserted claims of patent infringement without prejudice.  (*See id.*)  On May 21, 2025, the Court granted Smith Interface's motion and dismissed without prejudice all of Smith Interface's other previously asserted claims of patent infringement from the action.  (*See* ECF No. 145.)

23-CV-1187 TWR (DTF)

On May 21, 2025, the Court issued an amended scheduling order.  (*See* ECF No. 144.)  On August 19, 2025, Smith Interface filed a second notice of claim election, electing to proceed on only claims 111, 125, 142, 152, 162, 165, 188, 193, 218, and 219 from the '754 Patent.  (*See* ECF No. 172.)

## II.    The '754 Patent

The '754 Patent is now the only asserted patent in this action, and the following claims from the '754 Patent are the only asserted claims in this action: claims 111, 125, 142, 152, 162, 165, 188, 193, 218, and 219.  (*See* ECF No. 172.)  The '754 Patent is entitled "devices and methods for navigating between user interfaces," and was issued on May 19, 2020.  U.S. Patent No. 10,656,754, at [45], [54] (filed May 19, 2020).  The inventions claimed in the '754 Patent related generally to touch screens on electronic devices, specifically touch screens that display and blur objects based on gestures by the device user.  *See id.* at col. 1 ll. 35–55, fig. 22.

Figure 22 from the specification of the '754 Patent is depicted below and depicts a 3D layered user interface where displayed objects exist in one of a plurality of layers and a portion of the objects can be blurred based on gestures by the device user:



4

*Id.* fig. 22, col. 68 ll. 7–10.

As an example of an asserted claim, dependent claim 193 (which depends from dependent claim 186 which depends from independent claim 2) recites:

**2.** An apparatus, comprising:

at least one non-transitory memory;

a touch screen; and

one or more processors in communication with the at least one non-transitory memory, and the touch screen, wherein the one or more processors execute instructions in the at least one non-transitory memory, to cause the apparatus to:

> display an object and at least one other object;

> detect at least part of a gesture on the touch screen; and

> during detection of at least a portion of the gesture before a completion thereof is detected, blur, based on a change in a magnitude of the gesture being detected on the touch screen, at least a portion of the at least one other object.

**186.** The apparatus of claim **2**, wherein the apparatus is configured such that:

the at least part of the gesture is detected on the touch screen on an edge of the touch screen;

the magnitude of the gesture includes a distance magnitude;

the gesture includes a swipe gesture;

a magnitude of the blurring is continuously increased as a continuous function of an increase in the magnitude of the gesture being detected on the touch screen;

a magnitude of the blurring is continuously decreased as a continuous function of another change; and

when the magnitude of the gesture detected on the touch screen is detected to increase above a distance threshold, a menu is displayed with at least one option, such that:

> the at least one other object is displayed via a first virtual display layer,

> the menu is displayed in a second virtual display layer that appears above the first virtual display layer, and

> the menu remains displayed after a completion of the gesture.

5

193. The apparatus of claim **186**, wherein the apparatus is configured such that:

the at least part of the gesture is detected on the touch screen adjacent to the object;

the object is displayed to move with at least some of the gesture;

the object includes a battery-related icon;

when a first duration of touch being applied to the touch screen on at least one option of the menu and a subsequent cessation of the first duration of touch being applied to the touch screen on the at least one option are detected: an action associated with the at least one option is performed; and

when a second duration of touch, that is greater than the first duration, being applied to the touch screen on the at least one option is detected: another menu including at least one other option is displayed.

'754 Patent col. 95 ll. 35–49, col. 109 l. 64 to col. 110 l. 19, col. 110 ll. 44–60.

## LEGAL STANDARD

Claim construction "is exclusively within the province of the court [to decide]," not the jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996) (en banc); *see Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326 (2015) (holding claim construction is an issue of law for the court to decide). Although claim construction is ultimately a question of law, "subsidiary factfinding is sometimes necessary." *Teva*, 574 U.S. at 326.

"It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citations omitted). "The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting *Markman*, 52 F.3d at 976); *accord Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1369 (Fed. Cir. 2022).

Claim terms "'are generally given their ordinary and customary meaning[,]'" which "is the meaning that the term would have to a person of ordinary skill in the art

23-CV-1187 TWR (DTF)

[("POSITA")] in question at the time of the invention." *Phillips*, 415 F.3d at 1312–13. "In some cases, the ordinary meaning of claim language as understood by a [POSITA] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent." *O2 Micro*, 521 F.3d at 1360. If the meaning of the term is not readily apparent, the court must look to "'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence.'" *Id.* (quoting *Innova*, 381 F.3d at 1116); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217–18 (Fed. Cir. 2014).

