

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SMITH INTERFACE TECHNOLOGIES, LLC,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No.:  23-CV-1187 TWR (DTF)

**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

(ECF No. 168)

Presently before the Court is Plaintiff Smith Interface's Motion for Judgment on the Pleadings ("Mot.," ECF No. 168) as well as Defendant Apple's Response in Opposition to ("Opp'n," ECF No. 176) and Plaintiff's Reply in Support of ("Reply," ECF No. 182) the Motion.  The Court held a hearing on December 17, 2025.  (*See* ECF No. 211).  Having carefully considered the Parties' arguments and the relevant law, the Court **GRANTS** Smith Interface's Motion.  The Court also **GRANTS** Apple leave to amend its Amended Answer, in accordance with the limitations explained below.  (*See infra* Section III.)

/ / /

/ / /

/ / /

/ / /

23-CV-1187 TWR (DTF)

## BACKGROUND

On March 19, 2024, Smith Interface filed the operative Third Amended Complaint. (*See generally* ECF No. 66 ("TAC").)  On August 7, 2025, Apple filed an Amended Answer to Smith Interface's Third Amended Complaint.  (ECF No. 166.)  Apple's Amended Answer includes affirmative defenses for inequitable conduct and unclean hands.  (ECF No. 166 ¶¶ 206–20.)  With respect to inequitable conduct, Apple alleges, in relevant part:

> [T]he applicants . . . engaged in affirmative egregious misconduct by making false misrepresentations to the [PTO], and/or withholding material information from the [PTO], knew of the falsity of the statements or the materiality of the information withheld, and had the specific intent to deceive the PTO.
>
> . . .
>
> [The applicants] submitted unmistakably false statements that there was support in the relevant specification for amendments to claims that were in fact not supported by the specification and did so while knowingly falsely designating the applications as continuations, rather than continuations-in-part. By doing so, the applicant misrepresented to the [PTO] the relevant priority dates for the Asserted Patents and therefore misdirected the scope of the examiner's prior art search.
>
> . . .
>
> [The applicants] attempted to hide relevant prior art in the heaps of references identified to the examiner for every application that led to each of the Asserted Patents. [The applicants] filed hundreds of pages of information disclosure statements constituting over a thousand identified prior art references, burying the examiner and hiding any actually relevant prior art, therefore withholding prior art references material to the patentability of the Asserted Patents.

(*See id.* ¶¶ 206–17.)

With respect to unclean hands, Apple alleges, in relevant part: "the applicant[s] engaged in particularly egregious misconduct, including perjury and planned and executed schemes to defraud the [PTO] and this Court."  (*See id.* ¶¶ 218–20.)

On August 14, 2025, Smith Interface filed the present Motion for Judgment on the Pleadings.  (*See* Mot.)  Smith Interface's Motion seeks judgment on the pleadings with

23-CV-1187 TWR (DTF)

respect to Apple's affirmative defenses for inequitable conduct and unclean hands.  (*See generally id.*)

**DISCUSSION**

A Rule 12(c) motion for judgment on the pleadings is properly granted when, "taking all the allegations in the pleadings as true, the moving party is entitled is entitled to judgment as a matter of law."  *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)); *see Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  To show it is entitled to judgment as a matter of law, the moving party must clearly establish on the face of the pleadings that no material issue of fact remains to be resolved.  *Hal Roach Studios*, 143 F.3d at 1550.

## I.    Pleading Affirmative Defenses

### A.    *Legal Standard*

The Ninth Circuit[1] describes Rule 12(b) and Rule 12(c) motions as "functionally equivalent," meaning the same standard of review applicable to a 12(b) motion also applies to its 12(c) analog.  *See Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)); *see also Owino v. CoreCivic, Inc.*, 700 F. Supp. 3d 939, 943 (S.D. Cal. 2023) ("When a court rules on a Rule 12(c) motion asserting a Rule 12(b) defense, it applies the same standard of review it would apply to the analogous Rule 12(b) motion.").  To survive a Rule 12(b)(6) motion to dismiss, a complaint must typically meet the plausibility pleading standard articulated in *Twombly* and *Iqbal*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[1] A motion to assert a defense under Rule 12(b) and a motion for judgment on the pleadings pursuant to Rule 12(c) are both governed by regional circuit law.  *See, e.g.*, *Nat. Alternatives Int'l, Inc. v. Allmax Nutrition, Inc.*, 258 F. Supp. 3d 1170, 1175 (S.D. Cal. 2017) (applying Ninth Circuit procedural law in deciding a motion for judgment on the pleadings in a patent case) (citations omitted).

