UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SMITH INTERFACE TECHNOLOGIES, LLC,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No.: 23-CV-1187-TWR (BJW)

**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

(ECF Nos. 240, 253)

Presently before the Court is Plaintiff Smith Interface Technologies, LLC's ("Smith Interface's") Motion for Summary Judgment and to Exclude Expert Testimony ("SI Mot.," ECF No. 240-1 (public), ECF No. 246 (sealed)), as well as Defendant Apple Inc.'s ("Apple's") Motion for Summary Judgment and Opposition to Smith Interface's Motion for Summary Judgment ("Apple Mot.," ECF No. 253-1 (public), ECF No. 257 (sealed)), Smith Interface's Response in Opposition to Apple's Motion and Reply in Support of its Motion ("SI Reply," ECF No. 260), and Apple's Reply in Support of its Motion ("Apple Reply," ECF No. 266 (public), ECF No. 265 (sealed)). The Court heard oral arguments on June 15, 2026. (ECF No. 271.) Having carefully considered the Parties' arguments and

the relevant law, the Court **GRANTS IN PART** and **DENIES IN PART** Smith Interface's Motion for Summary Judgment (ECF No. 240), and **GRANTS IN PART** and **DENIES IN PART** Apple's Motion for Summary Judgment (ECF No. 253).

## BACKGROUND[1]

On May 19, 2020, U.S. Patent Appl. 16/438,455 issued as U.S. Patent No. 10,656,754[2] (the "'754 Patent"). (Jt. Stmt. ¶¶ 5, 8.) Dr. Michael S. Smith is the sole named inventor of the '754 Patent, which is assigned to and owned solely by Smith Interface. (*See id.* ¶¶ 3, 5.) Dr. Smith "developed [] advanced input and output techniques for mobile user interfaces[, ("UIs")]" such as "multi-part gestures, where users can take successive actions, such as by touching, tapping, long-pressing, or sliding, and receive feedback at each step, whether visual or tactile (or both)[,]" resulting in numerous patents, including the '754 Patent. (*See* ECF No. 66 ("TAC") ¶ 17, 19.)

On June 27, 2023, Smith Interface filed the instant action against Apple asserting claims of patent infringement, including infringement of the '754 Patent.[3] (*See* Jt. Stmt. ¶ 26 (citing ECF No. 1).) On March 19, 2024, Smith Interface filed the operative Third Amended Complaint. (*See id.* ¶ 29 (citing TAC).) Smith Interface presently accuses Apple of infringing Claims 111, 125, 142, 152, 162, 165, 188, 193, 218, and 219 of the '754 Patent (the "Asserted Claims")—all of which depend from Claim 2. (*Id.* ¶ 10, 11 (citations omitted).) Claim 2 of the '754 Patent recites, in relevant part, "blur, based on a change in

---

[1] The Parties filed a Joint Statement of Undisputed Material Facts in support of their motions for summary judgment on May 21, 2026. (*See* ECF No. 267 ("Jt. Stmt.").)

[2] U.S. Patent No. 10,656,754 (the "'754 Patent") is a continuation of and claims priority to U.S. Patent Appl. No. 16/153,765, filed Oct. 6, 2018, now U.S. Pat. No. 10,345,961; which is a continuation of and claims priority to U.S. Patent Appl. No. 15/072,354, filed Mar. 16, 2016, now U.S. Patent No. 10,133,397; which is a continuation of and claims priority to U.S. Patent Appl. No. 13/567,004, filed Aug. 3, 2012, now U.S. Pat. No. 9,417,754; which claims priority to U.S. Provisional Appl. No. 61/515,835, filed Aug. 5, 2011, U.S. Provisional Appl. No. 61/566,577, filed Dec. 2, 2011, U.S. Provisional Appl. No. 61/569,213, filed Dec. 9, 2011, and U.S. Provisional Appl. No. 61/581,918, filed Dec. 30, 2011, the entire contents of all of which the '754 Patent incorporates by reference. (*See* Jt. Stmt. ¶ 6.)

[3] The '754 Patent is now the only asserted patent in this action. (*See* ECF No. 172.)

a magnitude of the gesture being detected on the touch screen, at least a portion of the at least one other object." (*Id.* ¶¶ 12 (citing ECF No. 240-71 at 95:46–49).) Claims 111, 125, 142, 152, 162, and 165 recite, in relevant part, blurring a user interface "based on a change in a magnitude" which "include[s] a duration magnitude, of the gesture" (*id.* ¶ 13 (citations omitted)); Claims 188 and 193 recite, in relevant part, "the magnitude of the gesture includes a distance magnitude" (*id.* ¶ 14 (citations omitted)); and Claims 218 and 219 recite, in relevant part, "the magnitude, including a distance magnitude, of the gesture . . . or a duration magnitude of the gesture" (*id.* ¶ 15 (citations omitted)).

Apple filed *inter partes* review ("IPR") petitions with the Patent Trial and Appeal Board ("PTAB") challenging, *inter alia*, claims of the '754 Patent, including Claim 2. (Jt. Stmt. ¶ 31 (citing ECF No. 240-14).) The PTAB instituted many of Apple's IPR challenges, including Claim 2 of the '754 Patent. (*Id.* ¶ 32 (citing ECF No. 240-12.) On February 10, 2026, the PTAB issued a Final Written Decision holding that the challenged claims, including Claim 2 of the '754 Patent, "have not proven to be unpatentable" based on the grounds presented in the IPR petitions. (*Id.* ¶ 33 (citing ECF No. 240-12 at 35–36).) Apple also filed an *ex parte* reexamination of the '754 Patent, in which the U.S. Patent and Trademark Office ("USPTO") Examiner confirmed the patentability of the Asserted Claims, but Claim 2 was deemed subject to reexamination (*i.e.*, the patentability of Claim 2 was not confirmed). (*See id.* ¶ 41.) The reexamination of Claim 2 is currently stayed. (*See id.*)

Since the issuance of the '754 Patent, Apple has sold certain "Accused Products"[4] in the United States, all of which run iOS 13 through iOS 26 systems. (*Id.* ¶ 9 (citations

---

[4] The Accused Products include Apple iPhone X, iPhone XR, iPhone XS, iPhone XS Max, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPhone SE (2nd generation), iPhone 12, iPhone 12 Mini, iPhone 12 Pro, iPhone 12 Pro Max, iPhone 13, iPhone 13 Mini, iPhone 13 Pro, iPhone 13 Pro Max, iPhone SE (3rd generation), iPhone 14, iPhone 14 Plus, iPhone 14 Pro, iPhone 14 Pro Max, iPhone 15, iPhone 15 Plus, iPhone 15 Pro, iPhone 15 Pro Max, iPhone 16, iPhone 16 Plus, iPhone 16 Pro, iPhone 16 Pro Max, iPhone 16e, iPhone 17, iPhone 17 Pro, iPhone 17 Pro Max, and iPhone Air as well as Apple's tablets that Smith Interface contends run iPadOS 13 to iPadOS 26 including Apple iPad (5th generation), iPad (6th

omitted).) Throughout the present litigation, Apple has continued to develop and release successive iOS versions, including iOS 26. (*Id.* ¶ 38.)

On August 14, 2025, Smith Interface filed a Motion for Judgment on the Pleadings, which the Court granted on January 28, 2028. (*See* ECF Nos. 168, 217.) Apple then filed a Second Amended Answer. (ECF No. 222.)

