UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SMITH INTERFACE TECHNOLOGIES, LLC,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No.: 23-CV-1187 TWR (BJW)

**ORDER (1) GRANTING IN PART AND DENYING IN PART THE PARTIES' *DAUBERT* MOTIONS AND MOTIONS *IN LIMINE*, AND (2) GRANTING *NUNC PRO TUNC* DEFENDANT'S UNOPPOSED MOTION FOR LEAVE TO FILE ITS OPPOSITION TO PLAINTIFF'S *DAUBERT* MOTIONS AND MOTIONS *IN LIMINE* ONE DAY LATE DUE TO CM/ECF TECHNICAL ISSUES**

(ECF Nos. 278, 281, 284, 296)

Presently before the Court are the *Daubert* Motions and Motions *in Limine* ("MILs") filed by Plaintiff Smith Interface Technologies, LLC ("Smith Interface") ("SI Mot.," ECF No. 281 (public), ECF No. 280 (sealed)), as well as the Response in Opposition to Smith Interface's Motions filed by Defendant Apple Inc. ("Apple") ("Apple Opp'n," ECF No. 295 (public), ECF No. 294 (sealed)); Apple's *Daubert* Motions and MILs ("Apple Mot.," ECF No. 284 (public), ECF No. 283 (sealed)), as well as Smith Interface's Response in

Opposition to Apple's Motions ("SI Opp'n," ECF No. 291 (public), ECF No. 290 (sealed)); and the Parties' Joint Motion for Order of Agreed Upon MILs (ECF No. 278). The Court heard oral arguments regarding these Motions on September 8, 2026. (*See* ECF No. 299.) Also before the Court is Apple's Unopposed Motion for Leave to File Its Opposition to Smith Interface's *Daubert* Motions and Motions *in Limine* One Day Late Due to CM/ECF Technical Issues ("Apple's Unopposed Mot. for Leave," ECF No. 296). For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** the Parties' *Daubert* Motions and Motions *in Limine* and **GRANTS *NUNC PRO TUNC*** Apple's Unopposed Motion for Leave.

## BACKGROUND[1]

On September 3, 2026, the Court issued an Order regarding the Parties' cross-motions for summary judgment. (*See* ECF No. 298 (the "MSJ Order").) Regarding infringement of the '754 Patent, the Court found that Smith Interface was entitled to judgment as a matter of law regarding Apple's infringement of the following: the Edge Menu Claims, the Home Screen Context Menu Claims, and the In-App Context Menu Claims. (*Id.* at 7–17.) The Court also found that Apple was entitled to judgment as a matter of law regarding its noninfringement of the Multitasking Interface Claims. (*Id.* at 28–29.) Accordingly, the issues remaining for trial are the validity of the Edge Menu Claims, the Home Screen Context Menu Claims, and the In-App Context Menu Claims.

Regarding validity of the '754 Patent, the Court found that "Apple is stopped pursuant to 35 U.S.C. § 315(e)(2) from arguing the Asserted Claims are invalid for obviousness based on prior art patent and printed publications . . . at least with respect to the specific limitations imposed by [independent] Claim 2." (MSJ Order at 19.) The Court also found there were genuine issues of material fact regarding whether the Asserted

---

[1] The Parties reference four groups of Asserted Claims implemented in the Accused Products: (1) Edge Menu Claims (Claims 188 and 193), (2) Home Screen Context Menu Claims (Claims 152, 162, and 165), (3) In-App Context Menu Claims (Claims 111, 125, and 142), and (4) Multitasking Interface Claims (Claims 218 and 219). (*See generally* SI Mot.; Apple Mot.)

Claims are invalid for lack of written description. (*Id.* at 28.) As for Apple's affirmative defenses to infringement of the '754 Patent, the Court found there were genuine issues of material fact regarding Apple's prosecution laches defense and Apple's unclean hands defense to the extent it was based on prosecution misconduct.[2] (*Id.* at 20–26.) The Court further found there were genuine issues of material fact regarding whether Apple willfully infringed the '754 Patent. (*Id.* at 29–30.)

The Parties filed the instant *Daubert* Motions and MILs on August 13, 2026. (*See* Docket.) On August 27, 2026, Smith Interface filed its Response in Opposition to Apple's *Daubert* Motions and MILs, and on August 28, 2026, Apple filed its Response in Opposition to Smith Interface's *Daubert* Motions and MILs.[3] The Court held oral argument on September 8, 2026. (*See* ECF No. 299.)

## LEGAL STANDARDS

### I. Federal Rule of Evidence 702 and *Daubert*

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Rule 702 "contemplates a broad conception of expert qualifications." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). "Under Rule 702, expert

---

[2] The Court found that Smith Interface is entitled to judgment as a matter of law regarding Apple's unclean hands defense "based on prosecution laches." (MSJ Or. at 24–25.)

[3] On August 28, 2026, Apple filed its Unopposed Motion for Leave. (*See* ECF No. 296.) Good cause appearing, the Court **GRANTS *NUNC PRO TUNC*** Apple's Unopposed Motion for Leave.

testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading." *Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

Additionally, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "the district court judge must ensure that all admitted expert testimony is both relevant and reliable." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017); *see also Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984–85 (9th Cir. 2020). "The focus of the district court's analysis 'must be solely on principles and methodology, not on the conclusions that they generate,'" and "the court's 'task . . . is to analyze not what the experts say, but what basis they have for saying it.'" *Wendell*, 858 F.3d at 1232 (alteration in original) (quoting *Daubert*, 509 U.S. at 595; *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*")). Courts also consider "whether experts are testifying 'about matters growing naturally' out of their own independent research, or if 'they have developed their opinions expressly for purposes of testifying.'" *Id.* (quoting *Daubert II*, 43 F.3d at 1316).