In determining the proper construction of a claim, a court should first look to the language of the claims. *See Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370, 1373 (Fed. Cir. 2019) ("'[C]laim construction must begin with the words of the claims themselves.'"); *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1299 (Fed. Cir. 2014) ("'[A] claim construction analysis must begin and remain centered on the claim language itself.'"). The context in which a disputed term is used in the asserted claims may provide substantial guidance as to the meaning of the term. *See Phillips*, 415 F.3d at 1314.

A court must also read claims "in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979; *see also* 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."). "'Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term.'" *Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1382 (Fed. Cir. 2014) (quoting *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1272 (Fed. Cir. 2011)).

/ / /

But "[t]he written description part of the specification does not delimit the right to exclude. That is the function and purpose of claims." *Markman*, 52 F.3d at 980. Therefore, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1327 (Fed. Cir. 2012); *accord Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 514 (Fed. Cir. 2015).

In addition to the claim language and the specification, the patent's prosecution history may be considered if it is in evidence. *Phillips*, 415 F.3d at 1317. The prosecution history "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Id.* "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Id.* "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* In addition, a court should also consult the prosecution history "so that the court can exclude any interpretation that was disclaimed during prosecution." *Sorensen v. Int'l Trade Comm'n*, 427 F.3d 1375, 1378 (Fed. Cir. 2005) (citing *Phillips*, 415 F.3d at 1317).

In most situations, analysis of the intrinsic evidence will resolve claim construction disputes. *See Vitronics*, 90 F.3d at 1583; *see also Teva*, 574 U.S. at 331; *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("If the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence."). However, "[w]here the intrinsic record is ambiguous, and when necessary," district courts may "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting *Phillips*, 415 F.3d at 1317). A court must evaluate all extrinsic evidence in light of the intrinsic evidence. *Phillips*, 415

23-CV-1187 TWR (DTF)

F.3d at 1319. "'[E]xtrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims.'" *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1373 (Fed. Cir. 2022); *see also Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'"). In cases where subsidiary facts contained in the extrinsic evidence "are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence." *Teva*, 574 U.S. at 332.

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro*, 521 F.3d at 1362; *see also Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016) ("'[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.'"). In certain situations, it is appropriate for a court to determine that a claim term needs no construction and its plain and ordinary meaning applies. *O2 Micro*, 521 F.3d at 1360; *Phillips*, 415 F.3d at 1314. But "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro*, 521 F.3d at 1361. If the parties dispute the scope of a certain claim term, it is the court's duty to resolve the dispute. *Id.* at 1362; *see also Eon*, 815 F.3d at 1319.

## ANALYSIS

In the present claim construction briefs, the Parties agree upon the construction of the claim term "virtual display layer"[1] and dispute the proper construction of three claim terms from the '754 Patent, namely, "adjacent," "distance magnitude [of the gesture]," and

---

[1] Specifically, the Parties agree that the term "virtual display layer" should be construed as "one or more display elements that appear at the same apparent depth of display," (*see* ECF No. 163 at 7), which is consistent with the '754 Patent's specification. *See* '754 Patent col. 68 ll. 41–42.

"blur"/"blurred"/"blurring." (*See generally* ECF Nos. 163, 164.) After reviewing the Court's Tentative Claim Construction Order, (*see generally* ECF No. 188), the Parties informed the Court at the beginning of the claim construction hearing that they had reached an agreement to submit on the papers regarding the construction of the terms "blur"/"blurred"/"blurring" and, with certain modifications, "distance magnitude [of the gesture]." Consequently, for the reasons discussed at the hearing, (*see* ECF No. 190), and specified in the Court's Tentative Claim Construction Order, (*see* ECF No. 188 at 17–21), the Court construes the term "a distance magnitude" as "an amount of distance" and gives the claim terms "blur," "blurred," and "blurring" their plain and ordinary meaning. Through the instant Order, the Court therefore needs to address only the claim term "adjacent," which Apple asserts is indefinite, (*see* ECF No. 163 at 7), and Smith Interface contends does not need to be construed and instead should be given its plain and ordinary meaning. (*See* ECF No. 164 at 6.)