23-CV-1187 TWR (DTF)

570 (2007) (requiring a complaint to contain "enough facts to state a claim to relief that is plausible on its face"); *Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009) (explaining facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

While some circuits have interpreted *Twombly* and *Iqbal* to extend the plausibility pleading standard to affirmative defenses,[2] a majority—including the Ninth Circuit—have not.[3] *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1274 (4th ed. 2025) (collecting cases). Accordingly, with respect to affirmative defenses, this Court evaluates pleading sufficiency by determining whether an affirmative defense, as plead, gives the plaintiff "fair notice." *See Kohler v. Staples the Off. Superstore, LLC*, 291 F.R.D. 464, 468–69 (S.D. Cal. 2013) (citing *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979)). "Fair notice" only requires describing a defense in "general terms." *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1274 (3d ed. 1998)).

For affirmative defenses involving fraud or mistake, however, "fair notice" is insufficient. *See* Fed. R. Civ. P. 9(b). Instead, these defenses must be plead "with particularity," that is, the heightened pleading standard pursuant to Rule 9(b). *See id.*

/ / /

/ / /

---

[2]    Only the Second and Seventh Circuits have expressly extended the plausibility standard to the pleading of affirmative defenses. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1274 (4th ed. 2025)

[3]    Courts in the Southern District of California have consistently declined to extend *Twombly* and *Iqbal* pleading standards to affirmative defenses. *See, e.g.*, *Pac. Digital Grp. v. Blue Media Mktg.*, No. 3:20-CV-1976-AJB-BGS, 2021 WL 5768124 (S.D. Cal. Feb. 9, 2021); *Philpot v. Baltimore Post-Exam'r*, No. 3:20-CV-00872-H-MSB, 2020 WL 6449199 (S.D. Cal. Nov. 3, 2020); *Cota v. Aveda Corp.*, No. 320CV01137BENBGS, 2020 WL 6083423 (S.D. Cal. Oct. 14, 2020); *Boba Inc. v. Blue Box Opco LLC*, No. 19-CV-00304-H-NLS, 2019 WL 2140597 (S.D. Cal. May 15, 2019); *Certified Nutraceuticals, Inc. v. den Hoed*, No. 3:18-CV-00777-H-LL, 2019 WL 329484 (S.D. Cal. Jan. 25, 2019); *Holdings v. Miva, Inc.*, No. 16-CV-0580 W (RBB), 2016 WL 4943048 (S.D. Cal. Sept. 16, 2016) (all applying the "fair notice" standard in evaluating the pleading sufficiency of affirmative defenses post-*Twombly* and *Iqbal*).

### 1.    Inequitable Conduct

"The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d at 1327 n.3 (Fed. Cir. 2009) (citing *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)); *see* 27 C.F.R. § 1.56.

The Rule 9(b) heightened pleading standard is required for allegations of inequitable conduct. *See Exergen Corp.*, 575 F.3d at 1326 (citing *Feguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)); *see also Multimedia Patent Tr. V. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1211 (S.D. Cal. 2007) ("[T]he inequitable conduct affirmative defense falls within the strictures of Rule 9(b)."). Pursuant to Rule 9(b), an inequitable conduct allegation must plead in detail regarding the who, what, when, where, and how of the alleged fraud. *Exergen*, 575 F.3d at 1328. Moreover, as explained by the Federal Circuit:

> [A]lthough "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id.* at 1328–29.

### 2.    Unclean Hands

"Unclean hands is an equitable defense requiring the showing of five elements: (1) the party seeking affirmative relief (2) is guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly related to matter in issue (4) that injures other party (5) and affects balance of equities between litigants." *Sonos, Inc., v. D&M Holdings*

23-CV-1187 TWR (DTF)

*Inc.*, 2016 WL 4249493, at *5 (D. Del. Aug. 10, 2016) (quoting *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 410 (D. Del. 2009)).

The pleading standard for an allegation of unclean hands depends on the specific underlying conduct. *Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*, 636 F. Supp. 3d 483, 488 (D. Del. 2022). "[An a]ffirmative defense that alleges fraudulent conduct must be pled with particularity under Rule 9(b)." *Id.* (*citing Sonos, Inc. v. D&M Holdings Inc.*, No. CV 14-1330-RGA-MPT, 2016 WL 4249493, at *5 (D. Del. Aug. 10, 2016), *report and recommendation adopted*, No. CV 14-1330-RGA, 2016 WL 4581078 (D. Del. Sept. 1, 2016)). "Allegations that are founded on other theories, however, need only meet the Rule 8 standard." *Id.*; *see AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, 2018 WL 2604825, at *1 (D. Del. June 4, 2018).