On March 27, 2026, the Parties filed a Joint Motion Regarding Consolidated Summary Judgment Briefing Schedule (ECF No. 237), which the Court granted on March 30, 2026 (*see* ECF No. 238). Thereafter, the Parties filed their respective motions for summary judgment, as well as oppositions and replies thereto. (*See* Docket.) The Parties also filed a Joint Statement of Undisputed Material Facts. (*See* Jt. Stmt.) As relevant to the instant motions for summary judgment, the Parties stipulate the following:

- During the prosecution of U.S. Patent Appl. No. 15/072,354—which issued as U.S. Patent No. 10,133,397 on November 20, 2018, and is a member of the patent family to which the '754 Patent claims priority—the USPTO Examiner instructed Dr. Smith to add the phrase "blurring as a function of pressure" to Figure 22 of the patent specification. (*Id.* ¶ 7.) The USPTO Examiner also noted that the language was already supported by the original specification. (*Id.*)

- Apple announced iOS 13 to the public on June 3, 2019. (*Id.* ¶ 18.)

---

generation), iPad (7th generation), iPad (8th generation), iPad (9th generation), iPad (10th generation), iPad (A16), iPad Mini 4, iPad Mini (5th generation), iPad Mini (6th generation), iPad Mini (A17 Pro), iPad Air 2, iPad Air (3rd generation), iPad Air (4th generation), iPad Air (5th generation), iPad Air 11 inch (M2), iPad Air 11-inch (M3), iPad Air 13-inch (M2), iPad Air 13-inch (M3), iPad Pro 12.9-inch (1st generation), iPad Pro 12.9-inch (2nd generation), iPad Pro 12.9-inch (3rd generation), iPad Pro 12.9-inch (4th generation), iPad Pro 12.9-inch (5th generation), iPad Pro 12.9-inch (6th generation), iPad Pro 13-inch (M4), iPad Pro 9.7-inch, iPad Pro 10.5-inch, iPad Pro 11-inch (1st generation), iPad Pro 11-inch (2nd generation), iPad Pro 11-inch (3rd generation), iPad Pro 11-inch (4th generation), and iPad Pro 11-inch (M4). (*See* Jt. Stmt. at 3 n.2.)

Dr. Craig Rosenberg, one of Smith Interface's experts, categorizes the Accused Products into four groups: (1) iOS 13–18, (2) iOS 26 iPhones, (3) iPadOS 13–18 iPads, and (4) iPadOS 26 iPads. (*See id.* ¶ 16.) Dr. Rosenberg selected and tested a product from each group, opining that the selected product is representative of the other Accused Products within that group. (*See id.* ¶ 17 (citations omitted).) Apple does not dispute the representativeness of these products. (*See* SI Mot. at 26 n.3 (citations omitted).)

- Apple released the iPhone 11 Pro and iPhone 11 Pro Max and iOS 13 in the United States on September 10, 2019. (*Id.* ¶ 19.)

- iOS 13 was made available on the iPhone 6s and later models on September 19, 2019. (*Id.* ¶ 20.)

- Apple released the iPhone 6 and the iPhone 6 Plus in the United States on September 9, 2015. (*Id.* ¶ 21.)

- 3D Touch was a feature in the iPhone 6 and iOS 9, which were released in September 2015. (*Id.* ¶ 22.)

- "App Switcher" is implemented in iOS source code. (*Id.* ¶ 23.)

- Smith Interface accuses iPhones and iPads of infringing Claims 218 and 219 based on the "App Switcher" feature. (*Id.* ¶ 24.)

- Smith Interface does not accuse the "Today View" feature in iOS of infringement of any claims of the '754 Patent in this case. (*Id.* ¶ 25.)

- Section X of Dr. Bederson's Opening Expert Report asserts that Claim 2 of the '754 Patent is rendered obvious over U.S. Patent Publication No. 2008/0207188 ("Ahn '188") alone or in combination with U.S. Patent No. 9,521,375 ("Beaumier"). (*Id.* ¶ 34.) Apple raised or could have raised Ahn '188 and Beaumier with respect to this IPR challenge. (*Id.* ¶ 35.)

- The '754 Patent is subject to a terminal disclaimer. (*Id.* ¶ 36 (citing ECF No. 240-69).) Accordingly, the term of the '754 Patent does not extend beyond 20 years from the earliest non-provisional application to which it claims priority. (*Id.* ¶ 37 (citing ECF No. 240-71).)

- Apple has identified non-infringing alternatives that are "acceptable" and "available" and would require only "minor changes to software" that could be implemented "without significant cost." (*Id.* ¶ 39 (citing ECF No. 242-08 at 54–63.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment as to a claim or defense or part of a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although materiality is determined by substantive law, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *see also Anderson*, 477 U.S. at 248. Accordingly, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] upon mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256.

"In reviewing cross-motions for summary judgment, each motion must be considered on its own merits." *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 885 (9th Cir. 2019) (quotation omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotation omitted). The Court must "consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

## ANALYSIS

## I. Smith Interface's Motion for Summary Judgment[5]

### *A. Partial Summary Judgment of Infringement and Partial Exclusion of Dr. Bederson's Rebuttal Report*

#### *1. Edge Menu Claims (Claims 188 and 193)*

Smith Interface argues that the Control Center functionality of accused iPhones with Face ID meets all elements of Claims 188 and 193, and that the Control Center functionality of the accused iPads meets all elements of Claim 193. (*See* SI Mot. at 26.) Claims 188 and 193 both depend from Claims 2 and 186. (*See id.* at 14–16.) Smith Interface relies on the testimony of its expert, Dr. Craig Rosenberg, to provide factual support for its theory of infringement as to the Edge Menu Claims. (*See* SI Mot. at 26–35 (citing ECF No. 242-1 ("Rosenberg Rep.") (sealed)).) Smith Interface also argues that certain opinions by Apple's expert, Dr. Benjamin Bederson, (*see* ECF No. 242-2 ("Bederson Rep.") (sealed);

/ / /

---

[5] Smith Interface identifies four groups of Asserted Claims implemented in the Accused Products: (1) Edge Menu Claims (Claims 188 and 193); (2) Home Screen Context Menu Claims (Claims 152, 162, and 165); (3) In-App Context Menu Claims (Claims 111, 125, and 142); and (4) Multitasking Interface Claims (Claims 218 and 219). (*See* SI Mot. at 14–24.) The Court follows and applies Smith Interface's compartmentalization of the Asserted Claims for purposes of this Order. *See generally infra*.

ECF No. 242-3 ("Bederson Rebuttal Rep.") (sealed)), are improper and thus should be stricken. (*See* SI Mot. at 26–35.)

Smith Interface identifies three of Dr. Bederson's opinions which it argues should be stricken: (1) his opinion that the processor does not "address" flash memory "directly" "to execute instructions," and thus the products do not practice Claim 2; (2) his opinion that a vertical displacement is not a distance "of the gesture," and thus the products do not practice Claim 186; and (3) his opinion that the form of Dr. Rosenberg's testing lacks specificity and thus fails to show that the products infringe the Edge Menu Claims. Without these opinions, Smith Interface contends there is no evidence upon which Apple can rely on to show a genuine dispute as to whether the products practice the Edge Menu Claims. (*Id.*) Accordingly, Smith Interface argues it is entitled to summary judgment of infringement of Claims 188 and 193. (*See id.*) In opposition, Apple contends Smith Interface is not entitled to summary judgment of infringement of Claims 188 or 193 because Dr. Bederson's opinions are proper and establish a genuine dispute as to whether the products practice the Edge Menu Claims. (*See* Apple Mot. at 41–45.) Apple also raises an additional argument that Smith Interface did not prove that the Control Center practices the "when" limitations of the Edge Menu Claims. (*Id.* at 43.) The Court addresses each argument in turn.

a. Whether the Processor "Addresses" Flash Memory "Directly" "to Execute Instructions"

Claim 2 recites, in relevant part:

[pre] An apparatus, comprising:

> [a] at least one non-transitory memory;
>
> [b] a touch screen; and
>
> [c] one or more processors in communication with at least one non-transitory memory, and the touch screen, wherein the one or more processors execute instructions in the at least one non-transitory memory . . .