"These factors are illustrative, and they are not all applicable in each case." *Id.* "The inquiry is flexible, . . . and Rule 702 should be applied with a liberal thrust favoring admission." *Id.* (citation and quotation marks omitted). Indeed, "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as [the court] enjoys in respect to its ultimate reliability determination." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999); *see also Abarca v. Franklin Cnty. Water Dist.*, 761 F. Supp. 2d 1007, 1021 (E.D. Cal. 2011) (citations omitted).

"[T]he proponent [of the proposed expert] has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 advisory committee's note (2000). However, "proponents 'do not have to

demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable. . . . The evidentiary requirement of reliability is lower than the merits standard of correctness.'" *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

## II. Federal Rule of Evidence 703

Federal Rule of Evidence 703 provides that an expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. There are three sources of facts or data upon which expert opinions may be based. *See* Fed. R. Evid. 703 advisory committee's note. "The first is the firsthand observation of the witness, with opinions based thereon . . . , [t]he second source[] [is] presentation at trial , . . . [and] [t]he third source . . . consists of presentation of data to the expert outside of court and other than by [the expert's] own perception." *Id.* Rule 703 further provides:

> If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

## III. Federal Rule of Evidence 402

Federal Rule of Evidence 402 provides that relevant evidence is generally admissible, unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Rule 402 further provides that irrelevant evidence is not admissible.

## IV. Federal Rule of Evidence 403

Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## ANALYSIS

## I. Smith Interface's Motions

### *A. Smith Interface's* Daubert *Motions*

#### *1. Motion to Exclude Portions of Ms. Davis's Rebuttal Report*

##### a. Ms. Davis's Analysis of the Smith Interface-Samsung Agreement

"To be admissible, expert testimony opining on a reasonable royalty rate must 'carefully tie proof of damages to the claimed invention's footprint in the market place.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010)). Although an expert may rely on prior licensing agreements in rendering their opinion as to the value of a patent in-suit, "there must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case." *Id.* at 1317; *see Golden Bridge Tech. v. Apple Inc.*, No. 5:12-CV-04882-PSG, 2014 WL 2194501, at *6 (N.D. Cal. May 18, 2014) ("[T]he case law is clear that mere patent counting and dividing is not enough.").

The Smith Interface-Samsung Agreement perpetually licenses 55 of Smith Interface's patents to Samsung, including the '754 Patent. (*See* SI Mot. at 13.) Apple's damages expert, Julie Davis, relies on the Smith Interface-Samsung Agreement in rendering her opinion of the value of the '754 Patent for purposes of this case. (*See* Apple Opp'n at 12–13.) To determine the value of the '754 Patent, Ms. Davis first identifies eight patents that Smith Interface asserted against Samsung as the "most important" patents (*i.e.*, as "directed to the most relevant and impactful features in Samsung's products"). (*Id.* at 13 (internal quotations and citations omitted).) She then divides the payment made by Samsung by eight and adjusts upward to account for Apple's greater share of the U.S. market in comparison to Samsung.[4] (*Id.*)

---

[4] Ms. Davis alternatively proposes dividing the payment by five, representing the five patents Smith Interface asserted against both Samsung and Apple. (SI Mot. at 13 n.1; Apple Opp'n at 13.)

The Parties do not dispute that the Samsung license is comparable to the hypothetical negotiation in the present case or Ms. Davis's upward adjustment. (*See id.* at 13.) Smith Interface argues, however, that Ms. Davis's opinion is unreliable because she uses patent counting "without sufficiently establishing that the premises of the theorem actually applies to the facts of the case at hand." (SI Mot. at 14 (quoting *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1331–34 (Fed. Cir. 2014)) (internal quotations omitted).) Specifically, Smith Interface contends that Ms. Davis' opinion improperly assumes two premises: first, that each of the counted patents is of equal value, and second, that the total value of the counted patents is the sum of the value of each counted patent. (*Id.* at 16–17.) In response, Apple contends "Ms. Davis did not simply count patents or rely on unsupported value assumptions" and that "every step of her analysis has evidentiary support[.]" (Apple Opp'n at 12.)

In support of her opinion, Ms. Davis relies on the following: (1) Dr. Rosenberg's opinion and Dr. Smith's statement identifying the subset of the most important SIT patents, (2) Dr. Bederson's technical comparability analysis, (3) Mr. Kennedy's admissions about the similarities between the '754 patent and the other SIT asserted patents, (4) the fact that the Samsung license does not distinguish among the value of the eight asserted patents, (5) Mr. Fortenberry's confirmation that SIT has not attributed greater or lesser value to any of its patents, and (6) Mr. Kennedy's market share adjustment. (*Id.* at 15.) This is all "case-specific" evidence. The Court therefore rejects Smith Interface's argument that Ms. Davis's opinion is based on improperly assumed premises.

Smith Interface also argues that Ms. Davis's opinion is unreliable because her theorem fails to account for the four functional groups covered by the Asserted Claims. (*See* SI Mot. at 17–18.) Smith Interface asserts that a license to the '754 Patent agreed to in the hypothetical negotiation would compensate Smith Interface for Apple's infringing use within each of the four functional groups and, having been compensated for those uses, "Smith Interface would not be in a position to seek damages again for those same uses." (*Id.* at 18 (citing *Kolcraft Enters., Inc. v. Artsana USA, Inc.*, No. 13 C 4863, 2020 WL

1491142, at *6–7 (N.D. Ill. Mar. 27, 2020)).) In response, Apple contends that, although Smith Interface's infringement theories target four iPhone features, the Asserted Claims are all directed to the same concept—blurring. (Apple Opp'n at 17.) Apple further contends that accusing blurring in four features "does not convert the '754 [P]atent into four different inventions with separate values." (*Id.*)

Problematically for Smith Interface, the case it relies on in support of its argument does not stand for the proposition it asserts. *Kolcraft Enterprises* involved the application of collateral estoppel to preclude additional damages when a jury had already awarded reasonable royalty damages for infringement of a related patent also present in the accused product. *See* 2020 WL 1491142, at *7. The court in that case therefore found that the plaintiff could not obtain a "double recovery" for infringement "based on the same sales of the same accused product" in a later action. *Id.* This is because a plaintiff may only recover one form of damages for each infringing sale, regardless of how many patents the accused products infringe. *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 4467837, at *25 (N.D. Cal. Sept. 9, 2014), *overruled on other grounds*, 839 F.3d 1034 (Fed. Cir. 2016).