"Definiteness is a statutory requirement for patentability." *Niazi*, 30 F.4th at 1346. Under 35 U.S.C. § 112(b), a patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as the invention." 35 U.S.C. § 112(b).

"A claim fails to satisfy this statutory requirement and is thus invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1369–70 (Fed. Cir. 2014) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014)); *see Infinity Comput. Prod., Inc. v. Oki Data Ams., Inc.*, 987 F.3d 1053, 1059 (Fed. Cir. 2021) ("'[W]e look to the patent record—the claims, specification, and prosecution history—to ascertain if they convey to one of skill in the art with reasonable certainty the scope of the invention claimed.'" (quoting *Teva Pharms.*, 789 F.3d at 1341)). This "reasonable certainty" standard "reflects a 'delicate balance' between 'the inherent limitations of language' and providing 'clear notice of what is claimed.'" *Guangdong*

1   *Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1359 (Fed. Cir. 2019).  "Th[e]

2   standard 'mandates clarity, while recognizing that absolute precision is unattainable.'"

3   *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 39 (Fed. Cir. 2020) (quoting *Nautilus*, 572

4   U.S. at 910); *see also BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir.

5   2017) ("'Reasonable certainty' does not require 'absolute or mathematical precision.'").

6       "General principles of claim construction apply to indefiniteness allegations."

7   *HZNP Medicines LLC v. Actavis Lab'ys UT, Inc.*, 940 F.3d 680, 688 (Fed. Cir. 2019).  The

8   party asserting indefiniteness bears "the burden of proving indefiniteness by clear and

9   convincing evidence." *BASF*, 875 F.3d at 1365 (citing *Biosig Instruments, Inc. v. Nautilus,*

10  *Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015)); *see also Microsoft Corp. v. i4i Ltd. P'ship*,

11  564 U.S. 91, 95 (2011) (holding that 35 U.S.C. § 282 "requires an invalidity defense to be

12  proved by clear and convincing evidence").

13      The claim term "adjacent" is contained in dependent claim 193.  Dependent claim

14  193 recites an apparatus containing a touch screen, at least one non-transitory memory, and

15  one or more processors, causing the apparatus to, among other things, "display an object

16  and at least one other object" and "detect at least part of a gesture on the touch screen"

17  where "at least part of the gesture is detected on the touch screen adjacent to the object."

18  '754 Patent col. 95 ll. 36–38, col. 110 ll. 46–47.  The word "adjacent" is a common word

19  with the widely accepted meaning of "[n]ext to or very near something else; neighbouring;

20  bordering, contiguous; adjoining."  OXFORD ENGLISH DICTIONARY, https://www.oed.

21  com/dictionary/adjacent_adj?tl=true#12665125;  CAMBRIDGE  DICTIONARY,  https://

22  dictionary.cambridge.org/us/dictionary/english/adjacent (defining "adjacent" as "very

23  near, next to, or touching"); MERRIAM-WEBSTER DICTIONARY, https://www.merriam-

24  webster.com/dictionary/adjacent (defining "adjacent" as "not distant : nearby"); *see also*

25  *Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as

26  understood by a [POSITA] may be readily apparent even to lay judges, and claim

27  construction in such cases involves little more than the application of the widely accepted

28  meaning of commonly understood words."); *Extremity Med., LLC v. Fusion Orthopedics,*

*LLC*, No. CV-22-00723-PHX-GMS, 2023 WL 4408270, at *11 (D. Ariz. July 7, 2023) ("[C]ourts routinely decline to construe 'adjacent' in patent claims and afford the word its conventional definition."). Thus, in the context of the claim language, the claim term "adjacent" has a clear meaning, and it means that the claimed gesture is detected next to or very near the displayed object. (*See also* ECF No. 170 at 2 ("The parties agree that the term 'adjacent' in each asserted claim refers to a spatial relationship between a detected gesture and a displayed object . . . .").)