**B.    Analysis**

*1.    Apple's Inequitable Conduct Defense*

With respect to Apple's affirmative defense of inequitable conduct, Smith Interface makes two arguments: (1) Apple's allegation that U.S. Patent No. 10,656,754 (the "'754 Patent")[4] was falsely designated as a continuation rather than a continuation-in-part of U.S. Provisional Application No. 61/581,918 (the "'918 Provisional Application") cannot be a basis for its inequitable conduct defense; and (2) Apple's additional inequitable conduct allegations otherwise fail to meet the Rule 9(b) pleading standard. (*See id.* at 11–20.) The Court addresses each argument in turn.

a.    Apple's False Priority Allegations Regarding the '754 Patent Cannot Stand as a Basis for its Inequitable Conduct Defense

Smith Interface argues Apple's assertion that the applicants falsely designated the '754 Patent as a continuation rather than a continuation-in-part with respect to the prior-filed '918 Provisional Application wrongfully seeks to transform a written description

---

4    The '754 Patent is now the only asserted patent in this action. (*See* ECF No. 172.)

23-CV-1187 TWR (DTF)

argument under 8 U.S.C. § 112(a) into an inequitable conduct defense. (Mot. at 11 (citing ECF No. 153 ¶¶ 206–17).) Smith Interface contends that Apple's allegation of a misrepresented priority claim is a mere legal conclusion that is entirely dependent on a separate legal conclusion, that is, that the claims of the '754 Patent lack written description support. (*Id.* at 12; *see* Reply at 4–11.) In response, Apple contends its Amended Answer contains "details of the years-long pattern of misconduct by [the applicants]" and "specifies the Apple prior art that [the applicants] withheld from the [PTO] that was and is material to patentability." (Opp'n at 14 (citing ECF No. 153 ¶¶ 29–42, 44–46, 52–59, 211–14).) For the reasons below, the Court **AGREES** with Smith Interface.

A continuation-in-part application may contain new matter, that is, matter that was not present in the prior-filed application. M.P.E.P. §§ 201.08, 211.05; *see also PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 n.3 (Fed. Cir. 2008) ("Generally, a [continuation-in-part application] adds new matter on which at least one claim relies for support."). However, "[o]nly the claims of the continuation-in-part application that are disclosed in the manner provided by 35 U.S.C. § 112(a) in the prior-filed application are entitled to the benefit of the filing date of the prior-filed application." M.P.E.P. § 211.05. In contrast, a continuation application may not contain new matter, but all claims of the continuation application are entitled to the filing date of the prior-filed application. *Id.* §§ 201.07; 211.05. Indeed, whether a later-filed application is entitled to claim the benefit of the filing date of an earlier-filed application is an issue of written description. 35 U.S.C. § 120 (citing 35 U.S.C. § 112(a)); *see* M.P.E.P. § 211.05.

The crux of Apple's false priority argument regarding the '754 Patent rests on its contention that the applicants "added 71 paragraphs of *new* matter—nearly 27 columns of new text and three new patent figures—that they did not disclose in their original provisional or utility applications filed in 2011 and 2012." (Opp'n at 15–16 (citing ECF No. 166 ¶¶ 46–48, 55–58) (emphasis added).) But as Smith Interface correctly points out, these paragraphs and figures were previously disclosed in the '918 Provisional Application—an application to which the '754 Patent claims priority. (*See* Reply at 5–9.)

23-CV-1187 TWR (DTF)

Not only does the '754 Patent claim priority to the '918 Provisional Application, it also expressly incorporates by reference the contents of the '918 Provisional Application. (*See* ECF No. 176-3, "U.S. Patent No. 10,656,754," at 1:8–22.) U.S. patent law provides that "essential material" may be incorporated by reference to a U.S. patent application publication (*i.e.*, a provisional patent application). 37 C.F.R. § 1.57(d); *see* M.P.E.P § 608.01(p). "Essential material" includes material that is necessary to provide a written description of the claimed invention as is required under 35 U.S.C. § 112(a). 37 C.F.R. § 1.57(d)(1). Moreover, "[r]eplacing the identified material incorporated by reference with the actual text is not new matter." M.P.E.P. § 2163.07(b). Accordingly—and contrary to Apple's argument—the matter contained in these 71 paragraphs is not *new* at all.

Apple further asserts that the Court must accept as true its allegations for purposes of deciding whether to grant Smith Interface's Motion. (Opp'n at 16 (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).) Although this is generally true in the context of Rule 12(c) motions, the Court is not required to accept as true allegations that contradict matters properly subject to judicial notice. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (citing *Mullis v. United States Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir.1987)). Patents and patent applications are both properly subject to judicial notice. *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014) (citing *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n. 27 (Fed.Cir.1993). Thus, the Court **TAKES NOTICE** of the '754 Patent and the '918 Provisional Application. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017).

In light of the foregoing, the Court **FINDS** Smith Interface has clearly established that no material issue of fact remains with respect to Apple's allegations regarding a misrepresented priority claim in the '754 Patent. Thus, to the extent Smith Interface's Motion seeks judgment on the pleadings regarding Apple's allegation that the '754 Patent should have been designated as a continuation-in-part as opposed to a continuation of the '918 Provisional Application (*see* ECF No. 166 ¶ 214), the Motion is **GRANTED**.