(*See* SI Mot. at 14.) Smith Interface contends—and Apple does not dispute—that each product is an "apparatus" that includes flash memory ("at least one non transitory memory"), a "touch screen," and an application processor ("one or more processors"), per Elements 2[pre]–[c]. (*See id.* at 27.) The Parties disagree, however, that a factual dispute exists as to whether the products practice the remaining portion of Element 2[c] (*i.e.*, "wherein the one or more processors execute instructions in the at least one non-transitory memory").

As a threshold matter, Smith Interface contends that, in response to Request for Admission No. 2, Apple stated it "admits that one or more processors [in the products]. . . ***execute instructions stored in at least one non-transitory memory***[.]" (*Id.* at 31 (emphasis in original).) Smith Interface argues this admission bars Apple from contesting that the Accused Products do not practice the "wherein the one of more processors execute ***instructions in the at least one non-transitory memory***" portion of Element 2[c]. (*Id.* at 31 (emphasis in original) (citations omitted).) Smith Interface is correct. Pursuant to Federal Rule of Civil Procedure 36(b), once admitted, a matter "is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Considering Apple did not seek to withdraw or amend, the Court may consider the admission in granting summary judgment for Smith Interface as to infringement. Fed. R. Civ. P. 56(c).

Notwithstanding Apple's prior admission of this fact, Smith Interface raises additional arguments showing it is entitled to summary judgment. For example, Smith Interface argues the Court should strike the opinion of Dr. Bederson as to Element 2[c] because it improperly adds a limitation found neither in the claim nor his invalidity analysis. (*See* SI Mot. at 26–28.) Indeed, despite previously opining in his Invalidity Report that flash memory meets Claim 2, Dr. Bederson's Rebuttal Report now opines that Element 2[c] is not met because the processor does not "***address***" flash memory "***directly*** to execute instructions." (*Id.* at 31–32 (emphasis in original) (citations omitted).)

/ / /

Although an expert may opine as to how a person of ordinary skill in the art would understand a term, it is improper for an expert to argue claim construction to the jury. *See Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009). Because Claim 2 does not require the processor to "address" the memory "directly" or otherwise, (*see generally* ECF Nos. 188, 197), the Court **AGREES** with Smith Interface that Dr. Bederson's opinion is improper. Moreover, because the question on summary judgment is "whether a reasonable jury, armed with the Court's claim construction as to certain terms and an instruction that the plain and ordinary meaning controls as to others, could or would necessarily conclude that the asserted claim reads on an accused device," the Court may strike expert opinions as improper if they require new claim constructions. *See Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738-WHO, 2020 WL 5106845, at *4 (N.D. Cal. Aug. 31, 2020) (internal quotations and citations omitted). Accordingly, the **STRIKES** paragraphs 89–101 of Dr. Bederson's Rebuttal Report.

b. Whether Vertical Displacement is a Distance "of the Gesture"

Claim 186 recites:

> [pre] The apparatus of claim 2, wherein the apparatus is configured such that:
>
> > [a] the at least part of the gesture is detected on the touch screen on an edge of the touch screen;
> >
> > [b] the magnitude of the gesture includes a distance magnitude;
> >
> > [c] the gesture includes a swipe gesture
> >
> > [d] a magnitude of the blurring is continuously increased as a continuous function of an increase in the magnitude of the gesture being detected on the touch screen;
> >
> > [e] a magnitude of the blurring is continuously decreased as a continuous function of another change; and
> >
> > [f] when the magnitude of the gesture is detected on the touch screen is detected to increase above a distance threshold, a menu is displayed with at least one option, such that:

> [g] the at least one other object is displayed via a first virtual display layer,
>
> [h] the menu is displayed in a second virtual display layer that appears above the first virtual display layer, and
>
> [i] the menu remains displayed after a completion of the gesture.

(*See* SI Mot. at 14–15.) Smith Interface contends there is no dispute as to whether the Accused Products practice the "of the gesture" component of at least Elements 186[b] and 186[f] because "[t]he plain claim language requires only 'a distance magnitude' (construed as 'an amount of distance') that is 'of the gesture.'" (*Id.* at 32 (citations omitted).) Smith Interface further contends that Dr. Bederson's opinion regarding the amount of distance of the gesture—that is, excluding the vertical distance "of the gesture"—is improper and thus should be excluded. (*See id.* at 29, 32–34.)

The Court construed the term "distance magnitude" as "an amount of distance." (ECF No. 197 at 19; *see* ECF No. 188 at 17–19.) In doing so, the Court did not limit the direction of that gesture. Because the Court's interpretation of the relevant claim terms governs the case, *see Exergen Corp. v. Wal-Mart Store, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009), the Court **AGREES** with Smith Interface that it is entitled "to obtain the full scope of its plain and ordinary meaning." *See Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012). Thus, the Court **FINDS** Dr. Bederson's opinions regarding excluding the vertical component are improper and **STRIKES** paragraphs 255–67, 273–75, 295–307, 309–12, 314–16 of Dr. Bederson's Rebuttal Report as well as paragraphs 101–12, 128–30 of his Supplemental Report. *See supra* I.A.1.a.

c. Dr. Bederson's Criticism of the Form of Dr. Rosenberg's Testing

Smith Interface contends that Dr. Bederson's criticism of the form of Dr. Rosenberg's testing should be stricken because it fails to raise a factual issue and is thus "insufficient as a matter of law". (SI Mot. at 34–35.) In response, Apple contends that Smith Interface's disagreements with Dr. Bederson's opinions are not a basis to exclude

/ / /

them. (*See* Apple Mot. at 45.) The Court **AGREES** with Apple and **DECLINES TO STRIKE** paragraphs 250–54 and 290–94 of Dr. Bederson's Rebuttal Report.[6]

d. Apple's Argument Regarding Whether the Control Center Practices the "When" Limitations of the Edge Menu Claims

Apple argues Smith Interface fails to prove that the Control Center satisfies the requirement that "when the magnitude of the gesture . . . is detected to increase above a distance threshold, a menu is displayed." (Apple Mot. at 43 (quoting Element 186[f]).) *See supra* Section I.A.1.b. While Apple does not dispute Dr. Rosenberg's testimony that the Control Center satisfies this limitation when a user swipes from the top-right corner of the screen to open the control center, (*see* Apple Mot. at 43 (citing Rosenburg Rep. ¶ 325)), Apple contends that Dr. Bederson demonstrates the Control Center does not satisfy this limitation because various gestures starting at the top-right corner of the screen do not display the Control Center even if they satisfy the purported distance threshold. (*Id.* (citing Bederson Rebuttal Rep. ¶¶ 255–275).) Thus, Apple argues, there is no infringement. (*Id.*)

To evaluate Apple's argument, the Court must consider the construction of the term "when." Apple contends that the term "when" implies exclusive causation, and thus Smith Interface cannot argue the Control Center "sometimes" infringes the Edge Menu Claims. (*See id.*) Smith Interface disputes Apple's construction of the "when" limitation, arguing it is inconsistent with the plain language of the term. (SI Reply at 42–44.) Although the Federal Circuit has not yet opined on the use of the term "when" in this context, when analyzing other causational claim terms (*i.e.*, "in response to" and "based on"), the Federal Circuit has rejected the argument that the plain language implies exclusivity. *See, e.g.*, *Apple Inc. v. MemoryWeb, LLC*, No. 2023-2361, 2025 WL 3494991, at *11 (Fed. Cir. Dec.