Here, despite not incorporating the four functional groups, Ms. Davis nevertheless opines as to the value of the '754 Patent as a whole relative to the blurring feature in the Accused Products. Accordingly, any disagreement Smith Interface has with respect to Ms. Davis's analysis goes to the weight of her testimony, not admissibility. For these reasons, the Court **DENIES** Smith Interface's *Daubert* Motion regarding Ms. Davis's analysis of the Smith Interface-Samsung Agreement.

b. Ms. Davis's Analysis of the Ten Apple Agreements

"In determining a reasonable royalty, 'parties frequently rely on comparable license agreements.'" *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022) (quoting *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372 (Fed. Cir. 2020)). When doing so, the parties must "account for differences in the technologies and economic circumstances of the contracting parties." *See id.* (quoting *VirnetX, Inc. v. Cisco Sys., Inc.*,

767 F.3d 1308, 1330 (Fed. Cir. 2014)). Parties may also rely on other types of agreements, provided there is "[s]ufficient comparability." *Id.* at 972 n.5 (citing *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299 (Fed. Cir. 2019)). To be sufficiently comparable, the agreement must be probative of the economic demand for the patented technology, and that probative value cannot be greatly outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury. *See LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 78 (Fed. Cir. 2012); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention. . . . Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the [reasonably royalty] statute.").

In her report, Ms. Davis analyzes ten Apple agreements which "take forms other than the bare license of the hypothetical negotiation." (*See* SI Mot. at 19.) These agreements include: an agreement to acquire a company and key employees (the "Company Acquisition Agreement"), five patent litigation settlement agreements (the "Patent Litigation Settlement Agreements"), and four patent purchase agreements (the "Patent Purchase Agreements"). (*See id.*) Smith Interface argues that, for each of these ten agreements, Ms. Davis fails to establish the threshold "sufficient comparability" to the hypothetical negotiation in this case. (*See id.*) Smith Interface further argues that, even if Ms. Davis had established sufficiently comparability, the Court should nevertheless exclude her opinions because she fails to adjust for the "numerous differences" in the technologies and economic circumstances of the contracting parties. (*See id.* at 24.)

i. The Company Acquisition Agreement

The Company Acquisition Agreement involved Apple's agreement to acquire FingerWorks. (*See* SI Mot. at 20.) Smith Interface argues that, despite detailing the acquisition terms, Ms. Davis's analysis offers little or no evidence of a link between the Company Acquisition Agreement and the claimed invention. (*Id.*)

With respect to the ’754 Patent, Ms. Davis opines:

> I understand from Dr. Bederson that some of the patent rights acquired by Apple under the FingerWorks Agreement are technologically comparable to the technology of the ’754 patent. I further understand that the ’754 patent itself references certain of the patents acquired by Apple under the agreement. Therefore, it is my opinion that the parties would find the FingerWorks Agreement instructive as to a royalty for a license to the ’754 patent.

(ECF No. 280-2 (“Davis Reb. Rep.”) at 53.) As Smith Interface correctly points out, “Ms. Davis cites no evidence that Apple desired to use these patents in the Accused Products,” nor does she “offer any analysis of how close in subject matter any patent is or the relative impact of any patent compared to the ’754 Patent from which one could determine that the value of Apple’s use of the FingerWorks patents had any relevance to its use of the ’754 Patent.” (SI Mot. at 21.) Because Ms. Davis’s opinion fails sufficiently to demonstrate comparability between the Company Acquisition Agreement and the hypothetical negotiation, the Court **GRANTS** Smith Interface’s *Daubert* Motion as it relates to Ms. Davis’s Company Acquisition Agreement opinions. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (“The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.”).

ii. The Patent Litigation Settlement Agreements

The Patent Litigation Settlement Agreements involved payments made by Apple to other entities to settle patent infringement suits brought against it, none of which involved the ’754 Patent. (*See* SI Mot. at 21–22.) As with her opinion regarding the Fingerworks agreement, Ms. Davis again fails to explain the “link” between the Patent Litigation Settlement Agreements and the hypothetical negotiation. (*See, e.g.*, Davis Reb. Rep. at 63 (“I understand from Dr. Bederson that the patent rights provided under the Hopewell Agreement are technologically comparable to the ’754 Patent.”).) Moreover, the Federal Circuit recognizes that “the propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable,’ though they may be used to establish

reasonable royalties 'under certain limited circumstances,' such as where the settlement agreement is 'the most reliable license in [the] record.'" *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1384 (Fed. Cir. 2025) (quoting *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77–78 (Fed. Cir. 2012)). Considering Ms. Davis offers no substantive analysis to show that the patents involved in the Patent Litigation Settlement Agreements are sufficiently comparable to the hypothetical negotiation—and further considering that she does not opine that any of the Patent Litigation Settlement Agreements are more reliable than any other license in the record—the Court **GRANTS** Smith Interface's *Daubert* Motion as it relates to Ms. Davis's Patent Litigation Settlement Agreements opinions.

iii. The Patent Purchase Agreements

The Patent Purchase Agreements involved payments by Apple to various companies in exchange for their patent rights. (*See* SI Mot. at 22–25.) Smith Interface argues that Ms. Davis's opinions should be excluded because she "provides no analysis to render these agreements pertinent to the value of a nonexclusive license for Apple's use of the '754 Patent" and "does not consider whether Apple purchased the patents for future assertion or simply to rebalance its portfolio." (*Id.* at 22–23.) Smith Interface further argues that Ms. Davis fails to link any patents in the Patent Purchase Agreements to the '754 Patent. (*Id.* at 24–25.) For the same reasons as explained above with respect to the Company Acquisition Agreement and Patent Litigation Settlement Agreements, *see supra* Sections I.A.1.b.i–ii, the Court **GRANTS** Smith Interface's *Daubert* Motion as it relates to Ms. Davis's Patent Purchase Agreements opinions.[5]