Apple argues that the claim term "adjacent" is indefinite because in this context it is a subjective term of degree that does not provide any objective guidance to a POSITA regarding the scope of its boundaries. (*See* ECF No. 163 at 7.) "[T]erms of degree are not 'inherently indefinite.'" *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1396 (Fed. Cir. 2016) (quoting *Interval Licensing*, 766 F.3d at 1370); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1364 (Fed. Cir. 2018) ("We do not hold that all terms of degree are indefinite."). "Thus, 'a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.'" *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017). Nevertheless, "claims having terms of degree will fail for indefiniteness unless they 'provide objective boundaries for those of skill in the art' when read in light of the specification and the prosecution history." *Liberty Ammunition*, 835 F.3d at 1396 (quoting *Interval Licensing*, 766 F.3d at 1370); *see also Sonix*, 844 F.3d at 1378 ("[T]he written description is key to determining whether a term of degree is indefinite."). For example, "a term of degree fails to provide sufficient notice of its scope if it depends "'on the unpredictable vagaries of any one person's opinion.'" *Interval Licensing*, 766 F.3d at 1371 (quoting *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005)); *see also, e.g.*, *Berkheimer*, 881 F.3d at 1364 (finding claims indefinite where "[t]he specification contain[ed] no point of comparison for skilled artisans to determine an objective boundary" for the claim term).

Apple argues that the '754 Patent fails to provide the required objective boundaries for definiteness because the '754 Patent does not provide the answer to questions such as:

> [I]s a shared boundary required?  If so, how much of a shared boundary?  If not, how close or far away from the object must the gesture be detected?  Would a gesture that is one pixel away from the displayed object be considered "adjacent"?  What about two pixels?  Or five?  Would a gesture or touch that is 1mm away from the displayed object be considered "adjacent"?  What about 5mm?  Or 10mm?

(*See* ECF No. 163 at 9; *see also id.* at 12 ("[T]he specification provides no examples, guidance, or objective criteria in order to determine how close together two locations must be to be considered adjacent, whether measured in pixels, millimeters or any other unit, such that one infringes the claims—or, just as importantly, how far apart must two locations be so as to not be adjacent, such that one can avoid infringing the claim.").)  These questions posed by Apple reflect a misunderstanding of the definiteness requirement for patent claims.  In seeking answers to those questions, Apple is requesting that the '754 Patent define the invention with mathematical precision.  But the Federal Circuit has repeatedly stated that "'a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.'"  *Sonix*, 844 F.3d at 1377; *see also, e.g.*, *Niazi*, 30 F.4th at 1347; *Guangdong Alison*, 936 F.3d at 1359; *BASF*, 875 F.3d at 1365.  "Indeed, patentees often use descriptive words to avoid a strict numerical boundary to the specified parameter."  *Niazi*, 30 F.4th at 1347 (cleaned up).  And that is precisely what has happened here.  The '754 Patent uses the descriptive word "adjacent" (rather than a strict numerical boundary) to define the spatial relationship between the detected gesture and the displayed object, which is permissible under the definiteness requirement.  *See Niazi*, 30 F.4th at 1347.

That the claim term "adjacent" is not indefinite is supported by a review of the specification.  In describing embodiments of the claimed invention, the '754 Patent's specification explains:

> In the context of the present description, the selection area refers to a region of the display, or a region of an object pictured on the display, which has been chosen for selection.  The calculation of the selection area may be based upon one or more factors, including, but not limited to, a contact pressure level, a

touch state, a contact area, a contact point, a selection boundary, a selection boundary geometry, and/or any other information derived from user interaction.

'754 Patent col. 18 ll. 5–12. The specification further explains:

[T]he calculation of the selection area may depend upon the context of the selection. Specifically, the selection boundary may be dependent upon the type of content on or near a point or area associated with the selection, including but not limited to, a contact point, a contact area, a cursor, a user focus, etc.

*Id.* at col. 20 ll. 19–24. Here, the specification explains what a selection area is, how it can be calculated, and that the selection boundary may be "on or near" a point or area associated with the selection.

The specification goes on to describe the "context determination zone." '754 Patent col. 26 l. 50, fig 6. "[A] context determination zone refers to the area that is examined while determining the context of a selection," and it "may be a predefined shape (e.g., circle, square, etc.) of predefined size, centered on the contact point" or it "may be located such that the contact point is off-center." *Id.* at col. 26 ll. 52–65. The specification then goes on to explain:

In various embodiments, the determination as to whether there is a user interface control widget within the context determination zone begins with determining whether there is a UI control widget located at the contact point upon which the zone is based. In this way, time is not wasted determining the context of a well-aimed contact point.

If a UI control widget is not located at the contact point, then it may be determined if there is a UI control widget in the vicinity, within the context determination zone. In various embodiments, this determination may be performed using the bounding boxes associated with user interface elements. Within the context of the present description, a bounding box refers to a rectangle within which a user interface control widget may reside. In some embodiments, a bounding box may be the smallest rectangle which may contain a particular user interface control widget. In this way, detection of user interface control widgets whose shape is not rectangular is simplified.