23-CV-1187 TWR (DTF)

                         b.        Apple's Other Allegations of Inequitable Conduct Are Insufficient as Plead under Rule 9(b)

Next, Smith Interface argues Apple's allegation that the applicants attempted to hide relevant prior art in heaps of references identified to the examiner in the application that led to the '754 Patent (i.e., "burying the examiner") fails to meet the heightened pleading standard under Rule 9(b). (*See* Mot. at 7–8.) In particular, Smith Interface argues that "[a]lthough Apple's pleading identifies some patent claims and limitations to which a misrepresentation or omission could relate to, it impermissibly fails to identify *what* the misrepresentation or omission was, *who* specifically made a misrepresentation or omission, *why* the information is not cumulative, or *how* an examiner would have used the information." (Mot. at 15 (citing *Ameranth, Inc. v. Pizza Hut, Inc.*, 3:11-cv-1810-JLS-NLS, 2012 WL 12918370, at \*7 (S.D. Cal. June 26, 2012)) (emphasis in original).)[5] Smith Interface also argues Apple fails to plead facts from which to infer a material misrepresentation and intent to deceive the PTO. (*See id.* at 21–24.) For the reasons explained below, the Court **AGREES** with Smith Interface that Apple's pleading of inequitable conduct falls short of the Rule 9(b) standard.

Regarding *who* made the misrepresentation or omission, Smith Interface argues Apple's allegations are insufficient because "a defendant cannot satisfy Rule 9(b) by simply listing all potential individuals qualified with ambiguous language," including use of qualifiers like "at least," "including at least," and "either alone or with others." (Mot. at 16 (citing *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 307 (D. Del. 2013).) Smith Interface contends that such a pleading "afford(s) the possibility that the only two specific individuals named—Dr. Smith and Mr. Caldwell—did not know about the alleged misrepresentation at all." (*Id.* at 17.) Apple's Amended Answer asserts:

---

[5] The Parties do not seem to dispute *when* the alleged misrepresentation or omission was made. From the pleadings, it appears the Parties agree that the alleged misrepresentation or omission would have occurred during the prosecution of the '754 Patent. (*See* Opp'n at 23.)

23-CV-1187 TWR (DTF)

> At least Michael S. Smith, the named inventor of the Asserted Patents and Patrick E. Caldwell of The Caldwell Law Firm, LLC, the prosecuting attorney for the Asserted Patents, either alone or with others at The Caldwell Firm, LLC, the prosecuting law firm for the Asserted Patents, participating in prosecuting and obtaining the Asserted Patents with specific intent to deceive.

(ECF No. 166 ¶ 208.)  Smith Interface is correct that Apple's broadly-cast net around the inventors and those acting on their behalf does not permit the Court to reasonably infer which specific individuals knew of the material information and had a specific intent to deceive the PTO.  *See Senju*, 921 F. Supp. 2d at 307.  Additionally, as Smith Interface correctly asserts, the duty of candor and good faith in dealing with the PTO applies to individuals only, not organizations like The Caldwell Firm, LLC.  (Mot. at 16 (citing *Senju*, 921 F. Supp. 2d at 307).)  For these reasons, the Court **FINDS** Apple failed to sufficiently plead *who* made the alleged misrepresentation or omission in accordance with Rule 9(b).[6]

Regarding *what* the misrepresentation or omission was, Smith Interface argues "based on Apple's deficient allegations, [it] has zero notice of what affirmative statement or omission of material fact to the examiner Apple alleges is evidence of inequitable conduct."  (Mot. at 16.)  But Apple's Amended Answer "specifies the prior art that [the applicants] allegedly withheld from the PTO that is material to patentability."  (Opp'n at 14 (citing ECF No. 166 ¶¶ 29–42, 44–46, 52–59, 211–14).)  Apple's Amended Answer specifically asserts "Dr. Smith made or participated in making false misrepresentations to the [PTO] that material prior art, *in the form of products running Apple's iOS 12 and iOS 13 operating systems*, was not prior art subject to consideration during the examination of the Asserted Patents."  (ECF No. 166 ¶ 211 (emphasis added).)  Apple also asserts "Dr. Smith further withheld this material information regarding *Apple's iOS 12 and iOS 13 operating systems* from the [PTO]."  (*Id.*)  Accordingly, the Court **FINDS** Apple

---

[6] In its Opposition, Apple repeatedly alleges that Dr. Smith and Mr. Caldwell were responsible for withholding certain material prior art from the PTO. (*See generally* Opp'n at 14–24.)  If Apple's allegation regarding *who* is responsible for the misrepresentation or omission is limited to Dr. Smith and Mr. Caldwell, then Apple should clarify this.