---

[6] Even though Dr. Bederson criticizes Dr. Rosenberg's testing, he does not opine that the results of his testing are "incorrect." (*See* Dr. Bederson Rebuttal Rep. ¶¶ 250–51.) Additionally, Apple did not file a *Daubert* motion seeking to exclude any of Dr. Rosenberg's testimony. (*See generally* Docket.) Because nothing prevents Smith Interface from relying on Dr. Rosenberg's opinions, and Dr. Bederson's remaining opinions do not otherwise create an issue of fact, summary judgment for Smith Interface is warranted.

5, 2025); *Centripetal Networks, LLC v. Palo Alto Networks, Inc.*, No. 2023-1654, 2024 WL 4639207, at *4 (Fed. Cir. Oct. 31, 2024); *Masimo Corp. v. Sotera Wireless, Inc.*, No. 2022-1415, 2023 WL 6307959, at *2 (Fed. Cir. Sept. 28, 2023). Thus, the Court is unpersuaded by Apple's assertion that the plain language supports an exclusive definition. Because Smith Interface shows evidence that the products satisfy the limitation under the plain and ordinary meaning of the term "when," and considering Apple does not provide evidence of the contrary, the Court **REJECTS** Apple's argument that the Control Center does not satisfy Element 186[f].

In sum, the Court **FINDS** that Smith Interface has presented sufficient evidence to show the Control Center functionality of accused iPhones with Face ID meets all elements of Claims 188 and 193, and that the Control Center functionality of the accused iPads meets all elements of Claim 193. The Court also **FINDS** Apple's evidence insufficient to raise genuine issues of material fact. Because a reasonable jury could not find otherwise, the Court **GRANTS** summary judgment for Smith Interface as to infringement of the Edge Menu Claims.

*2. Home Screen and In-App Context Menu Claims*

Next, Smith Interface argues that the Home Screen Context Menu functionality of the accused iPhones[7] meets all elements of Claim 152 (which depends from Claims 2 and 151), Claim 162 (which depends from Claim 152), and Claim 165 (which depends from Claim 2). (*See* SI Mot. at 35.) Smith Interface also argues the In-App Context Menu functionality of accused iPhones meets all elements of Claim 111 (which depends from Claims 2 and 101), Claim 125 (which depends from Claims 2 and 123), and Claim 142 (which depends from Claim 2). (*See id.* at 37.) In support of its theories of infringement,

---

[7] The accused iPhones include: Apple iPhone X, iPhone XR, iPhone XS, iPhone XS Max, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPhone SE (2nd generation), iPhone 12, iPhone 12 Mini, iPhone 12 Pro, iPhone 12 Pro Max, iPhone 13, iPhone 13 Mini, iPhone 13 Pro, iPhone 13 Pro Max, iPhone SE (3rd generation), iPhone 14, iPhone 14 Plus, iPhone 14 Pro, iPhone 14 Pro Max, iPhone 15, iPhone 15 Plus, iPhone 15 Pro, iPhone 15 Pro Max, iPhone 16, iPhone 16 Plus, iPhone 16 Pro, iPhone 16 Pro Max, iPhone 16e, iPhone 17, iPhone 17 Pro, iPhone 17 Pro Max, and iPhone Air. *See supra* note 4.

Smith Interface again relies on the testimony of its expert, Dr. Rosenberg. (*See id.* at 35–44.) Smith Interface also again argues that certain opinions by Apple's expert, Dr. Bederson, are improper and should be stricken. (*Id.* at 40–44.) Without these opinions, Smith Interface argues there is no evidence upon which Apple can rely in order to show a genuine dispute as to whether the Accused Products practice the Home Screen and In-App Context Menu Claims. (*Id.*) In opposition, Apple contends Smith Interface is not entitled to summary judgment of infringement of Claims 111, 125, 142, 152, 162, or 165 because Dr. Bederson's opinions are proper and establish a genuine dispute as to whether the Accused Products practice the Home Screen and In-App Context Menu Claims. (*See* Apple Mot. at 34–40.)

Specifically, Smith Interface argues the following opinions of Dr. Bederson should be stricken: (1) his opinion as to the "when" limitations of the Home Screen and In-App Context Menu Claims; (2) his opinion that a tap and a long press are two different "gestures," and thus the Accused Products do not practice Claims 123, 142, 151, and 165; and (3) his opinion that the form of Dr. Rosemberg's testing lacks specificity and thus fails to show that the products infringe the Home Screen / In-App Context Menu Claims. The Court analyzes each in turn.

a. Dr. Bederson's Opinion Involving Unaccused Scenarios and the "When" Limitation

Smith Interface contends an undisputed behavior of the accused iPhones is that, for user interactions with little or no movement during the touch, a context menu is displayed "when" the "duration magnitude of the gesture" "is detected to increase above [a] duration threshold." (SI Mot. at 40 (citations omitted).) Smith Interface further contends that Dr. Bederson's opinions regarding noninfringement rely on specific user interactions that are different than what is accused of infringing, and thus his opinions are insufficient to avoid summary judgment. (*Id.* at 40–41.) Apple does not directly respond to this argument. (*See generally* Apple Mot.; Apple Reply.)

/ / /

However, in its opposition to Smith Interface's Motion, Apple argues that Smith Interface cannot prove that the products practice the "when" limitation of the Home Screen and In-App Context Menu Claims, citing Dr. Bederson's testing. (Apple Mot. at 38.) For example, with respect to In-App Context Menus, Apple asserts that Dr. Bederson demonstrates various gestures do not result in a context menu regardless of the duration of the gesture. (*See id.* (citations omitted).) Apple also argues Smith Interface's assertion that an accused device that sometimes, but not always, embodies a claim nonetheless infringes should be rejected because "the accused products never infringe." (*Id.* at 39 (citing SI Mot. at 40–41).) Specifically, Apple contends the Accused Products are not configured to practice the claims because of Dr. Bederson's test results and "because the accused products never consider gesture duration as the only criteria for displaying a context menu." (*Id.*)

For the reasons explained above, with respect to the "when" limitation in the Edge Menu Claims, *see supra* Section I.A.1.d, the Court **FINDS** Dr. Bederson's opinions improperly limit the scope of the plain meaning of the term "when." Thus, the Court **STRIKES** paragraphs 115–34, 136–41, 213–32 of Dr. Bederson's Rebuttal Report as well as paragraphs 40–54 of his Supplemental Report.

b. Dr. Bederson's Opinion as to Gesture

Smith Interface argues Dr. Bederson's opinion that a "tap" and a "long press" are two different gestures attempts to incorrectly construe gesture. (SI Mot. at 41–42.) Smith Interface contends that the plain language of the claims define "***the*** gesture" as a touch that begins on an object and must cover both a tap and a long press to meet all conditional elements. (*Id.* at 43 (emphasis in original).) Smith Interface further contends that Dr. Bederson improperly insists that where a detected gesture turns into a tap, the device must still perform the recited blur operation. (*Id.*) But Element 2[f] recites conditionally performing blur "based on a change in magnitude of the gesture being detected," which Smith Interface has mapped to exceed a duration threshold—a condition that is not met for a tap. (*See id.* (emphases omitted).)