/ / /

/ / /

[5] The Court also concludes that Smith Interface's arguments regarding Ms. Davis's failure to adjust downwards or upwards as they relate to her analysis of Company Acquisition Agreement, Patent Litigation Settlement Agreements, and Patent Purchase Agreements are moot, considering none are sufficiently comparable to the hypothetical negotiation.

c. Ms. Davis's Rebuttal Opinions

Smith Interface additionally argues that two of Ms. Davis's rebuttal opinions should be excluded. (SI Mot. at 26.) First, Smith Interface contends that Ms. Davis's criticisms of Dr. Rosenberg's analysis of the patents licensed in the Smith Interface-Samsung Agreement "repeat the misstates of the law in her apportionment analysis regarding the overlapping values of the '754 Patent family members and Smith Interface's ability to seek a double recovery[.]" (*Id.*) For the reasons discussed previously with respect to the Smith Interface-Samsung agreement, *see supra* Section I.A.1.a, the Court rejects Smith Interface's argument.

Second, Smith Interface argues that Ms. Davis's technical opinion regarding the relative value of patents in prior Apple/Samsung litigation should be excluded because her support for these opinions relies entirely on an undisclosed discussion she had with Dr. Bederson. (*Id.*) Because the Court cannot evaluate the reliability of Dr. Bederson's underlying technical opinions upon which Ms. Davis relies, the Court **GRANTS** Smith Interface's *Daubert* Motion with respect to Ms. Davis's technical characterization of Apple patents asserted against Samsung in prior litigation. *See Taction Tech., Inc. v. Apple Inc.*, No. 21-CV-812 TWR (JLB), 2026 WL 2325187, at *16 (S.D. Cal. Aug. 11, 2026) ("[T]he proponent of expert testimony under Rule 702 must put forth sufficient evidence to establish by a preponderance of the evidence that proposed expert testimony is based upon sufficient facts or data and that the testimony is the product of reliable principles and methods.").

*2. Motion to Exclude Portions of Dr. Bederson's Opening Report*

Like Apple's position on summary judgment, Dr. Bederson opines that the '754 Patent is invalid for lack of written description because "the fact that the '754 Provisional[] [Patents] describe hundreds of embodiments, but none describe the full scope of [the claim] limitation[,] would indicate to a POSITA that the inventor did <u>not</u> possess an invention that performs this limitation." (SI Mot. at 28 (citation omitted) (emphasis in original).) In rendering his opinion, "Dr. Bederson reviewed each provisional application" and

"concluded that the provisionals 'include no description of any embodiment involving blurring based on a change in the duration magnitude or distance magnitude of a gesture,' and they nowhere 'describe any reason why a POSITA may be interested in' combining them." (Apple Opp'n at 23 (citation omitted).) Smith Interface takes issue with Dr. Bederson's opinion because "[h]e does not address what a passage would—or would not—convey to a POSITA regarding applying that passage in conjunction with other complementary disclosures." (SI Mot. at 29.)

To begin, Smith Interface contends that Dr. Bederson applies an incorrect legal standard. But this is not true. In *Apple Inc. v. ITC*, the Federal Circuit held that a POSITA *may* understand embodiments containing relevant disclosure to be linked such that they can be understood as disclosing a combined implementation contained in a single embodiment. 169 F.4th 1363, 1383 (Fed. Cir. 2026.) And whether a POSITA would have such an understanding is a question of fact. *Id.* Moreover, Dr. Bederson's opinion illustrates that he does not understand embodiments containing relevant disclosure to be linked. Just because Smith Interface disagrees with Dr. Bederson's conclusion does not mean that his opinion is improper.

Second, Dr. Bederson's opinion is not conclusory, and Smith Interface's assertion that "Dr. Bederson does not identify any specific passages, let alone explain why such passages do not convey to a POSITA that two disclosures are linked" is untrue. (*See* SI Mot. at 30.) As Apple points out: "For example, Paragraph 205 follows Dr. Bederson's 11-paragraph analysis of particular portions that SIT relies on as purportedly providing a written description, including paragraphs [00388], [00286], and [00448] of the provisional, and his explanation why each paragraph does not describe the claimed limitation." (Apple Opp'n at 24.)

If Apple's expert opines that the disclosures are not sufficiently linked to satisfy the written description requirement—and Smith Interface disagrees with that conclusion—it is up to Smith Interface to show why that conclusion is incorrect. Considering Smith Interface does not challenge Dr. Bederson's methodology in reaching his conclusion, the

Court **DENIES** Smith Interface's *Daubert* Motion to the extent it seeks to exclude these portions of Dr. Bederson's Opening Report.

*3. Motion to Exclude Portions of Ms. Butler's Rebuttal Report*

Smith Interface argues that Apple's expert, Sarah Butler, is unqualified to offer opinions about economics, *e.g.*, how consumers actually purchase smartphones and tablets in the marketplace; how carrier subsidies, bundles, trade-ins, and payment plans affect purchasing decisions; and whether Dr. Andreas Groehn's survey-derived values exceed the profit Apple could earn.[6] (SI Mot. at 30.) In support of its argument regarding Ms. Butler's qualifications, Smith Interface cites to another case in which a court excluded Ms. Butler's economic opinions, holding that "Apple cannot slide in opinions within the ken of an economist under the guise of faulting the survey design." (*Id.* at 30–31 (citing *Maldonado v. Apple, Inc.*, No. 3:16-cv-04067-WHO, 2021 WL 1947512, at *26 (N.D. Cal. May 14, 2021)).) In response, Apple contends that each challenged portion of Ms. Butler's opinion involves "a question of external survey validity, which [Smith Interface] concedes is within Ms. Butler's expertise." (Apple Opp'n at 25.)