*Id.* at col. 27 ll. 29–46.

The specification then provides examples of how the bounding box can be used to determine if there is a UI control widget within the context determination zone. *See id.* at col. 27 ll. 47–64. If "there is at least one user interface control widget within the context determination zone, then a context sensitive UI control widget selection function is chosen." '754 Patent col. 27 l. 65 to col. 28 l. 1; *see also id.* at col. 30 ll. 4–7 ("[A] user may make contact with and exert pressure upon an interaction surface, with a contact point near a drop down menu. The user may increase the contact pressure until the drop down menu is highlighted."), col. 34 ll. 15–18 ("[I]f there is a selectable graphic within the context determination zone, but not at the contact point, the selection function may define the selection based upon the entire selected object.").

In describing how context determination zones along with bounding boxes can be used to determine if a user interface object is near or in the vicinity of a contact point (i.e., adjacent to the contact point) so that the object is selected, the specification provides objective boundaries to a POSITA regarding the scope of the claim term "adjacent." *See Niazi*, 30 F.4th at 1347 (explaining that a specification can provide objective boundaries to a POSITA by providing "exemplary designs and specific examples"). Either the context determination intersects with the relevant bounding box or it doesn't. That is an objective standard. As such, the specification provides objective boundaries and reasonable certainty to a POSITA regarding the scope of the term "adjacent" contained in the claim language. As such, the claim term "adjacent" is not indefinite.

In response, Apple contends that these portions of the specification do not relate to the claim term "adjacent" because they do not contain the word "adjacent" and instead contain the word "near" or the phrase "in the vicinity of." (*See* ECF No. 163 at 13–14.) Apple's contention is flawed because it fails to appreciate that the word "near" is included

/ / /

/ / /

/ / /

/ / /

as part of the meaning of the word "adjacent."[2]  Thus, these passages in the specification provide context to the scope and meaning of the claim term "adjacent" even though they do not include the precise word "adjacent."

Apple also contends that the above passages do not pertain to the claims where the gesture is "adjacent" to the object to be selected because the passages describe instances where the context determination zone intersects with the relevant bounding box.  Apple contends that since there is an intersection between the context determination zone and the bounding box, these embodiments relate to different claim language—claim language where the gesture is detected "on" the object to be selected.  (*See* ECF No. 163 at 15); *see also, e.g.*, '754 Patent col. 96 ll. 57–60 ("[T]the apparatus is configured such that the at least part of the gesture is detected on the touch screen . . . on the object.").  Apple states that "on" and "adjacent" are not the same thing.  (ECF No. 163 at 15.)

Apple's argument might have merit if the context determination zone and the contact point of the gesture are coextensive.  But a review of the specification shows that they are not; they are two separate things.  *See, e.g.*, '754 Patent col. 27 ll. 35–37 ("If a UI control widget is not located at the contact point, then it may be determined if there is a UI control widget in the vicinity, within the context determination zone."), col. 34 ll. 15–18 ("[I]f there is a selectable graphic within the context determination zone, but not at the contact point, the selection function may define the selection based upon the entire selected object.").  The context determination zone can be the same size as the contact point (and, thus, be coextensive with the contact point), but it need not be.  The context determination zone can be bigger than the contact point.  *See id.*  And, in those situations when the context determination zone is bigger than the contact point, there can be instances when the context determination zone intersects with the UI control widget (*i.e.*, the object to be selected),

---

[2]    Indeed, as explained below, during the *ex parte* reexamination proceedings as to the '754 Patent, Apple treated the word "near" as being interchangeable with the term "adjacent."  (*See* ECF No. 164-10, Poulos Decl. Ex. 9 at 275 ("[A] user could begin a gesture either on or near (e.g., adjacent) to an object.").)

but the actual contact point of the gesture does not intersect with the object to be selected. *See id.* In those instances, the contact point of the gesture is "adjacent" to the object to be selected; the contact point is not "on" the object. As such, Apple is incorrect in asserting that the above passages in the specification only pertain to instances when the contact point of the gesture is "on" the object to be selected.