23-CV-1187 TWR (DTF)

sufficiently pleads *what* the alleged misrepresentations or omissions were—that is, products running and information regarding Apple's iOS 12 and iOS 13 operating systems.

Regarding *why* the withheld information is material and not cumulative, and *how* an examiner would have used this information in assessing the patentability of claims, Smith Interface argues that Apple's allegations are without factual support. (Mot. at 17.) In support of its argument, Smith Interface relies on its assertion that Apple cannot base its inequitable conduct defense on a legal conclusion that the '754 Patent fails to comply with the written description requirement under 35 U.S.C. § 112(a). (*See id.*) As previously explained (*see supra* Section I.B.1.a), the Court **AGREES** with Smith Interface's that Apple's false priority allegation is not a proper basis for its inequitable conduct defense.

But Apple's Amended Answer also specifically alleges that the applicants were aware of and intentionally withheld material and non-cumulative information about the Apple iOS 12 and iOS 13 systems. (*See* ECF No. 166 ¶ 211–13, 215.) Apple contends this information is material because the claims of the '754 Patent never would have issued had the applicants disclosed that particular information. (*See id.*) Apple also alleges the applicant's "burying the examiner" with prior art references—that is, more than 1,000 prior art references disclosed in connection with the '754 Patent alone—was to hinder any meaningful review of the proposed patent claims and distract from the omission of the Apple iOS 12 and iOS 13 prior art. (*See* ECF No. 166 ¶ 50, 216.) Thus, the Court **FINDS** Apple sufficiently pleads *why* the withheld information is material and not cumulative, and *how* an examiner would have used this information in assessing the patentability of claims.

Finally, the Court evaluates whether Apple sufficiently pleads materiality and intent to deceive. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011). With respect to materiality, Apple's pleading must allege that the misrepresentation or omission is "but-for material," that is, the PTO would not have allowed a claim had it been aware of the undisclosed information or the falsity of the representation. *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1027 (S.D. Cal. 2019) (citing *Therasense*, 649 F.3d at 1291). Apple's Amended Answer points to specific

11

information regarding the Apple iOS 12 and iOS 13 systems, which it claims the applicants intentionally withheld from the PTO.  (ECF No. 166 ¶ 215.)  Apple further alleges the Apple iOS 12 and iOS 13 systems would have anticipated or rendered obvious the '754 Patent.  (*See id.*)  Accordingly, the Court **FINDS** Apple sufficiently pleads materiality for purposes of its inequitable conduct defense.

With respect to intent to deceive, Apple is required to plead "sufficient underlying facts from which a court may reasonably infer that [the applicants] acted with the requisite state of mind [(*i.e.*, intent)]." *Exergen*, 575 F.3d at 1328.  Direct evidence of intent is not required; rather, the Court "may infer intent from indirect and circumstantial evidence." *Therasense*, 649 F.3d at 1290.  Smith Interface argues Apple fails to provide any factual allegations sufficient to prove intent because Apple's allegations relating to intent are pled "on information and belief."  (Mot. at 18 (quoting ECF No. 166 ¶¶ 208–09).)  The facts alleged by Apple in its Amended Answer supporting its inequitable conduct defense include Dr. Smith's extensive knowledge of Apple's products, such as the Apple iOS 12 and iOS 13 systems, and Dr. Smith's and Mr. Caldwell's submission of over 1,000 prior art references disclosed in connection with the '754 Patent.  (*See id.* at 18–19.)  Concluding Apple's Amended Answer sets forth the specific facts upon which its belief is reasonably based, *see Exergen*, 575 F.3d at 1330, the Court **FINDS** Apple sufficiently pleads intent to deceive for purposes of its inequitable conduct defense.

In sum, the Court **FINDS** Apple's inequitable conduct defense, as currently plead, fails to meet the Rule 9(b) standard.  Thus, to the extent Smith Interface's Motion seeks judgment on the pleadings regarding Apple's additional inequitable conduct allegations (*e.g.*, ECF No. 166 ¶¶ 208–13, 215–16), the Motion is **GRANTED**.

### 2.    *Apple's Unclean Hands Defense*

Smith Interface argues Apple's unclean hands affirmative defense fails to meet the Rule 9(b) pleading standard.  (*See* Mot. at 24.)  In response, Apple contends there are two aspects to its unclean hands defense—(1) unclean hands based on inequitable conduct, and (2) unclean hands based on its prosecution laches defense—and that both satisfy the

23-CV-1187 TWR (DTF)

relevant pleading standard.[7] (Opp'n at 24.) The Court addresses each aspect of Apple's unclean hands defense in turn.