In response, Apple argues that Smith Interface incorrectly relies on two gestures to satisfy claim limitations that require a single gesture. (*See* Apple Mot. at 36.) Apple contends that while a long-press gesture is continuous, a tap gesture is brief. (*Id.* at 37.) Although that distinction is undisputed, it does not alone show a factual dispute exists based on the conditional language of the claim because Smith Interface claims only what the Accused Products are capable of responding to; thus, it is not necessary that all gestures perform the recited operation. *See ParkerVision, Inc. v. Qualcomm Inc.*, 903 F.3d 1354, 1361 (Fed. Cir. 2018) (quoting *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990)) ("Apparatus claims cover what a device is, not what a device does."); *see also Apple, Inc. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 1141, 1151 (N.D. Cal. 2012) (explaining that whether the user actually performs the operation is irrelevant when a claimed apparatus "claims only a device that is capable of responding to the specified user action in the specified way"). Accordingly, the Court **AGREES** with Smith Interface and **STRIKES** paragraphs 156–68 of Dr. Bederson's Rebuttal Report as well as paragraphs 60–77 his Supplemental Report.

c. Dr. Bederson's Criticism as to the Form of Dr. Rosenberg's Testing

Like the Edge Menu Claims, Smith Interface again argues Dr. Bederson's criticism of the form of Dr. Rosenberg's testing is "insufficient as a matter of law." (SI Mot. at 43–44.) For the same reasons stated previously, *see supra* Section I.A.1.c, the Court **REJECTS** Smith Interface's argument and **DECLINES TO STRIKE** those portions of Dr. Bederson's opinions.[8]

---

[8] Like Dr. Bederson's criticism of Dr. Rosenberg's testing with respect to the Edge Menu Claims, *see supra* note 6, for the Home Screen / In-App Context Menu Claims, Dr. Bederson does not opine that the results of his testing are "incorrect." (*See* Dr. Bederson Rebuttal Rep. ¶¶ 110–19.) And again, Apple did not file a *Daubert* motion seeking to exclude any of Dr. Rosenberg's testimony. (*See generally* Docket.) Thus, because nothing prevents Smith Interface from relying on Dr. Rosenberg's opinions, and Dr. Bederson's remaining opinions do not otherwise create an issue of fact, summary judgment for Smith Interface is warranted.

In sum, the Court **FINDS** that Smith Interface has presented sufficient evidence to show the Home Screen Context Menu functionality of accused iPhones with Face ID meets all elements of Claims 152, 162, and 165, as well as to show the In-App Context Menu functionality of accused iPhones meets all elements of Claims 111, 125, and 142. The Court also **FINDS** Apple's evidence insufficient to raise genuine issues of material fact. Because a jury could not find otherwise, the Court **GRANTS** summary judgment for Smith Interface as to infringement of the Home Screen Context Menu and In-App Context Menu Claims.

***B. IPR Estoppel of Certain Invalidity Theories***

The doctrine of IPR estoppel prohibits the validity-challenging party in an IPR of a patent claim that results in a final written decision from later asserting in a civil action that the claim is invalid on any ground that was raised or reasonably could have been raised during that IPR. *See* 35 U.S.C. § 315(e)(2). The Federal Circuit has confirmed that IPR estoppel is to be applied on a claim-by-claim basis, meaning the validity of claims that were not part of the IPR can still be challenged in subsequent litigation. *See Click-to-Call Techs. LP v. Ingenio, Inc.*, 45 F.4th 1363, 1369 (Fed. Cir. 2022). The Federal Circuit has also confirmed that IPR estoppel is limited to theories of invalidity allowed in IPR proceedings, that is, prior art patents and printed publications. *See Ingenico Inc. v. IOENGINE*, LLC, 136 F.4th 1354, 1365 (Fed. Cir. 2025).

Smith Interface argues IPR estoppel precludes Apple from pursuing the invalidity theories in Section X of Dr. Bederson's Opening Report because the PTAB's February 10, 2026, Final Written Decision found Claim 2—the independent claim from which all the Asserted Claims depend—of the '754 Patent was "not proven to be unpatentable." (*See* SI Mot. at 44–45). In response, Apple argues IPR estoppel does not apply because Apple did not specifically challenge the Asserted Claims during that IPR. (*See* Apple Mot. at 46.) Apple contends that because Claim 2 is not asserted in this case, IPR estoppel does not apply as to the Asserted Claims. (*See id.*)

/ / /

As a threshold matter, the Parties concede that Section X of Dr. Bederson's Opening Report asserts that Claim 2 is rendered obvious over Ahn '188 alone or in combination with Beaumier. (*See* Jt. Stmt. ¶ 34.) The Parties also concede that Apple raised or could have raised Ahn '188 and Beaumier in the IPR with respect to Claim 2. (*See* Jt. Stmt. ¶ 35.) Accordingly, the relevant question is whether the Asserted Claims—all of which depend from independent Claim 2—can still be argued as obvious in view of Ahn '188 alone or in combination with Beaumier, despite the PTAB's finding that Claim 2 itself was "not proven to be unpatentable" over prior art patents and printed publications.

Although each claim of a patent—whether in independent or dependent form—is presumed valid independent of the validity of other claims, *see* 35 U.S.C. § 282(a), a claim in dependent form must be construed to include all the limitations of the independent claim from which it depends. *See* 37 CFR § 1.75(c) ("Claims in dependent form shall be construed to include all the limitations of the claim incorporated by reference into the dependent claim."). This is because a dependent claim can only add limitations to those already imposed by the independent claim it incorporates; in other words, it can only narrow the scope of the independent claim from which it depends. *See Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1380 (Fed. Cir. 2022) ("By definition, an independent claim is broader than a claim that depends from it, so if a dependent claim reads on a particular embodiment of the claimed invention, the corresponding independent claim must cover that embodiment as well.").

In evaluating a party's assertion of invalidity based on obviousness, the Court considers whether a combination of prior art elements meets all the limitations of a challenged claim. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415 (2007). Consequently, when evaluating whether a dependent claim is invalid based on obviousness, the Court cannot ignore the independent claim from which that claim depends. *See In re Gulack*, 703 F.2d 1381, 1382 (Fed. Cir. 1983) (explaining all claim limitations must be considered when determining patentability of an invention over the prior art). Indeed, the Federal Circuit has expressly held that "[a] broader independent claim cannot be

nonobvious where a dependent claim stemming from that independent claim is invalid for obviousness." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1344 (Fed. Cir. 2009) (citing *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007)).

Accordingly, the Court finds that the PTAB's February 10, 2026, Final Written Decision estops Apple from asserting Claim 2 is invalid for obviousness based on patents and printed publications that were raised or could have raised in that IPR, including Ahn '188 and Beaumier. *See* 35 U.S.C. § 315(e)(2). Because Claim 2 cannot be invalid for obviousness on these grounds, it follows that the Asserted Claims—all of which depend from Claim 2—cannot be invalid for obviousness on these same grounds. Thus, although Apple is technically correct that the claims presently at issue were not asserted in the IPR (*see* Apple Mot. at 46), the Court nevertheless **REJECTS** Apple's argument that the validity of Claim 2 is not at issue here.[9] Because Sections X.C and X.D of Dr. Bederson's Opening Report specifically opine as to the alleged obviousness of the Asserted Claims based on the limitations imposed by Claim 2, the Court **GRANTS** summary judgment for Smith Interface as to this issue. Accordingly, Apple is estopped pursuant to 35 U.S.C. § 315(e)(2) from arguing the Asserted Claims are invalid for obviousness based on prior art patents and printed publications, including but not limited to Anh '188 and Beaumier, at least with respect to the specific limitations imposed by Claim 2.[10]

---

[9] Apple is correct in arguing 35 U.S.C. § 315(e)(2) does not estop Apple from arguing the Asserted Claims ***themselves*** are invalid for obviousness based on prior art patents and printed publications, including but not limited to Anh '188 and Beaumier. *See Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1052 (Fed. Cir. 2017) ("There is no IPR estoppel with respect to a claim as to which no final written decision results.") But Apple fails to explain how the additional limitations imposed by these dependent claims render them obvious if independent Claim 2 cannot be found obvious based on the grounds it advances (*i.e.*, prior art patents and printed publications, including but not limited to Anh '188 and Beaumier).