Specifically, Smith Interface moves to exclude two portions of Ms. Butler's rebuttal report: paragraphs 99–104 and paragraphs 94–97. (*See* SI Mot. at 30–34.) In paragraphs 99–104, Ms. Butler opines that Dr. Groehn's surveys "do not reflect how consumers compare and purchase smartphones and tablets" because they fail to account for device pricing plans (*e.g.*, subsidies, family plans, upgrades, bundles), motivations that drive consumer demand (*i.e.*, replacement of a nonworking device versus new feature appeal), and brand loyalty. (*See* SI Mot. at 32 (citations omitted).) Smith Interface argues that "[w]hether consumer conduct in the market comports with 'known real-world purchasing behaviors' is a question of economics and consumer behavior, not survey construction." (*Id.*)

---

[6] Smith Interface does not, however, seek to exclude Ms. Butler's survey-design opinions or her qualifications in that field. (SI Mot. at 30.)

In response, Apple argues that Ms. Butler's opinions are not economic in nature because she "does not opine how companies set prices or how markets respond to pricing" but rather "about what information consumers actually rely upon when purchasing a device, because a conjoint survey is reliable only to the extent it replicates decision-making in the real world." (Apple Opp'n at 25.) As support, Apple cites other cases where Ms. Butler was permitted to offer similar opinions about the external validity of a conjoint survey's replication of real-world purchasing conditions. (*Id.* (first citing *Headwater Rsch. LLC v. Samsung Elecs. Co.*, No. 2:22-cv-00422-JRG-RSP, 2024 WL 4712953, at *2 (E.D. Tex. Nov. 7, 2024); then citing *Vasu Holdings, LLC v. Samsung Elecs. Co.*, No. 2:24-cv-00034-JRG RSP, ECF No. 222 (E.D. Tex. Sept. 29, 2025)).) Apple also distinguishes the present case from the circumstances of *Maldonado*, in which "the court excluded only a narrow supply-side opinion—Ms. Butler's opinion that a willingness-to-pay measure was an inadequate measure of 'market price' because it failed to account for changes in supply." (*Id.* (citing 2021 WL 1947512, at *26).) Considering Ms. Butler's opinions in paragraphs 99–104 of her rebuttal report are limited to critiques of Dr. Groehn's surveying techniques, and not opinions on the economics of consumer behavior generally, the Court rejects Smith Interface's argument and **DECLINES TO STRIKE** paragraphs 99–104.

In paragraphs 94–96 of her rebuttal report, Ms. Butler both critiques Dr. Groehn's willingness-to-pay analysis and provides her own alternative calculations. (SI Mot. at 33 (citation omitted).) As Smith Interface explains, a willingness-to-pay analysis is a measure of consumer demand and thus a matter of economic theory. (*Id.* (citing *Maldonado*, 2021 WL 1947512, at *26). The Court therefore **STRIKES** paragraphs 94–96.

Lastly, in paragraph 97, Ms. Butler offers critiques of Dr. Groehn's surveys "[b]ased on [her] conversation with Dr. Garret Glasgow" about "analyses that [he] had conducted." (SI Mot. at 33–34 (citation omitted).) Apple argues that "Rule 703 permits an expert to consider facts or data reviewed with other experts, and here that conversation only confirmed that Ms. Butler's survey-based opinions are consistent with Dr. Glasgow's economic analysis." (Apple Opp'n at 26.) Because the Court is unable to evaluate the

reliability of the information Dr. Glasglow provided Ms. Butler, *see supra* Section I.A.I.c, the Court **STRIKES** paragraph 97.

*4. Motion to Exclude Mr. Matal's Report*

"Smith Interface seeks to prevent Mr. Joseph Matal from testifying before the jury, which, Apple agrees, would occur only if the Court permits Apple to present its equitable defenses to the jury." (SI Mot. at 34.) Because Apple will not be permitted to present its equitable defenses to the jury, *see infra* Section I.B.1, the Court **DENIES AS MOOT** Smith Interface's *Daubert* Motion regarding Mr. Matal's Report.

***B. Smith Interfaces Motions* in Limine**

*1. Smith Interface's MIL 1: Preclude Apple from introducing before the jury any evidence, testimony, or argument that relates solely to Apple's equitable defenses (prosecution laches and unclean hands)*

The Parties generally disagree on the extent to which the Court should allow evidence relating to Apple's equitable defenses. As a threshold matter, the Court declines Apple's request to present equitable issues to the jury, (*see* Apple Opp'n at 29–30), and instead **DEFERS** ruling on Apple's equitable defenses unless and until it is appropriate to do so (*i.e.*, if the infringed Asserted Patents are found valid).

To the extent the Parties intend to present evidence related to Apple's equitable defenses for other purposes (*e.g.*, impeachment), the Court **RESERVES JUDGMENT** on Smith Interface's MIL 1 unless and until the issues the Parties identify are raised at trial.

*2. Smith Interface's MIL 2: Preclude Apple from presenting any evidence, testimony, or argument that Dr. Smith drafted or amended the Asserted Claims of the '754 Patent to cover Apple's products, or that the timing of the '754 Patent's prosecution relative to Apple's product releases—or relative to Smith Interface's investigation of Apple's products—suggests any impropriety*

Apple contends it "will not argue at trial that [Smith Interface] acted illegally or improperly by trying to draft claims that read on Apple's products." (Apple Opp'n at 31.) Apple further contends that evidence showing a patentee drafted claims to cover an existing

product is relevant to a written description defense, whether the inventor possessed the claimed subject matter, and to its anticipation defense based on its own products on the market when Smith Interface filed the claims. (*Id.*) Smith Interface nevertheless argues that "[p]resentation of these facts will only confuse the jury by incorrectly suggesting that Dr. Smith behaved improperly or derived the asserted claims from Apple." (SI Mot. at 41.) At this time, the Court **DENIES** Smith Interface's MIL 2, but the Court will consider giving a limiting instruction regarding any such evidence if one is submitted by Smith Interface.