In addition, that the claim term "adjacent" is not indefinite is also supported by Apple's and its expert's statements during the *ex parte* reexamination proceedings for the '754 Patent. In its request for reexamination of the '754 Patent that it filed with the PTO, Apple and its expert were able to apply the claim term "adjacent" to the prior art at issue without any difficulty or uncertainty. (*See* ECF No. 164-10 ("Poulos Decl. Ex. 9") at 274–75.) In that filing, Apple explained: "[I]n order to provide some leeway for a user, a POSITA would have at least found it obvious to configure the apparatus of the Beaumier-Chaudhri-Wang combination such that a user could begin a gesture either on or near (e.g., adjacent) to an object." (*Id.* at 275.)

The Federal Circuit has explained that application of the term at issue by the challenger and its expert without any uncertainty during reexamination proceedings is "evidence that a skilled artisan d[oes] understand the scope of this invention with reasonable certainty." *Sonix*, 844 F.3d at 1380; *see Liqwd, Inc. v. L'Oreal USA, Inc.*, 720 F. App'x 623, 631 (Fed. Cir. 2018) ("Evidence of a challenger's ability to apply a term without unreasonable uncertainty counts against an indefiniteness contention."). Thus, application of the term by Apple and its expert without issue during the *ex parte* reexamination proceedings is evidence that a skilled artisan understands the scope of this invention with reasonable certainty. *See id.*; *see, e.g.*, *Samesurf, Inc. v. Intuit, Inc.*, No. 3:22-CV-00412-RSH-DDL, 2025 WL 1287805, at *15 (S.D. Cal. May 2, 2025) ("[A]pplication of the term by Intuit and its expert without issue during the IPR proceedings is evidence that a skilled artisan understands the scope of this invention with reasonable certainty."); *DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, No. 3:21-CV-00516-RSH-DDL, 2022 WL 17331255, at *10 (S.D. Cal. Nov. 29, 2022) (relying on accused

infringer and its expert's ability to apply claim term without issue during their invalidity analysis in IPR proceedings in rejecting indefiniteness challenge), *aff'd*, No. 2023-2017, 2025 WL 502040 (Fed. Cir. Feb. 14, 2025).  Indeed, the statement above shows not only that Apple and its expert were able to understand and apply the term "adjacent" without any issue, but it also shows that Apple and its expert understood the term to encompass the plain meaning of the word "adjacent," *i.e.*, next to or very near something else.  (*See* Poulos Decl. Ex. 9 at 275 ("either on or near (e.g., adjacent)").).

To support its indefiniteness challenge, Apple has provided the Court with extrinsic evidence suggesting that the term "adjacent" is "somewhat heuristic" when used in the field of computer graphics.  (*See* ECF No. 163 at 9 (citing ECF No. 163-6, Ex. 5 (Dictionary of Computer Vision and Image Processing)).)  This extrinsic evidence is not persuasive. As explained above, the intrinsic record (the specification) provides clear objective boundaries for the claim term "adjacent," and extrinsic evidence cannot be used to vary or contradict intrinsic evidence.  *See Genuine Enabling Tech.*, 29 F.4th at 1373; *Summit 6*, 802 F.3d at 1290.  In addition, Apple's extrinsic evidence is contradicted by other more persuasive extrinsic evidence, specifically, Apple and its own expert's ability to understand and apply the claim term "adjacent" during the reexamination proceedings.

In sum, Apple has failed to demonstrate that the claim term "adjacent" is indefinite. The Court also construes the claim term "adjacent" as "next to or very near something else."[3]

/ / /

/ / /

---

[3]    In support of its position that the claim term "adjacent" is not indefinite, Smith Interface notes that, to its knowledge, no district court has ever held that the claim term "adjacent" is indefinite.  (*See* ECF No. 164 at 2–3, 6–7; ECF No. 169 at 1–2.)  Those cases involved unrelated patents, however, and Apple is correct that "unrelated patent[s] 'shed[] no light' on the claims in the patent at issue."  *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1167 (Fed. Cir. 2004); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1312 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("[S]tatements made in unrelated applications are not relevant to claim construction.").

18

# CONCLUSION

For the reasons set forth above and in its Tentative Claims Construction Order, the Court **ADOPTS** the above claim constructions.  Specifically, the Court construes the claim term "virtual display layer" as "one or more display elements that appear at the same apparent depth of display;" construes the claim term "a distance magnitude" as "an amount of distance;" declines to construe the claim terms "blur," "blurred," and "blurring," instead giving them their plain and ordinary meanings; and construes the claim term "adjacent" as "next to or very near something else."

**IT IS SO ORDERED.**

Dated:  October 3, 2025

_____
Honorable Todd W. Robinson
United States District Judge

23-CV-1187 TWR (DTF)