a.      Unclean Hands Based on Inequitable Conduct

The Court begins with determining which pleading standard—Rule 8 or Rule 9(b)— applies to Apple's unclean hands defense based on inequitable conduct. *See Allergan, Inc. v. Athena Cosms., Inc.*, 640 F.3d 1377, 1380 (Fed. Cir. 2011). Because Apple's unclean hands defense is based on inequitable conduct (*i.e.*, misrepresentation) (*see supra* Section I.B.1.b), it must satisfy the pleading requirements of Rule 9(b). *See AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, 2018 WL 2604825, at *1 (D. Del. June 4, 2018) (citing *Sonos*, 2016 WL 4249493, at *5); *see also Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079-VRW, 2001 WL 36043487 (N.D. Cal. Dec. 31, 2001) (applying the Rule 9(b) standard when defendant's unclean hands defense rested on inequitable conduct before the PTO); *cf. Allergan USA,* 636 F. Supp. 3d at 1380 n.2 (declining to apply the Rule 9(b) standard in analyzing an unclean hands defense when defendant's answer neither alleged nor claimed that plaintiff committed inequitable conduct).

By asserting the '754 Patent is "unenforceable" under the doctrine of unclean hands, Apple has asserted that Smith Interface engaged in sufficient inequitable conduct during the acquisition of the '754 Patent to allow this Court to declare the patent unenforceable. (*See generally* ECF No. 166 ¶¶ 206–20.) As a threshold matter, Apple's conclusory assertion that the '754 Patent is "unenforceable" fails to meet the heightened pleading requirements of Rule 9(b). *See PetEdge, Inc. v. Yahee Tech. Corp.*, No. 1:15-CV-13171-ADB, 2017 WL 1702276 (D. Mass. May 2, 2017) (citing *Exergen*, 575 at 1326–27.) Moreover, as previously explained with respect to Apple's affirmative defense of

---

[7]    Apple's unclean hands defense—as currently plead in its Amended Answer—merely alleges the '754 Patent is "unenforceable because the applicant engaged in particularly egregious misconduct, including perjury and planned and executed a scheme to defraud the [PTO] and this Court." (ECF No. 166 ¶ 220). If Apple's allegation of unclean hands is specifically based on inequitable conduct and prosecution laches, then Apple should clarify this.

23-CV-1187 TWR (DTF)

inequitable conduct (*see supra* Section I.B.1.b), Apple's failure to specifically identify *who* committed the alleged misconduct before the PTO further renders its defense insufficiently plead under Rule 9(b) standards.[8]    Accordingly, to the extent Smith's Motion seeks judgment on the pleadings of Apple's unclean hands defense based on inequitable conduct, the Motion is **GRANTED.**[9]

> b.    Unclean Hands Based on Prosecution Laches

Smith Interface argues Apple's unclean hands defense based on prosecution laches "is substantively baseless because there was no unreasonable delay." (Reply at 11.)  Smith Interface then argues that, even if Apple could show an unreasonable delay, "its pleading is deficient in view of recent Federal Circuit precedent clarifying the law on the prejudice factor of prosecution laches." (*Id.* at 12 (citing *Google, LLC v. Sonos, Inc.*, No. 2024-1097, 2025 WL 2473258, at *7 (Fed. Cir. Aug. 28, 2025)).)  But Smith Interface's Motion does not seek judgment on the pleadings with respect to prosecution laches.  (*See generally* Mot.; Reply.)  Because there is no dispute regarding whether Apple met the relevant pleading standards for prosecution laches,[10] the Court cannot reach Smith Interface's

---

[8]    In support of its defense of unclean hands based on inequitable conduct, Apple argues it "has identified substantial evidence to support an inference that Smith and Caldwell made intentional misrepresentations designed to deceive the Examiner." (Opp'n at 25.)  Again, if Apple's allegation regarding *who* made the misrepresentation or omission is limited to Dr. Smith and Mr. Caldwell, then Apple should clarify this.

[9]    The Court notes that inequitable conduct and unclean hands are two materially different affirmative defenses. *See PetEdge,* 2017 WL 1702276, at *3.  "[T]he remedies for litigation misconduct differ from the remedies for misconduct in acquisition of a property right. While inequitable conduct before the PTO renders the patent unenforceable by any party, the unclean hands doctrine bars only the offending party." *Id.* (quoting *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1376 (Fed. Cir. 2001) (internal quotation marks omitted).  Accordingly, to the extent Apple seeks to assert that the '754 Patent *claims* are barred by the doctrine of unclean hands—as opposed to asserting the *patent itself* is unenforceable—then Apple should clarify this.

[10]    Smith Interface contends that *George, LLC v. Sonos, Inc.* "forecloses the prejudice element of Apple's Ninth Affirmative Defense for prosecution laches," and that it "believes this defense also fails as a matter of law and will seek to address it in a procedurally proper manner at the earliest opportunity, should it be necessary." (Reply at 12 n.7.)  But Smith Interface does not contend that Apple's pleading of prosecution laches is otherwise insufficient.  (*See generally* Mot.; Reply.)