[10] Unless Apple can show the additional limitations imposed by the dependent Asserted Claims render them obvious—despite independent Claim 2 being nonobvious on the same grounds it advances with respect to the Asserted Claims (*i.e.*, prior art patents and printed publications, including but not limited to Anh '188 and Beaumier)—then Apple is also impliedly estopped from arguing the Asserted

### *C. Summary Judgment of Apple's Prosecution Laches Defense*

Prosecution laches is "a defense to an infringement action involving new claims issuing from divisional and continuing applications that prejudice intervening adverse public rights." *Symbol Technologies, Inc. v. Lemelson Med., Educ. & Research Foundation, LP ("Symbol I")*, 277 F.3d 1361, 1364 (Fed. Cir. 2002). The defense of prosecution laches requires two elements: (1) the patentee's delay in prosecution is unreasonable and inexcusable under the totality of the circumstances, and (2) the accused infringer suffered prejudice attributable to the delay. *See Hyatt v. Hirshfeld*, 998 F.3d 1347, 1362 (Fed. Cir. 2021) (citing *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 728–29 (Fed. Cir. 2010)); *see also Personalized Media Commc'n, LLC v. Apple Inc.*, 57 4th 1346, 1354 (Fed. Cir. 2023).

To begin, the Court must first resolve the Parties' dispute as to who bears the burden of proof. (*See* SI Mot. at 46; Apple Mot. at 47; SI Reply at 45.) As a general rule, the party claiming it was "adversely affected" by the alleged delay in prosecution bears the burden; here, that would be Apple. *See Shire Orphan Therapies LLC v. Fresenius Kabi USA, LLC*, No. 1:15-cv-1102 GMS, 2018 WL 2684097, *23 (D. Del. June 5, 2018) (citing *Cancer Rsch. Tech. Ltd. v. Barr Lab'ys, Inc.*, 625 F.3d 724, 729–32 (Fed. Cir. 2010)). But because the alleged prosecution delay exceeds six years, Apple contends a different rule applies, thus shifting the burden to Smith Interface. (*See* Apple Mot. at 47 (citing *Hyatt*, 998 F.3d at 1369–70).) Indeed, the Federal Circuit in *Hyatt* found that a prosecution delay of more than six years raises a presumption that it was unreasonable, inexcusable, and prejudicial, and thus the burden of proof shifts to the patentee. *See Hyatt*, 998 F.3d at 1369–70. But as Smith Interface correctly points out, this burden-shifting rule applies only in the context of actions brought against the USPTO pursuant to 35 U.S.C. § 145. *See id.*

/ / /

---

Claims are invalid for obviousness based on prior art patents and printed publications, including but not limited to Anh '188 and Beaumier.

at 1370. Thus, the Court rejects Apple's burden-shifting argument and **FINDS** that Apple bears the burden of proof to show prejudice.

*1. The Delay was Unreasonable and Inexcusable*

Smith Interface argues that the eight-year delay in prosecuting the '754 Patent cannot be unreasonable because the patent is subject to a terminal disclaimer, meaning its term does not extend beyond 20 years from the earliest non-provisional application to which it claims priority. (*See* SI Mot. at 47.) Thus, Smith Interface contends "Apple cannot manufacture a narrative of an 'inequitable scheme' where the patent term was never extended[.]" (*Id.*) Although the Court recognizes that the "[u]se of the patent prosecution process to extend the patent term is an important commonality amongst finding prosecution laches cases[,]" *see Seagen Inc. v. Daiichi Sankyo Co.*, No. 2:20-CV-00337-JRG, 2022 WL 2789901, at *7 (E.D. Tex. July 15, 2022), the Court must consider the totality of the circumstances in determining whether the delay was unreasonable. *See Cancer Research Tech. Ltd.*, 625 F.3d at 728 (citing *Symbol Techs., Inc. v. Lemelson Med.*, 277 F.3d 1361, 1366 (Fed. Cir. 2002)); *Hyatt*, 998 F.3d at 1360.

In support of its unreasonable delay argument, Apple primarily cites to *Personalized Media Communs., LLC v. Apple Inc.*, 57 F.4th 1346 (Fed. Cir. 2023) ("*PMC*"). (*See* Apple Mot. at 48–49.) In *PMC*, the Federal Circuit affirmed the trial court's finding of prosecution laches due to evidence of the patentee's "institutionalized . . . abuse of the patent system by expressly adopting and implementing dilatory prosecution strategies, specifically to ambush companies like Apple." *See id.* at 1354. Apple asserts that it has presented sufficient evidence to show a genuine dispute as to whether Smith Interface engaged in similar conduct here—that is, "dilatory prosecution strategy to try to ambush Apple by crafting claims directed to features of Apple's existing products." (Apple Mot. at 48 (citations omitted).) Although the circumstances in *PMC* differ from this case in that, in *PMC*, the patentee's "sole purpose" in delaying issuance of its patents was to extend its patents' terms, *see* 57 F.4th at 1351, the Court is hesitant to conclude that, as a matter of law, there can be no finding of prosecution laches absent an extension of the patent's term.

Thus, the Court **FINDS** there is a genuine dispute of material fact regarding Smith Interface's reasonableness in prosecuting the '754 Patent. *See, e.g.*, *ICOS Vision Sys. Corp. N.V. v. Scanner Techs. Corp.*, No. 10 CIV. 0604 PAC, 2012 WL 512641, at *7–8 (S.D.N.Y. Feb. 15, 2012) (denying summary judgment where an accused infringer presented evidence creating a genuine issue as to whether the patentee unreasonably delayed prosecution its patent "in order to expand the scope of its claims to include products developed by [the accused infringer]").

*2. Prejudice Attributable to the Delay*

Smith Interface argues that Apple fails to show it suffered prejudice because it fails to identify any action it would have taken differently if the '754 Patent had issued sooner. (*See* SI Mot. at 46.) In response, Apple contends that such a showing is not required to prove prejudice. (*See* Apple Mot. at 48.) Apple is correct. Smith Interface itself states that, to show prejudice, Apple must show that it "would have done something differently ***or*** experienced a change in economic position as a result of the alleged delay in issuance of the patent-in-suit." (SI Mot. at 46 (citing *Shire Orphan Therapies LLC v. Fresenius Kabi USA, LLC*, No. 1:15-cv-1102 GMS, 2018 WL 2684097, *23 (D. Del. June 5, 2018)) (internal quotations omitted) (emphasis added).) This alone illustrates that Apple is not required to show it "would have done something differently" in order to prove prejudice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise . . ."). Other courts have also found sufficient evidence of prejudice to withstand a motion for summary judgment absent such a showing. *See, e.g.*, *Mojo Mobility, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-00398-JRG-RSP, 2024 WL 3354705, at *2 (E.D. Tex. June 11, 2024) (denying summary judgment as to prejudice despite an assertion that "Samsung has not provided evidence of different actions that would have been taken if the claims had been issued sooner") (citing *Ormco Corp. v. Align Tech., Inc.*, 647 F. Supp. 2d 1200, 1207 (C.D. Cal. 2009)). Thus, the Court rejects Smith Interface's argument.