*3. Smith Interface's MIL 3: Preclude Apple from presenting any evidence, testimony, or argument suggesting that Dr. Rosenberg identified or relied on the "wrong" source code*

To the extent any infringement issues remain for trial following the Court's summary judgment order, Smith Interface requests that Apple be precluded from arguing that Dr. Rosenberg cited to the "wrong" source code. (SI Mot. at 42.) Because no infringement issues remain for trial, (*see generally* MSJ Order), the Court **DENIES AS MOOT** Smith Interface's MIL 3.

*4. Smith Interface's MIL 4: Preclude the Parties from presenting any evidence, testimony, or argument regarding criticism, unreliability findings, or compensation totals or rates of an expert from another proceeding*

The Court **RESERVES JUDGMENT** on Smith Interface's MIL 4 unless and until it is raised at trial. (*See* ECF No. 301 ("Hr'g Tr.") at 67:11–74:16.)

*5. Smith Interface's MIL 5: Preclude Apple from presenting any evidence, testimony, or argument regarding any person's or entity's (or other business of any such person or entity) stake in the recovery, other than the stake of a testifying witness*

The Court **RESERVES JUDGMENT** on Smith Interface's MIL 5 unless and until it is raised at trial. (*See* Hr'g Tr. at 74:19–76:21.)

/ / /

/ / /

## II. Apple's Motions

### *A. Apple's* **Daubert** *Motions*

#### *1. Motion to Exclude Mr. Kennedy's "Market Approach" Opinion*

David Kennedy's "Market Approach is based on the premise that the value of an asset can be assessed by reference to other marketplace transactions." (ECF No. 283-1 ("Kennedy Rep." (sealed)) at 59; *see also* SI Opp'n at 13.) Applying his Market Approach, Mr. Kennedy considers the similarities and differences of the Smith Interface-Samsung license to the hypothetical license in this case and "performs multiple adjustment steps." (SI Opp'n at 13–14 (citation omitted).) Mr. Kennedy concludes that, knowing Samsung paid $19 million to license Smith Interface's portfolio, Apple would have agreed to pay $213.5 million to license the '754 Patent. (*See* Apple Mot. at 10; SI Opp'n at 11, 22 n.5.)

First, Apple argues Mr. Kennedy's opinion is improper because he arbitrarily inflates the value of the Samsung license based on the "self-serving" testimony of Dr. Smith that the Smith Interface portfolio is worth "$200 million or above." (Apple Mot. at 12–13.) Mr. Kennedy's Market Approach does rely in part on Dr. Smith's testimony that Smith Interface's patent portfolio is worth "$200 million or more" and that the Smith Interface-Samsung license reflects an "enormous discount" off the purported value of the portfolio. (*See* Apple Mot. at 13.) Apple argues that, because there are no facts or data to support Dr. Smith's "$200 million or above" opinion, Mr. Kennedy's "discount adjustment" opinion is "based on nothing more than the uncorroborated beliefs of interested witnesses about the value of the SIT portfolio[.]" (*Id.*) In response, Smith Interface argues that Mr. Kennedy's opinion relies on admissible evidence—the Smith Interface-Samsung license and "Dr. Smith's 'belief that $X is a reasonably royalty for [his] patent portfolio[,'] which indicates what a willing licensor would accept." (*Id.* (quoting *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1342–43 (Fed. Cir. 2025)).) Indeed, a reasonably royalty analysis "requires consideration not only of the amount that a willing licensee would have paid for the patent license but also of the amount that a willing licensor would have accepted." *Ga.-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121

(S.D.N.Y. 1970), *judgment modified*, 446 F.2d 295 (2d Cir. 1971). Because Mr. Kennedy's Market Approach considers the similarities of the sufficiently comparable Smith Interface-Samsung license to the hypothetical license and Apple has not otherwise shown that Dr. Smith's testimony is inadmissible as a willing licensor in the hypothetical negotiation, *see infra* Section II.B.1, the Court rejects Apple's first argument.

Apple next argues that the Court should exclude Mr. Kennedy's Market Approach because "he does not reliably apportion the value of the Samsung portfolio license to the '754 [P]atent alone." (Apple Mot. at 16.) Specifically, Apple contends there are two reasons to reject Mr. Kennedy's non-apportionment: (1) Dr. Craig Rosenberg fails to cite any empirical support for his "approximate relative value" analysis, which Dr. Kennedy relies on; and (2) Mr. Kennedy's adoption of Dr. Rosenberg's opinions "does not result in anything that resembles apportionment." (Apple Mot. at 18 (internal quotations omitted).)

Smith Interface's technical expert, Dr. Rosenberg, grouped the patent portfolio subject to the Smith Interface-Samsung Agreement into six technology categories, assigning an "approximate relative value" to each. (*See id.* at 16–17.) Dr. Rosenberg then opined that the '754 Patent falls into four of these categories: Multitasking Interfaces, Edge Menus, Home Screen Context Menus, and In-App Context Menus. (*See id.* at 17.) In doing so, Dr. Rosenberg relied on his own experience, training, and education in the field of user interface design, as well as facts and data such as comparable licenses and infringement contentions. (SI Opp'n at 20.) Apple argues that because Dr. Rosenberg did not cite any studies, market data, or other empirical analysis, his opinions should be excluded. (*Id.* at 18.) But reliance on empirical evidence is not required to render technical expert opinions admissible. Just because Dr. Rosenberg could have used other facts in rendering his opinion does not mean that the facts he used are otherwise irrelevant or unreliable. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856–66 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011); *see also Altria Client Servs. LLC v. R.J. Reynolds Vapor Co.*, No. 2023-1546, 2024 WL 5165456, at *4–5 (Fed. Cir. Dec. 19, 2024), *cert. denied*, 146 S.

/ / /

Ct. 201 (2025) (holding similar expert testimony admissible). Accordingly, the Court rejects Apple's argument that Dr. Rosenberg's underlying opinions are improper.