14

23-CV-1187 TWR (DTF)

desired conclusion that this defense is "built on a central factual allegation that is demonstrably false." (Reply at 13.)

Apple contends "[it] has pled a viable unclean hands defense aside from inequitable conduct" because "where the underlying conduct for unclean hands [(*i.e.*, prosecution laches)] is not based on fraud, the notice pleading standard of Rule 8 applies." (Opp'n at 25.) Prosecution laches requires two elements: (1) that the patentee's delay in unreasonable and inexcusable under the totality of the circumstances, and (2) that the accused infringer suffered prejudice attributable to the delay. Hyatt v. Hirshfeld, 998 F.3d 1347, 1362 (Fed. Cir. 2021) (citing *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 728–29 (Fed. Cir. 2010)). Thus, it does not require fraudulent conduct. Accordingly, the notice pleading standard of Rule 8 applies with respect to Apple's unclean hands defense based on prosecution laches.[11] *Allergan USA*, 636 F. Supp. 3d at 488.

Prosecution laches may render a patent unenforceable when it has issued after an unreasonable and unexplained delay in prosecution. *See Symbol Techs., Inc. v. Lemelson Med.*, 277 F.3d 1361, 1363, 1368 (Fed. Cir. Jan. 24, 2002). But Apple's conclusory assertion that the '754 Patent is "unenforceable" does not provide sufficient notice to Smith Interface of this theory. Thus, the Court **FINDS** Apple's pleading of its unclean hands defense based on prosecution is insufficient under Rule 8. Accordingly, to the extent Smith's Motion seeks judgment on the pleadings of Apple's unclean hands defense based on prosecution latches, the Motion is **GRANTED.**

              c.      Apple's Claims Regarding the Applicants' Defrauding of This Court

Apple's unclean hands defense contends the applicants "planned and executed schemes to defraud the [PTO] *and this Court.*" (ECF No. 166 ¶ 220 (emphasis added).)

---

[11] The Court notes that the affirmative defense of prosecution laches itself is not subject to Rule 9(b) pleading standards. *See, e.g., Finjan, Inc. v. Bitdefender Inc.*, No. 17-CV-04790-HSG, 2018 WL 1811979, at *4 (N.D. Cal. Apr. 17, 2018) (examining pleading of prosecution laches according to Rule 8 standards).

23-CV-1187 TWR (DTF)

Smith Interface argues "Apple has pled no facts to support its allegations that [the applicants] defrauded this Court." (Mot. at 25 n.7.) The Court **AGREES** with Smith Interface. Because Apple alleges fraudulent conduct, it must plead this allegation with particularity under Rule 9(b). *See Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*, 636 F. Supp. at 488. Apple fails to explain the who, what, when, how, and why the applicants "defrauded this Court." (*See generally* ECF No. 166.) Accordingly, to the extent Smith's Motion seeks judgment on the pleadings as to Apple's allegations that the applicants defrauded this Court, the Motion is **GRANTED.**

## II.    Timing of Rule 12(c) Motions

### A.    Legal Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). While there is no rigid rule regarding the timeliness of a Rule 12(c) motion, if a party engages in "excessive delay" before filing such a motion, the Court may refuse to consider it on grounds that doing so would interfere with the commencement of trial. *See Equal Emp. Opportunity Comm'n v. JBS USA, LLC*, 481 F. Supp. 3d 1204, 1212 (D. Colo. 2020) (citing 5C Wright et al., Fed. Prac. & Proc. § 1367 (3d ed.)); *cf. Spears v. First Am. eAppraiselt*, No. 5-08-CV-00868-RMW, 2013 WL 1748284, at *2 (N.D. Cal. Apr. 23, 2013); *Packard v. Darveau*, 2012 WL 6086889, *10 (D. Neb. 2012), *aff'd*, 759 F.3d 897 (8th Cir. 2014); *Bierman v. United Farm Family Ins. Co.*, 2013 WL 1897781, *4 (D. Md. 2013); *Liburd v. Government of Virgin Islands*, 2013 WL 960780, *3 (D.V.I. 2013); *Lynch v. Fluor Federal Petroleum Operations*, LLC, 2021 WL 4355643, *4 (E.D. La. 2021) (all declining to find a Rule 12(c) motion was untimely because it would not delay trial). The determination of whether a Rule 12(c) motion is being used to delay trial is within the Court's discretion. *See Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40, 46 (1st Cir. 2012); *Argo v. Woods*, 399 Fed. App'x 1, 3 (5th Cir. 2010); *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1131 (6th Cir. 1990) Further, where it is clear the motion may effectively dispose of the case on the pleadings, the Court generally should hear it. *E.g.,*

*Gen. Elec. Co.*, 916 F.2d at 1131 (holding the alleged untimeliness of a Rule 12(c) motion does is no bar to the dismissal of a suit where the motion is well-supported and the opposition fails to articulate a basis for any prejudice caused by the delay).  But if the pleadings fail to resolve all of the factual issues in a case, the Court may find resolution pursuant to a Rule 12(c) motion inappropriate and elect instead to proceed with discovery. *E.g.*, *Carbonyx License & Lease LLC v. Carbonyx Inc.*, No. 19-CV-1540 (JSR), 2019 WL 2867022, at \*6–7 (S.D.N.Y. July 1, 2019) (denying Rule 12(c) motion when, after drawing all reasonable inferences in the non-moving party's favor, there remained too many unresolved factual disputes).