Prejudice may exist where there is evidence that "either the accused infringer or others invested in, worked on, or used the claimed technology during the period of delay." (Apple Mot. at 48 (citing *Cancer Rsch. Tech. Ltd. v. Barr Lab'ys, Inc.*, 625 F.3d 724, 729 (Fed. Cir. 2010)).) Smith Interface argues Apple fails to set forth such evidence of prejudice because "attorney assertions in a brief are not evidence." (SI Reply at 47.) But Apple cites to evidence from its fact witnesses and experts in support of its argument that "Apple was prejudiced by having invested in, worked on, and used the accused technology. . . during [Smith Interface's] unreasonable eight-year delay[.]" (*See* Apple Mot. at 48 (citing ECF No. 222 ¶¶ 57, 187, 202, 205; ECF No. 252-10 ¶¶ 18, 167–171.) Thus, the Court also rejects this argument.[11] Finding there are genuine issues of fact as to both elements of Apple's prosecution laches defense, the Court **DENIES** summary judgment for Smith Interface.

***D. Summary Judgment of Apple's Unclean Hands Defense***

"Unclean hands is an equitable defense requiring the showing of five elements: (1) the party seeking affirmative relief (2) is guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly related to matter in issue (4) that injures the other party (5) and affects balance of equities between litigants." *Sonos, Inc., v. D&M Holdings Inc.*, 2016 WL 4249493, at *5 (D. Del. Aug. 10, 2016) (quoting *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 410 (D. Del. 2009)); *accord Smith Interface Techs., LLC v. Apple Inc.*, No. 23-CV-1187 TWR (DTF), 2026 WL

---

[11] Apple also argues that Smith Interface's unreasonable delay in prosecuting the '754 Patent inherently shows that Smith Interface abused the USPTO's patent examination system, thus causing prejudice to the public. (*See* Apple Mot. at 49.) In support of this argument, Apple again relies on *Hyatt*. (*Id.*) But *Hyatt* does not stand for the broad proposition that where there was an unreasonable delay in prosecution, the patent applicant necessarily "committed a clear abuse of the [US]PTO's patent examination system" to show prejudice. *See* 998 F.3d at 1370. Rather, the Federal Circuit held that in "rare circumstances," such conduct and its effects on the USPTO "can alone suffice to prove prejudice for purposes of the prosecution laches defense in a § 145 action." *Id.* The Court **FINDS** that Apple has not shown Smith Interface's conduct in this case arises to such "rare circumstances."

222245, *3 (S.D. Cal. Jan. 28, 2026). In the patent law context, the doctrine typically involves "particularly egregious conduct, including perjury, the manufacture of false evidence, and the suppression of evidence." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (collecting cases). It can also involve "'deliberately planned and carefully executed scheme[s] to defraud' not only the [US]PTO but also the courts." *Id.* (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944).)

In its Amended Answer, Apple asserts unclean hands based on two theories: (1) prosecution laches, (ECF No. 222 ¶ 202), and (2) "prosecution conduct and abuse or misuse of the patent system" (ECF No. 222 at 202–03). The Court addresses each in turn.

*1. Unclean Hands Based on Prosecution Laches*

With respect to prosecution laches, Apple presents evidence that Smith Interface "engaged in a dilatory prosecution strategy to try to ambush Apple ***by crafting claims directed to features of Apple's existing products***." (Apple Mot. at 48 (emphasis added).) *See supra* Section I.C.1. However, as explained by the Federal Circuit:

> There is nothing improper, illegal, or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application. Any such amendment or insertion must comply with all statutes and regulations, of course, but, if it does, its genesis in the marketplace is simply irrelevant and cannot of itself evidence deceitful intent.

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235, 224 USPQ 418, 424 (Fed. Cir. 1985)). Because Apple's affirmative defense of prosecution laches does not itself involve fraud, deceit, unconscionability, or bad faith, Apple cannot prove unclean hands "based on" evidence that Smith Interface crafted claims directed to features of

/ / /

/ / /

Apple's existing products.[12] Thus, the Court **GRANTS** summary judgment for Smith Interface as to Apple's unclean hands defense to the extent it is based on prosecution laches.

*2. Unclean Hands Based on Prosecution Misconduct*

Apple contends it has presented sufficient evidence to raise a genuine issue as to whether Smith Interface's alleged "prosecution misconduct" constitutes unclean hands. (*See* Apple Mot. at 50.) That evidence includes:

> (1) [Smith Interface's] practice of submitting thousands of prior art references to bury the USPTO examiner, (2) ignoring the examiner's express warnings about the volume of prior art references submitted, (3) grossly exceeding the Patent Office's Track One claim limits, and (4) incorporating an overwhelming amount of material by reference in the specification.

(*Id.*) Smith Interface argues Apple's allegations fail to meet the threshold of "particularly egregious conduct" required for its unclean hands defense. (SI Mot. at 48 (citing *Therasense*, 649 F.3d 1287).)

With respect to its first and second allegations, Apple submits evidence that, during prosecution of the '754 Patent, Smith Interface submitted more than 200 pages of Information Disclosure Statements ("IDS") with the USPTO listing more than 1,100 prior art references. (*See* ECF No. 222 ¶¶ 198–200.) In response to these submissions, the USPTO examiner stated:

> The submitted IDS documents have been entered. However, the Examiner notes the length of the IDS filed June 11, 2019 consists of over 100 individual IDS page listings including numerous documents Applicant alleges to be pertinent prior art for consideration with no further discussion explaining the particular relevant of any documents. Any subsequent reviewing judiciary official is reminded to use careful discretion when applying the presumption

[12] As explained in its Order Granting Judgment on the Pleadings, (*see* ECF No. 217 at 13–15), an allegation of prosecution laches is not required to be based on fraud. *See Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*, 636 F. Supp. 3d 483, 488 n.2 (D. Del. 2022); *Finjan, Inc. v. Bitdefender Inc.*, No. 17-CV-04790-HSG, 2018 WL 1811979, at *4 (N.D. Cal. Apr. 17, 2018). However, considering Apple's sole basis for its prosecution laches defense is that Smith Interface crafted claims directed to Apple products—and such conduct "cannot of itself evidence deceitful intent"—the Court **FINDS** Apple cannot assert unclean hands based on this alleged conduct. *See Kingsdown Med. Consultants*, 863 F.2d at 874 (citation omitted).

> of administrative competence to grant deference to the fact finding of the examiner with respect to these documents as the Examiner has made no factual findings with respect to their specific content. Furthermore, Applicant is reminded that "inequitable conduct requires not intent to withhold, but rather intent to deceive" . . .

(*Id.* ¶ 198 (citation and emphasis omitted).) Apple also submits evidence that the prior art disclosures made by Smith Interface during the prosecution of the '754 Patent have little-to-no-relevance to the patent claims, including:

> U.S. Patent Appl. No. 2014/0099235, entitled "Blood perfusion system"; U.S. Patent Appl. No. 2015/0068526, entitled "Ventilator apparatus and system of ventilation"; U.S. Patent Appl. No. 2013/0109928, entitled "Dynamically reconfiguring a user interface of a patient monitor responsive to an orientation input"; U.S. Patent Appl. No. 2013/0102371, entitled "Urinal gaming system"; U.S. Patent Appl. No. 2013/0133838, entitled "Vacuum peeling apparatus and method"; U.S. Patent Appl. No. 2013/0124993, entitled "Virtual phonograph"; and U.S. Patent Appl. No. 2001/0005692, entitled "Portable dance game apparatus."

(*Id.* ¶ 200.) Considering this evidence, the Court is unpersuaded by Smith Interface's assertion that its "compliance" with 37 C.F.R. § 1.56, which requires applicants to disclose all information material to patentability, necessarily forecloses a jury from concluding that its conduct was not egregious. Accordingly, the Court finds there is a genuine dispute of material fact as to whether Smith Interface's prosecution tactics were improper and the Court **DENIES** summary judgment for Smith Interface as to Apple's unclean hands defense based on prosecution misconduct.