Apple also argues that Mr. Kennedy's opinions are improper because he attributes 90% of the value of Smith Interface's portfolio to the '754 Patent for iPhones and 50% of the value to the '754 Patent for iPads. (Apple Mot. at 16, 18–20.) Smith Interface disagrees with Apple's assessment of Mr. Kennedy's apportionment opinions, explaining instead that he "matches the infringing use by each product to the apportioned share (no more than 25%) of each applicable Category" and "[b]ecause the iPhone infringes Asserted Claims in four separate Categories, those four separate uses total 90%." (SI Opp'n at 21–22.) In his report, Mr. Kennedy explains:

> I understand from Dr. Rosenberg that the benefits of the Asserted Claims of the Patent in Suit within each [ ] Category are unchanged so long as any of the Claims in that Category is found valid and infringed. If sufficient Claims are found non-infringing to allow the Accused Features in one or more of the [ ] Categories to be used without infringement then my analysis should be adjusted to reflect those Categories that are found valid and infringed.

(Kennedy Rep. at 160.) Because Mr. Kennedy's Market Approach accounts for the concerns Apple raises regarding apportionment, the Court also rejects this argument.

For these reasons, the Court **DENIES** Apple's *Daubert* Motion to the extent it seeks to exclude Mr. Kennedy's Market Approach opinion.

*2. Motion to Exclude Mr. Kennedy's "Cost Approach" Opinion*

Mr. Kennedy's Cost Approach "considers the amount of additional expenses that the infringer would be expected to incur if it did not have the asset; such losses may accrue, for example, as a result of increased manufacturing or material costs." (Kennedy Rep. at 60.) According to Dr. Kennedy, "[i]n the context of patents, value can be measured by comparing the economic benefits achieved through infringement to the economic benefits that would have been achieved using the next best [non-infringing alternative ("NIA")]." (*Id.*) "The value of the Hypothetical License to the infringer – and thus, a reasonable

/ / /

royalty rate for that license – is strongly influenced by the economic impact of avoiding infringement, over the period in which the patent is infringed, by adopting that NIA." (*Id.*)

Apple argues Mr. Kennedy's Cost Approach should be excluded because it is based on unreliable NIA opinions by Dr. Rosenberg. (Apple Mot. at 21.) To begin, Apple takes issue with Dr. Rosenberg's opinion that "dimming" is not a NIA. (*Id.* at 22.) Dr. Rosenberg opines that "[t]he proposal to 'dim' the background is not a different design choice from blurring in any meaningful user-interface sense; it is simply one way of implementing a blur effect as that term is ordinarily understood." (ECF No. 283-7 ("Rosenberg Rep." (sealed)) at 5.) As an example, he points to dependent claim 365 of the '754 Patent, which recites that "the blur includes reducing a visibility." (*See id.*) Apple argues that this opinion should be excluded because Dr. Rosenberg "applies the wrong claim construction of 'blur.'" (Apple Mot. at 23.) But during claim construction, the Court gave the term its plain and ordinary meaning. (*See* ECF No. 197 at 10; ECF No. 188 at 21.) As a POSITA, Dr. Rosenberg is entitled to opine on his understanding of the plain and ordinary meaning of "blur" in light of the intrinsic record. Accordingly, the Court rejects Apple's argument as it relates to dimming.

Apple also contends that the Court should exclude Dr. Rosenberg's opinions about the "reduce transparency" setting, again arguing that he applies the wrong claim construction. (Apple Mot. at 25–26.) For the same reasons as explained with respect to dimming, the Court also rejects this argument. Apple further contends that Dr. Rosenberg "cites no evidence or methodology" to support his opinion that the "reduce transparency" setting is not an acceptable NIA. (*Id.* at 26.) But this is untrue. For example, Dr. Rosenberg explains that "displaying a solid color" "is not an acceptable alternative" because it is "disruptive" and "break[s] the user's sense of spatial context," while citing to evidence to show this is contrary to Apple's design goals. (SI Opp'n at 25 (citations omitted).) The therefore Court rejects this argument as well.

Turning to Apple's final argument—that Mr. Kennedy does not reliably apportion his Cost Approach to the '754 Patent—Mr. Kennedy states that the Cost Approach is

"already fully apportioned" because it "isolate[s] the economic benefits attributable to the Patents in Suit." (Kennedy Rep. at 66.) "Although a patentee must carefully tie proof of damages to the claimed invention's footprint in the marketplace, that requirement for valuing the patented technology can be met if the patentee adequately shows that the defendant's infringement allowed it to avoid taking a different, more costly course of action." *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017) (cleaned up). Because Apple does not otherwise demonstrate that the Cost Approach fails to tie proof of damages to the Asserted Product's footprint in the marketplace, the Court rejects Apple's argument regarding apportionment.

In sum, the Court **DENIES** Apple's *Daubert* Motion to the extent it seeks to exclude Mr. Kennedy's Cost Approach opinion, but **GRANTS** Apple's *Daubert* Motion with respect to Mr. Kennedy's "possible additional apportionments" because they are not based on data involving specific economic or technical contributions and Smith Interface concedes that "[e]xcluding them would not impact the admissibility of the Cost Approach." (SI Opp'n at 26.)

### *B. Apple's Motions* in Limine

#### *1. Apple's MIL 1: Exclude lay witness opinions about purported "valuations" of Smith Interface's patents*

The Court **RESERVES JUDGMENT** on Apple's MIL 1 unless and until it is raised at trial. (Hr'g Tr. at 76:22–77:6.)

#### *2. Apple's MIL 2: Exclude Mr. Kennedy's "Income Approach" opinions, Dr. Groehn's consumer conjoint survey, and any reference to the incremental profit or royalty rate figures derived from either*

Apple argues that the Court should preclude Smith Interface from offering evidence about Mr. Kennedy's Income Approach—and the conjoint consumer survey conducted by Mr. Groehn upon which Mr. Kennedy's opinion relies—because Mr. Kennedy failed to offer a damages calculation based on his Income Approach, rendering his opinion irrelevant under Rule 402. (Apple Mot. at 32.) In sum, Apple contends that "[e]vidence

that an expert does not use to calculate damages has no tendency to prove damages, and therefore is irrelevant under Rule 402." (*Id.*) In response, Smith Interface contends that "Mr. Kennedy both relies on Dr. Groehn's results and performs adjustments to construct the Income Approach" and shows "that Apple would have charged a lower price and would have sold fewer units" with Apple's proposed NIA. (SI Opp'n at 27.) Accordingly, Mr. Kennedy's Income Approach likely clears the relevance hurdle.