### B.    Analysis

Apple argues the Court should deny Smith Interface's Motion as a "belated pleading challenge to [its] equitable defenses in favor of deciding them based on a complete evidentiary record and after having the opportunity to judge the credibility of the witnesses who will testify about these defenses." (Opp'n at 8.)  Apple contends that it filed its initial answer in August of 2024, but Smith Interface waited nearly a year to file its Rule 12(c) motion. (*Id.* at 21–22.)  Apple further contends that the Parties have already engaged in substantial discovery and that fact discovery is scheduled to be completed before the hearing on this motion. (*Id.* at 22.)

As previously stated, the determination of whether a Rule 12(c) motion is being used to delay trial is generally within the Court's discretion. (*See supra* Section II.A.)  A Rule 12(c) motion can be employed as a mechanism for raising certain Rule 12(b) defenses after the close of the pleadings, including failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(h)(2).  Further, a Rule 12(c) motion is generally considered timely if it is made early enough not to delay trial or otherwise cause prejudice to the non-moving party. (*See supra* Section II.B.)  Apple does not explicitly argue it would be prejudiced by this Court's adjudication of Smith Interface's Motion. (*See generally* Opp'n.)  Rather, Apple contends that Smith Interface "waited nearly a year" after Apple's initial answer to file its Motion, and that during that time, the parties have engaged in

23-CV-1187 TWR (DTF)

substantial discovery. (*Id.* at 21– 22.) Apple further contends that fact discovery was scheduled to be completed in October of 2025. (*Id.* at 22.) However, it appears the Parties are continuing to engage in discovery as of the date of this memorandum. (*See generally* Docket.) While the Court acknowledges Apple's argument that courts should hesitate to entertain Rule 12(c) motions once parties have invested substantial resources in discovery, the Court **FINDS** Apple's allegations insufficient to justify why the Court should not adjudicate Smith Interface's Motion at this time.

### III.    Leave to Amend

#### A.    *Legal Standard*

"After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). "Rule 15 advises the court that leave shall be freely given when justice so requires" and "[t]his policy is to be applied with extreme liberality." *Id.* (citations and internal quotations omitted). In deciding whether to grant leave to amend, the Court considers the following factors:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* Moreover, "[a] simple denial of leave to amend without any explanation by the district court is subject to reversal." *Id.*

#### B.    *Analysis*

Lastly, the Court considers whether to grant Apple leave to amend its Amended Answer in light of the Court's disposition as to Smith Interface's Motion. The Court

23-CV-1187 TWR (DTF)

**GRANTS** Apple leave to amend its Amended Answer with respect to its inequitable conduct defense, *except* as to its allegation that the '754 Patent was falsely designated as a continuation rather than a continuation-in-part of the '918 Provisional Application because amendment of this particular allegation would be futile.[12]    Additionally, the Court **GRANTS** Apple leave to amend its Amended Answer with respect to its unclean hands defense.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Smith Interface's Motion for Judgment on the Pleadings.  While the Court **DENIES** Apple leave to amend its Amended Answer to the extent its inequitable conduct defense is based on a false priority allegation, (*see supra* Section I.B.1.a.), the Court **GRANTS** leave to amend with respect to Apple's additional inequitable conducts allegations (*see supra* Section I.B.1.b).  The Court also **GRANTS** Apple leave to amend its unclean hands defense.  (*See supra* Section I.B.2.)  Apple **SHALL FILE** its Second Amended Answer **on or before February 27, 2026.**

**IT IS SO ORDERED.**

Dated:  January 28, 2026

_____
Honorable Todd W. Robinson
United States District Judge

---

[12]    Apple argues "the asserted claims of the '754 [P]atent suffer from significant written description defects and are invalid for that reason." (Opp'n at 15.)  This argument inappropriately raised with respect to the present Motion.  (*See* S.D. Cal. Patent L.R. 3.3.)  Accordingly, the Court **FINDS** amendment of Apple's false priority allegation in its Amended Answer would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  This Order does not, however, preclude Apple from arguing this theory with respect to invalidity, provided Apple does so in compliance with this District's Patent Local Rules. (*See generally* S.D. Cal. Patent L.R.)

23-CV-1187 TWR (DTF)