## II. Apple's Motion for Summary Judgment

### *A. The Asserted Claims of the '754 Patent Are Invalid for Failure to Describe the Written Description Requirement*

35 U.S.C. § 112(a) requires that the specification of a patent "contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same[.]" "To satisfy the written description requirement, the applicant must convey with reasonable

clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrate that by disclosure in the specification of the patent." *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1348 (Fed. Cir. 2011) (internal quotations omitted).

Apple argues the Asserted Claims are invalid because despite every claim requiring blurring an object on the display based on the "duration magnitude" or "distance magnitude" of a gesture, the specification of the '754 Patent fails to describe blurring based on the duration or distance of a gesture. (Apple Mot. at 15.) Specifically, Apple argues that although the specification discloses blurring as a function of the pressure of a gesture (*e.g.*, Figure 22), it does not disclose blurring based on the duration or distance of a gesture. (*See id.* at 18.)

Apple contends that Smith Interface, through expert testimony, improperly "cobbles together" isolated disclosures throughout the '754 Patent and the earlier applications to argue there is sufficient written description for the Asserted Claims. (*Id.* at 22.) Apple particularly takes issue with Smith Interface's "toolbox" approach, in which Smith Interface's expert, Dr. Madisetti, opines that the specification and earlier applications are a "toolbox" from which a person of ordinary skill in the art could pick and choose individual claim limitations. (*Id.*) In contrast, Smith Interface contends that disclosure from different portions of the specification may demonstrate written description "***where they are linked***." (SI Reply at 21 (emphasis in original) (citing *Apple Inc. v. Int'l Trade Comm'n*, 129 F.4th 1363, 1383 (Fed. Cir. 2026).) Smith Interface points out that the Federal Circuit recently rejected a similar argument by Apple, finding that the embodiments Apple insisted were distinct could instead be understood as disclosing a combined implementation contained in a single embodiment. (*Id.* at 21–22 (citing *Apple*, 129 F.4th at 1383).)

Smith Interface argues that the '754 Patent discloses both pattern-based gestures, including the use of distance and duration thresholds, and a 3D layered user interface using blur to provide feedback to detected gestures via its incorporation-by-preference of the

'918 Provisional application. (*See id.* at 23, 26.) Moreover, Smith Interface contends these are the basis for Dr. Madisetti's "linking opinions." (*Id.* at 27.) For instance, Dr. Madisetti explains the "918 Provisional explicitly summarizes the invention as being directed toward a causal sequence: first, 'a touch or pressure signal is received'; and second, 'a user experience is altered, utilizing the signal[.]'" (*See id.* (citations omitted).) Thus, Smith Interface argues, "***explicitly links*** the 'Pattern-Based Gestures section' disclosing receipt and gesture determination with the '3D Layered User Interface section' 'defin[ing] the experience alteration." (*Id.* (emphasis in original) (citations omitted).)

In light of the Federal Circuit's recent holding regarding the linking of relevant disclosures, the Court finds Apple has not shown that "no reasonable fact finder could return a verdict for [Smith Interface]." *See D Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042, 1047 (Fed. Cir. 2018) (quoting *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008)). Accordingly, the Court **DENIES** summary judgment for Apple as to written description.

***B. Noninfringement of Claims 218 and 219 of the '754 Patent***

Apple contends it does not infringe Claims 218 and 219 based on the App Switcher feature because the Claims require displaying a multitasking interface when "the duration magnitude of the gesture detected on the touch screen is detected to increase above the ***duration threshold***," but the App Switcher is instead displayed based on a velocity threshold. (Apple Mot. at 23 (emphasis added) (citations omitted).) For the reasons below, the Court agrees with Apple.

Dr. Rosenberg explains that although velocity and duration are not the same, they are mathematically linked by definition. (*See* SI Reply at 29 (citations omitted).) Thus, he opines that the velocity threshold in Apple's source code can be mapped to correspond to the duration threshold, thus infringing the claims. (*Id.*) But the Court is unpersuaded that "the Accused Products' act of detecting when the velocity decreases before a velocity threshold ***also*** meets Claim 218's recitation detecting that 'the duration' 'increase[d] above a ***corresponding*** [duration] threshold.'" (*Id.* at 29–30 (emphases in original).) Although

velocity is composed of time (*i.e.*, duration), it also involves distance. (*See* Apple Reply at 12.) Accordingly, "velocity being below a certain threshold does not mean the duration must [also] be above a certain threshold." (*Id.* (emphases omitted).) Indeed, a measurement of duration does not depend on, and is not affected by, distance. Thus, a given velocity does not necessarily correspond to a particular duration—absent the additional consideration of distance.

Because there is no factual dispute regarding the functionality of the App Switcher, and because the App Switcher functions to display a multitasking interface based on function involving duration and distance, there is no genuine dispute of material fact as to infringement of Claims 218 and 219 and the Court **GRANTS** summary judgment of noninfringement for Apple as to Claims 218 and 219.

### ***C. Willful Infringement of the '754 Patent***

Willful infringement requires deliberate or intentional infringement. *See Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020); *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016)). Apple argues Smith Interface fails to raise a factual dispute for two reasons: (1) Smith Interface's complaints did not provide notice of Apple's alleged infringement of the Asserted Claims, and (2) Smith Interface's contentions about Apple's continued sale of the Accused Products and Apple's litigation conduct do not support a willful infringement claim. The Court addresses each in turn.

To begin, Apple argues that, because Smith Interface's original complaint identified only independent Claim 2—which is no longer asserted in this action—and only alleged infringement by Apple's "Today View" feature, the complaint could not have given Apple notice of the presently-alleged infringement of the Asserted Claims. (Apple Mot. at 29.) In response, Smith Interface argues it is not required that a prior complaint contain specific claims and specific instances of infringing functionality to convey notice to Apple. (*See* SI Reply at 33.) The Court agrees with Smith Interface. The initial complaint not only

provided Apple notice of the ’754 Patent, but specifically asserted an independent claim to which all of the Asserted Claims depend from. (*See id.* at 34 (citations omitted).) With respect to the “Today View” feature, although Smith Interface is no longer pursuing this specific theory of infringement, it at least gave Apple notice that its theories related to the use of blurring responses to gestures, which is present within several of Apple’s iOS and iPadOS systems. (*See id.* (citations omitted).)

Regarding Apple’s second argument, Apple contends that Smith Interface cannot maintain a claim of post-suit willful infringement based solely on Apple’s purported failure to redesign its products and continue selling them without alteration. (*See* Apple Mot. at 31.) Although evidence of continuing post-suit manufacturing and sales alone may not serve as proof underlying a willful infringement claim, *see Arbmetrics, LLC v. Dexcom Inc.*, No. 18-cv-00134-JLS-KSC, 2019 WL 12473781, at *4 (S.D. Cal. Feb. 19, 2019), Smith Interface has put forth other relevant evidence that could lead a reasonable jury to conclude Apple engaged in deliberate or intentional infringement, including internal documents and product decisions. (*See* SI Reply at 33–34 (citations omitted).) Because Smith Interface has illustrated there is a genuine dispute of material fact as to post-suit willful infringement, the Court **DENIES** summary judgment for Apple as to willful infringement.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Smith Interface's Motion for Summary Judgment and **GRANTS IN PART** and **DENIES IN PART** Apple's Motion for Summary Judgment. The case will proceed to trial on any remaining issues. In anticipation of the Final Pretrial Conference, which is scheduled for November 19, 2026, the Parties **SHALL COMPLY** with the procedures outlined in the undersigned's Civil Standing Order Section VI.

**IT IS SO ORDERED.**

Dated: September 3, 2026

Honorable Todd W. Robinson
United States District Judge