Apple further argues that the Income Approach should be excluded as unfairly prejudicial under Rule 403. (Apple Mot. at 32.) According to Apple, "[r]ather than use the income approach to provide a damages figure, Mr. Kennedy claims that approach is 'relevant only as a guide to the minimum possible rate range' because his proposed royalty rate using that approach ($5.01 per unit) is several times higher than his cost approach rate." (*Id.* at 32–33.) His income approach therefore would serve only to "skew the damages horizon for the jury" by making his other damages number appear modest by comparison. (*Id.* at 33 (citation omitted).) In response, Smith Interface argues Mr. Kennedy should be able to tell the jury that the survey results are "significant" because consumers highly value the infringing features and Apple therefore would ascribe "significant value" to a hypothetical license. (SI Opp'n at 28.)

Considering Mr. Kennedy does not use his Income Approach to calculate damages, the Court agrees with Apple that the relative probative value of this evidence is low and the probative value of the evidence is substantially outweighed by confusing the issues, that is, the jury's appropriate determination of damages. The Court therefore **GRANTS** Apple's MIL 2 to the extent it seeks to exclude Mr. Kennedy's Income Approach opinion.

Apple also argues that the Court should exclude Dr. Groehn's conjoint survey because it is not based on sufficient facts or data and "has no other relevance other than as a backstop" for Mr. Kennedy's Income Approach. (Apple Mot. at 33–34.) But if this were true, exclusion of the Income Approach alone would be sufficient. Considering it is unclear what other purposes Dr. Groehn's conjoint survey may serve at this juncture, the Court **RESERVES JUDGMENT** on this point.

*3. Apple's MIL 3: Exclude results of Apple's post-grant challenges and other Apple litigation*

The Court **RESERVES JUDGMENT** on Apple's MIL 3 unless and until it is raised at trial. (Hr'g Tr. at 85:24–83:6.)

*4. Apple's MIL 4: Exclude evidence regarding "irrelevant and prejudicial" Apple financial information*

Apple argues that the Court should exclude evidence and argument Apple's company-wide financial information, including evidence or argument about Apple's size, earnings, market capitalization, stock price, cash reserves, net sales, gross revenues, and total profit of Apple's products, including the Accused Products. (Apple Mot. at 40.) In response, Smith Interface contends that "it has no intention of presenting company-wide financials to improperly skew the damages horizon." (SI Opp'n at 35.) The Court therefore **DENIES AS MOOT** Apple's MIL 4.

*5. Apple's MIL 5: Exclude evidence of any alleged non-monetary harm allegedly suffered by Dr. Smith and Mr. Caldwell (Smith Interface's patent prosecution lawyer)*

Apple contends that, because the Court dismissed its inequitable conduct defense, reputational harm is irrelevant to any issue the jury will decide and also would be unfairly prejudicial because it would invite jurors to "decide the issues based on emotion, not the facts." (Apple Mot. at 42–43.) Apple also acknowledges, however, that this evidence would be presented only in support of equitable defenses—which is something the jury will not decide. *See supra* Section I.B.1. Because Smith Interface agrees that this evidence is limited to equitable issues, the Court **DENIES AS MOOT** Apple's MIL 5.

## III. Agreed-Upon Motions *in Limine*

On August 13, 2026, the Parties filed a Joint Motion Seeking Order Entering Agreed-Upon MILs (ECF No. 278). As stipulated by the Parties, the Court **GRANTS** the following agreed-upon MILs:

/ / /

1. The Parties agree not to present any evidence, testimony, or argument characterizing any Party, witness, or entity in pejorative terms (*e.g.*, "patent troll," "shell company," "greedy," a "thief," "corrupt," "evil," "dishonest") or characterizing conduct as "stealing," "copying," "misappropriating," "pirating," "trespassing," or any similar terms.

2. The Parties agree not to present any expert testimony or opinions not disclosed in an expert's served report.

3. The Parties agree not to present any evidence, testimony, or argument regarding the size of the Parties' law firms or the number of attorneys representing the Parties.

4. The Parties agree not to reference or present any evidence regarding jury consultants, shadow jurors, focus groups, or mock trial proceedings.

5. The Parties agree not to ask questions or make statements intended to invoke a privileged or protected answer or a privilege objection.

6. The Parties agree not to reference the presence or absence of any Party's corporate representative, employee, or other witness.

7. The Parties agree not to present any evidence, testimony, or argument suggesting that the opposing Party failed to call any witness.

8. The Parties agree not to reference the expert report drafting process or communications between experts and lawyers.

9. The Parties agree not to reference disparaging press reports about Apple, media reports unrelated to this litigation, media speculation about Apple or Apple executives, political positions taken or political contributions made by Apple or its current or former executives, or executive compensation.

10. The Parties agree not to present any evidence, testimony, or argument suggesting that Apple had an affirmative duty to seek opinion of counsel and/or any inference as to what such an opinion would have contained.

/ / /

/ / /

11. The Parties agree not to present any evidence, testimony, or argument that is relevant only to Smith Interface's dismissed pre-suit willful infringement and indirect infringement claims.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** the Parties' Trial-Related *Daubert* Motions and Motions *in Limine* (ECF Nos. 278, 281, 284) as detailed above. The Court also **GRANTS *NUNC PRO TUNC*** Apple's Unopposed Motion for Leave to File Its Opposition to Smith Interface's *Daubert* Motions and Motions *in Limine* One Day Late Due to CM/ECF Technical Issues (ECF No. 296).

Dated: October 6, 2026

Honorable Todd W. Robinson
United States District Judge